UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Edward Schwartz, on behalf of himself and others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS-ACTION COMPLAINT** |
| vs. | |
| Avis Rent A Car System, LLC, | |
| Defendant. | |

# INTRODUCTION

Edward Schwartz, on behalf of himself and others similarly situated, brings this action to obtain damages from and injunctive relief against Avis Rent A Car System LLC for charging him and class members hidden surcharges for frequent-flyer miles or rewards points earned from Avis's travel partners in connection with their rental-car agreements.

# PARTIES

1. Plaintiff, Edward Schwartz, is a citizen of Ohio, residing at 5060 Crofton Road, Solon, Ohio 44139. During the class period, Avis charged Schwartz and Schwartz paid Avis a hidden surcharge for frequent-flyer miles he earned from an Avis travel partner in connection with his rental-car agreement.

2. Defendant, Avis Rent A Car System, LLC, is a Delaware general limited liability company with world headquarters located at 6 Sylvan Way, Parsippany, NJ 07054. Avis controls its website, www.avis.com, from these headquarters.

**JURISDICTION AND VENUE**

3. This Court has diversity subject-matter jurisdiction over this class-action lawsuit pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs."

4. This Court has personal jurisdiction over the parties because Plaintiff submits to this Court's jurisdiction and Avis is headquartered in this District.

5. Venue exists in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because Avis resides in, transacts business in, is found within, and has agents in this District and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

**FACTUAL ALLEGATIONS**

A. *Avis's background*

6. Avis and its subsidiaries operate one of the world's leading car-rental brands, providing business and leisure customers with a wide range of services at more than 1,200 locations in the U.S. and nearly 900 locations in Canada, Australia, New Zealand, and the Latin American/Caribbean region. Founded in 1946, Avis was the first company to rent cars at airport locations. Within the U.S., Avis maintains approximately 344 airport locations and 905 off-airport locations.

7. To rent a vehicle from Avis, customers must make a vehicle reservation either by telephone or online through www.avis.com. This lawsuit currently concerns

only vehicle rentals made through www.avis.com.

8. When making reservations through www.avis.com, customers enter the date, time, and location of their rental; the type of vehicle to be leased; and certain personal data.

9. When making their online reservation, customers also may choose to purchase, for an additional fee, rental options such as GPS Navigation, Roadside SafetyNet, XM Radio, a Fuel Service Option, and various rental protections and coverages, such as Loss Damage Waiver, Personal Accident Insurance, Personal Effects Protection, and Additional Liability Insurance.

10. During the online-reservation process, Avis prominently displays an estimated total of the rental charges on-screen, which estimated total includes the customer's base rate, taxes and surcharges, and any rental options.

11. Upon completion of the online reservation, Avis e-mails a confirmation of this estimated rental total cost to the customer. This estimated total cost continues to include the aforementioned mandatory and optional charges as well as a suggestion that the total cost's "estimated" qualifier concerns the fact that "*[e]xtensions or late returns result in additional charges*" (emphasis added).

12. While Avis only sometimes provides customers with a document entitled Rental Terms and Conditions at the time that customers pick up their rental vehicles, Avis always provides customers with a Rental Document that describes details of the rental, including the vehicle's make and model; the rental dates; the mileage at pick-up; and an itemized list of the rental charges, including all optional charges such as GPS Navigation and the Fuel Service Option.

13. Similarly, when customers return the vehicle, Avis provides them a Return Document, which itemizes the final rental charges.

14. As part of Avis's vehicle-rental business, it offers complimentary membership programs designed to speed-up and streamline the car-reservation and rental process.

15. The *My Avis Service Program* provides customers with a personal member identification number—a "Wizard" number—that allows them to create and save a rental profile that contains their personal data, rental preferences, and special-discount information. This way, customers needn't provide this information every time they make a reservation.

16. The *Avis Preferred Service Program* also allows customers to create a personal rental profile. But this program, which requires a Wizard number, includes the added benefit of allowing customers to bypass the service counter upon airport arrival and to proceed directly to their reserved rental vehicle where the Rental Document and sometimes the Rental Terms and Conditions await them.

17. Customers who enroll in the *My Avis Service Program* agree to be bound by Avis's Terms of Use/Disclaimer.

18. Customers who enroll in the *Avis Preferred Service Program* agree to be bound by the Avis Preferred Service Global Terms and Conditions ("Preferred Terms and Conditions").

19. My Avis and Avis Preferred Service Members may choose to receive e-receipts for their rental transaction, which e-receipts itemize their final rental charges.

**B.**     *Avis's travel-partner program and this program's secret frequent-flyer surcharge*

20. Through Avis's Travel Partner Program, customers may earn frequent-flyer miles or reward points with Avis's Travel Partners on car rentals made at participating Avis airport locations.

21. For example, customers can earn 50 miles per rental day or 500 miles on rentals of five or more days with Continental Airlines and can earn 600 rewards points per rental with Southwest Airlines.

22. Avis Preferred Service customers who wish to earn frequent-flyer miles or rewards points may enter their frequent-flyer or rewards program membership number during the online reservation process. All other customers who wish to earn miles or reward points may submit their frequent-flyer or rewards-program membership number by telephone after completing the online reservation.

23. To participate in its Travel Partners' frequent-flyer and reward-points programs, Avis pays its Travel Partners for the cost of miles or points purchased from them as well as a 7.5% federal excise tax. Under the Tax Relief Act of 1997, this 7.5% federal-excise tax applies to all states, except Arizona, California, Missouri, Oregon and Wyoming.

24. But without suitable disclosure, Avis turns around and charges its customers a surcharge for "earning" miles or reward points from its Travel Partners when at all points in the rental process Avis has suggested to its customers that mileage or reward points would be a free perk, like everyday consumers have come to expect unless told otherwise.

25. Although the amount of this surcharge may vary depending on the reward program involved, Avis typically charges its customers $0.75 per rental day for the "benefit" of accruing frequent-flyer miles or reward points.

26. But Avis's Rental Terms and Conditions; the Terms of Use/Disclaimer associated with Avis's *My Avis Service Program*; and the Preferred Terms and Conditions associated with Avis's *Avis Preferred Service Program* never explain that Avis will charge customers for frequent-flyer miles or reward points.

27. In this manner, Avis baits and switches its customers first by suggesting that frequent-flyer miles or reward points are a free "perk" and then quietly—if not secretly—charging customers for this perk without ever properly and objectively disclosing and explaining this surreptitious charge.

28. At no time during the reservation-and-rental process does Avis disclose to anyone—in an objectively visible and understandable way—that it will charge all customers for frequent-flyer surcharge for miles or reward points earned with vehicle rentals.

29. Instead, Avis tricks customers into believing that their frequent-flyer miles or reward points are a free perk awarded to loyal renters while unnoticeably charging them for these miles or points.

30. Unlike surcharges for the Energy Recovery Fee, Customer Facility Charge, and rental options like GPS Navigation, Avis does not list its frequent-flyer surcharge on the estimated total that Avis prominently displays during and the online reservation process, nor does Avis list this surcharge anywhere on the e-mail reservation confirmation, which confirmation itemizes every *other* charge that Avis intends to charge

its customer.

31. Likewise, Avis's various terms and conditions make no mention that Avis will charge customers for earning frequent-flyer miles or reward points. With respect to rental charges, Avis's Rental Terms and Conditions and its Preferred Terms and Conditions instead explain as follows:

> 6. Rental Charges
>
> * * *
>
> You'll pay all charges that apply to the rental for miscellaneous services, and, where permitted, airport facility fees and/or concession recovery fees, and vehicle license recovery fees, other fees and surcharges.

32. What's more, Avis's Preferred Service Benefits webpage simply proclaims that "[w]ith over 50 travel partners worldwide, it's easy to earn frequent traveler miles or points on paid rentals," while its Traveler Preferences – HELP webpage merely explains, as follows:

> **Frequent Traveler Program**
>
> Avis has many partner relationships with airlines, hotels, and destinations. Renters can earn bonus miles, points and special discounts in these programs.
>
> **Frequent Traveler Membership Number**
>
> Avis has many partner relationships with airlines, hotels, and destinations. Renters can earn bonus miles, points and special discounts in these programs.

33. Like Avis's Rental Terms and Conditions and its Preferred Terms and Conditions, Avis's Preferred Service Benefits and Traveler's Preferences – HELP webpages also make no mention of charging customers for frequent-flyer miles or reward points—even while specifically discussing Avis's frequent-traveler program.

34. Instead of describing its frequent-flyer surcharges during the reservation process or anywhere in the explanatory materials that shape and control its customers' rental relationship, when customers pick up their vehicles, Avis includes on the Rental Document—for the first time—a line-item charge tucked discreetly into the lower left-hand corner entitled "FTP SUR." (Avis switches to describing this coded entry as "FTP SR" on customers' Return Document or optional e-receipt.)

35. Importantly, neither Avis's Rental Document nor its Return Document or e-receipt describes theses codes (although describing them in the Return Document or e-receipt wouldn't much matter since by that time a customer's rental is concluded) or explains that these codes concern surcharges for customers' frequent-flyer miles or reward points earned from vehicle rentals.

C.  *Plaintiff's facts*

36. On May 15, 2011, Plaintiff—an Avis Preferred Service member—made a rental reservation through www.avis.com.  His reserved a one-day rental of a Ford Escape (or similarly classed vehicle) for May 15-16, 2011, which he planned to pick up and return to Manchester-Boston Regional Airport.

37. During the reservation process, Avis prompted Plaintiff to enter his Continental OnePass frequent-flyer number, which he did. This way, Plaintiff could receive 50 frequent-flyer miles for his one-day car rental.

38. Before completing his vehicle rental, Avis listed all of Plaintiff's rental charges, none of which included a frequent-flyer mile surcharge.

39. Immediately after Plaintiff completed his rental reservation, Avis sent him an e-mail reservation confirmation, which confirmation estimated the total cost for the

rental to be $134.11. A true copy of that confirmation is attached as Exhibit 1.

40. Plaintiff's estimated total cost included all the charges that only moments earlier he had selected (i.e., GPS navigation) or that Avis had required (i.e., Avis's daily rental amount and the associated taxes, fees, and charges)—and that Avis had listed—when Plaintiff made his reservation.

41. Avis's e-mail reservation confirmation quoted only the following charges and fees, making no mention of a frequent-flyer surcharge:

> **Base Rate and Charges**
> Base Rate                  $94.99/day
> Energy Recovery Fee        $0.50/day
> Vehicle License Fee        $3.00/day
> Customer Facility Charge   $2.25/day
> Concession Recovery Fee    10 %
> Tax (9.0%)                 $9.92
>
> **Rental Options**
> GPS Navigation             $13.95

42. Avis's e-mail reservation confirmation described certain taxes and fees that were not included on it:

> **Additional Fees**
>
> Optional equipment and coverages may be subject to taxes and fees that are not included in the estimated total.
>
> * * *
>
> Where2 GPS Navigation:
>
> - Taxes not included.
>
> * * *
>
> Gas Service Option:
>
> Fees for the Gas Service Option are not included in the Estimated Total.

43. But unlike Avis's e-mail reservation confirmation's suggestion that the aforementioned charges would appear later, this confirmation neither included a frequent-flyer surcharge nor suggested that it would appear later.

44. So while Plaintiff knew precisely what other charges to expect (or not to expect), he neither had nor could have had any idea that Avis intended to charge him for frequent-flyer miles or reward points.

45. When Plaintiff arrived at the airport on the day of his rental, as an Avis Preferred Service member he dashed past the Avis service counter and headed directly to his vehicle, as Avis intended.

46. Avis had slid Plaintiff's Rental Document (true copy attached as Exhibit 2) into a Rental Terms and Conditions sleeve (true copy attached as Exhibit 3) and had placed both inside his car. Plaintiff's Rental Document included the identical charges as had appeared on Avis's e-mail reservation confirmation but now—for the first time—Avis included its $0.75/day "FTP SUR" charge.

47. As described earlier, this new charge was tucked quietly into the Rental Document's lower left-hand corner as the bottom line in a sea of other undefined and unhighlighted codes and in tiny font designed and formatted never to be read or questioned, much less understood by a reasonable customer, especially one who was dashing and driving, as Avis's Preferred Service program encouraged.

48. When Plaintiff returned his car the next day, Avis issued him a Return Document (true copy attached as Exhibit 4) and later sent him an e-receipt, a true copy of which is attached as Exhibit 5. Both included an "FTP SR" charge of $0.75/day, still failing ever to explain what this charge was and switching it from FTP SUR to FTP SR.

## CLASS-ACTION ALLEGATIONS

49. Plaintiff brings this lawsuit on behalf of the following class under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All Avis customers who rented a vehicle from Avis through www.avis.com and who paid a surcharge for earning frequent-flyer miles or rewards points from an Avis Travel Partner.
>
> Excluded from Plaintiff's class are (a) Avis and any entity in which Avis has a controlling interest; (b) Avis's employees, officers, directors, agents, and representatives and their family members; (c) class counsel, employees of class counsels' firms, and class counsels' immediate family members; and (d) the presiding judge and/or magistrate judge and any of their immediate family members.

50. Avis deceived Plaintiff into paying a surcharge for his frequent-flyer miles or reward points in connection with his vehicle rental; therefore, Plaintiff is class member.

51. Plaintiff can identify all other class members from Avis's records.

52. Plaintiff does not know the exact size of the class since this information is in Avis's exclusive control. But based on the nature of the commerce involved, Plaintiff believes that the class numbers in the thousands and that class members are dispersed throughout the U.S. Therefore, joinder of all class members would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

53. Plaintiff's claims are typical of other class members' claims because Plaintiff and class members were all injured by Avis's uniform deception of leading customers to believe that Avis would not charge them for frequent-flyer miles or rewards points. Accordingly, by proving his own claim Plaintiff will necessarily prove the other

class members' claims.

54. Common legal or factual questions predominate within the class, including but not limited to the following:

    a. Whether Avis's uniform representations, omissions, and conduct regarding its frequent-flyer miles or rewards-points surcharge were misleading or false;

    b. Whether Avis's uniform representations, omission, and conduct were likely to deceive consumers into believing that the frequent-flyer miles or reward points earned through a car rental were free;

    c. Whether Avis's uniform behavior violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*;

    d. Whether Avis engaged in deception in marketing the Travel Partner Program;

    e. Whether Avis undertook a course of conduct to hide its frequent-flyer miles or rewards-points surcharge;

    f. Whether Avis's conduct injured Plaintiff and class members;

    g. Whether as a result of Avis's wrongdoing, Plaintiff and class members sustained damages and are entitled to restitution and if so, the proper measure and appropriate formula for determining their damages and restitution; and

    h. Whether Avis owes Plaintiff and the class members injunctive relief.

55. Plaintiff can and will fairly and adequately represent and protect class members' interests and has no interests that conflict with or are antagonistic to their interests. Moreover, Plaintiff's attorneys are experienced and competent in complex, class-action litigation.

56. Class certification is the superior procedural vehicle for fairly and efficiently adjudicating Plaintiff's claims because:

      a.      Common questions of law or fact predominate over any individual questions that exist within the class and, consequently, economies to the Court and the parties exist in litigating these common issues on a classwide basis instead of on a repetitive, individual basis;

      b.      Each class member's damage claim is too small to make individual litigation an economically viable possibility, and few class members have any interest in individually controlling the prosecution of separate actions;

      c.      Class treatment is required for optimal deterrence and compensation and for limiting the Court-awarded, reasonable legal expenses incurred by class members; and

      d.      Despite the relatively small size of each class member's claim, the aggregate volume of their claims—coupled with the economies of scale inherent in litigating similar claims on a common basis—will enable class counsel to litigate this case on a cost-effective basis; and

      e.      Plaintiff anticipates no unusual difficulties in this class action's management in that all legal and factual questions are common to the class.

57. Class certification is appropriate under Federal Rule 23(b)(2) because Avis has acted on grounds generally applicable to Plaintiff and the class members, all of whom are at imminent risk of irreparable harm from Avis having charged and continuing to charge them hidden surcharges for frequent-flyer miles and reward points, and all of whom are entitled, as a result, to a declaration that establishes their rights and Avis's duties with respect to these surcharges.

### FIRST CAUSE OF ACTION
**Violation of New Jersey Consumer Fraud Act**
**(N.J.S.A. 56:8-1, *et seq.*)**

58. This legal claim incorporates all of the foregoing allegations.

59. In violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*—particularly N.J.S.A. 56:8-2—Avis used and employed unconscionable commercial

practices, deception, fraud, misrepresentations, and/or the knowing concealment, suppression, and/or omission of material facts with the intent that others rely thereon, in its marketing and advertisement of its Travel Partner Program.

60. Avis's misrepresentations, omissions, and unconscionable commercial practices include:

    a. Misrepresenting that its Travel Partner Program was free by failing to disclose its frequent-flyer miles or rewards-points surcharge while enumerating other fees and charges associated with vehicle rental;

    b. Intentionally concealing its frequent-flyer miles or rewards-points surcharge by failing to disclose it during the reservation process and then burying this surcharge in its Rental Document and Return Document; and

    c. Reaping profits to which it was not entitled by inducing consumers to participate in a seemingly "free" Travel Partner Program while charging unsuspecting consumers for participating in this program.

61. The acts, practices, misrepresentations and omissions by Avis described above constitute unconscionable, unlawful, fraudulent, and deceptive commercial practices. Plaintiff has suffered an ascertainable loss as a direct and proximate result of this conduct.

### SECOND CAUSE OF ACTION
### Breach of Contract under New Jersey Law

62. This legal claim incorporates all of the foregoing allegations.

63. Plaintiff contracted with Avis by reserving a rental vehicle on www.avis.com. That contract never explained that Avis would charge him for frequent-flyer miles or rewards points.

64. Plaintiff fully performed and satisfied his obligations under the contract that Avis formed with him through Avis's reservation process.

65. Avis breached its contract with Plaintiff by not performing according to the contract's obligations in violation of New Jersey common law and by instead charging Plaintiff for frequent-flyer miles that Avis offered to Plaintiff for free as a term of Avis's rental offer.

66. Plaintiff has suffered damages as a direct and proximate cause of Avis's breach of contract.

### THIRD CAUSE OF ACTION
**Breach of Implied Covenant of Good Faith and Fair Dealing**

67. This legal claim incorporates all of the foregoing allegations.

68. The contract formed between Avis and Plaintiff through Avis's reservation process was subject to the implied covenant that Avis would conduct its business with Plaintiff in good faith and would deal fairly with him.

69. Avis breached this implied covenant by failing to disclose its Travel Rewards Program surcharge and by misrepresenting that this program was free when Avis knew that it was subjecting Plaintiff to a charge that, due to Avis's failure to disclose it, Plaintiff could never have contemplated nor agreed to pay.

70. Avis breached this implied covenant by not providing terms in its contract that conspicuously disclosed this surcharge to the Plaintiff.

71. Plaintiff has been damaged as a direct and proximate result of Avis's breach of the implied covenant of good faith and fair dealing.

### FOURTH CAUSE OF ACTION
**Request for Injunctive Relief under New Jersey Law**

72. This legal claim incorporates all of the foregoing allegations.

73. Injunctive relief is appropriate when it appears with reasonable certainty that a party to an action will continue or repeat its wrongful acts.

74.     Enjoining Avis from continuing to charge customers, like Plaintiff, its hidden surcharge for frequent-flyer miles and reward points is appropriate because Plaintiff has established a reasonable likelihood of success on the merits; Plaintiff will suffer irreparable harm without such an order; the balance of the equities, including the public interest, weigh in favor of granting Plaintiff's request injunctive relief; and alternate remedies are inadequate to assist Plaintiff.

### FIFTH CAUSE OF ACTION
**Request for Declaratory Relief Pursuant to the
Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.**

75.     This legal claim incorporates all of the foregoing allegations.

76.     Plaintiff contends that Avis is charging him and others illegal surcharges for frequent-flyer miles or reward points; Avis likely believes these surcharges are not illegal.

77.     As such, an actual controversy exists between Plaintiff and Avis concerning the parties' rights and duties with respect to the legality of Avis's surcharge for frequent-flyer mile and reward points.

78.     The parties require this Court's declaration as to their respective rights, duties, and any other relevant legal relations, whether or not Plaintiff could seek or is otherwise entitled to further relief.

### NOTICE TO ATTORNEY GENERAL OF ACTION

79.     Pursuant to N.J.S.A. § 56:8-20, Plaintiff will mail a copy of this Class-Action Complaint to the New Jersey Attorney General within 10 days after filing it with the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court enter judgment as follows:

A.   An order declaring that this action is properly maintainable as a class action, certifying Plaintiff as the class representative, and designating Plaintiff's counsel as lead counsel for the class;

B.   An order awarding Plaintiff and the Class compensatory damages, treble damages, attorneys' fees, and costs of suit for Avis's consumer fraud, pursuant to N.J.S.A. 56:8-19;

C.   An order awarding damages to Plaintiff and the class for Avis's breach of contract;

D.   An order awarding damages to Plaintiff and the class for Avis's breach of the duty of good faith and fair dealing;

E.   An order enjoining Avis from continuing to charge customers for receiving frequent-flyer miles of reward points unless Avis properly discloses these charges;

F.   An order declaring illegal Avis's practice of charging customers for frequent-flyer miles or reward points with proper disclosure;

G.   An order awarding Plaintiff pre- and post-judgment interest;

H.   An order awarding Plaintiff's costs of suit; and

I.   An order providing such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  July 14, 2011    **LITE DEPALMA GREENBERG, LLC**

*s/ Bruce D. Greenberg*
Bruce D. Greenberg
Susana Cruz Hodge
Two Gateway Center, 12th Floor
Newark, NJ 07102
Telephone:   (973) 623-3000
Facsimile:    (973) 623-0858
E-mail:         bgreenberg@litedepalma.com
                    scruzhodge@litedepalma.com

**GOLDMAN SCARLATO & KARON, P.C.**
Daniel R. Karon
700 W. St. Clair Avenue, Suite 204
Cleveland, OH 44113
Telephone:   (216) 622-1851
Facsimile:    (216) 241-8175
E-mail:                  karon@gsk-law.com

**GOLDMAN SCARLATO & KARON, P.C.**
Brian D. Penny
Laura Killian Mummert
101 West Elm Street, Suite 360
Conshohocken, PA 19428
Telephone:   (484) 342-0700
Facsimile:    (484) 342-0701
E-mail:         penny@gsk-law.com
                    mummert@gsk-law.com

**MILLER GOLER FAEGES, LLP**
Jay R. Faeges
1301 E. 9th Street, Suite 2700
Cleveland, OH 44114-1835
Telephone:   (216) 696-3366
Facsimile:    (216) 363-5835
E-mail:         faeges@millergolerfaeges.com

*Attorneys for Plaintiff and the class*

## **LOCAL CIVIL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other action, pending arbitration or administrative proceeding currently pending in any court.

Dated:  July 14, 2011  **LITE DEPALMA GREENBERG, LLC**

*s/ Bruce D. Greenberg*
Bruce D. Greenberg
Susana Cruz Hodge
Two Gateway Center, 12th Floor
Newark, NJ 07102
Telephone:	(973) 623-3000
E-mail:	bgreenberg@litedepalma.com
	scruzhodge@litedepalma.com

**GOLDMAN SCARLATO & KARON, P.C.**
Daniel R. Karon
700 W. St. Clair Avenue, Suite 204
Cleveland, OH 44113
Telephone:	(216) 622-1851
Facsimile:	(216) 241-8175
E-mail:	karon@gsk-law.com

**GOLDMAN SCARLATO & KARON, P.C.**
Brian D. Penny
Laura Killian Mummert
101 West Elm Street, Suite 360
Conshohocken, PA 19428
Telephone:	(484) 342-0700
Facsimile:	(484) 342-0701
E-mail:	penny@gsk-law.com
	mummert@gsk-law.com

**MILLER GOLER FAEGES, LLP**
Jay R. Faeges
1301 E. 9th Street, Suite 2700
Cleveland, OH 44114-1835
Telephone:	(216) 696-3366
Facsimile:	(216) 363-5835
E-mail:	faeges@millergolerfaeges.com

*Attorneys for Plaintiff and the class*