# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Edward Schwartz, on behalf of himself and others similarly situated, | ) ) ) | |
| | ) | No.2:11-CV-04052 (JLL) |
| Plaintiff, | ) ) | **THIRD AMENDED CLASS-ACTION** |
| vs. | ) ) | **COMPLAINT** |
| Avis Rent A Car System, LLC, and Avis Budget Group, Inc. | ) ) ) | |
| Defendants. | ) ) | |

## INTRODUCTION

Edward Schwartz, on behalf of himself and others similarly situated, brings this action to obtain damages from and injunctive relief against Avis Rent A Car System LLC and Avis Budget Group, Inc. (collectively "Avis") for charging him and class members hidden surcharges for frequent-flyer miles or reward points earned from Avis's travel partners in connection with their rental-car agreements.

## PARTIES

1.      Plaintiff, Edward Schwartz, is a citizen of Ohio, residing at 5060 Crofton Road, Solon, Ohio 44139. During the class period, Avis charged Schwartz and Schwartz paid Avis a hidden surcharge for frequent-flyer miles he earned from an Avis travel partner in connection with his rental-car agreement.

2.      Defendant, Avis Budget Group, Inc. ("ABG") is a corporation organized under the laws of Delaware with corporate headquarters located at 6 Sylvan Way, Parsippany, NJ 07054.

3.      Defendant, Avis Rent A Car System, LLC ("ARACS"), is a Delaware general

limited liability company with world headquarters located at 6 Sylvan Way, Parsippany, NJ 07054. Defendant ARACS is an indirect subsidiary of Defendant ABG.

4.　　　Together, Defendant ABG and Defendant ARACS control the website, www.avis.com, from these headquarters.

## JURISDICTION AND VENUE

5.　　　This Court has diversity subject-matter jurisdiction over this class-action lawsuit pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs."

6.　　　This Court has personal jurisdiction over the parties because Plaintiff submits to this Court's jurisdiction and Avis is headquartered in this District.

7.　　　Venue exists in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because Avis resides in, transacts business in, is found within, and has agents in this District and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

## FACTUAL ALLEGATIONS

A.　　*Avis's background*

8.　　　Avis and its subsidiaries operate one of the world's leading car-rental brands, providing business and leisure customers with a wide range of services at more than 1,200 locations in the U.S. and nearly 900 locations in Canada, Australia, New Zealand, and the Latin American/Caribbean region. Founded in 1946, Avis was the first company to rent cars at airport locations. Within the U.S., Avis maintains approximately 344 airport locations and 905 off-

2

airport locations.

9.      To rent a vehicle from Avis, customers must make a vehicle reservation either by telephone or online through www.avis.com. This lawsuit currently concerns only vehicle rentals made through www.avis.com.

10.     When making reservations through www.avis.com, customers enter the date, time, and location of their rental; the type of vehicle to be leased; and certain personal data.

11.     When making their online reservation, customers also may choose to purchase, for an additional fee, rental options such as GPS Navigation, Roadside SafetyNet, XM Radio, a Fuel Service Option, and various rental protections and coverages, such as Loss Damage Waiver, Personal Accident Insurance, Personal Effects Protection, and Additional Liability Insurance.

12.     During the online-reservation process, Avis prominently displays an estimated total of the rental charges on-screen, which estimated total includes the customer's base rate, taxes and surcharges, and any rental options.

13.     Upon completion of the online reservation, Avis e-mails a confirmation of this estimated rental total cost to the customer. This estimated total cost continues to include the aforementioned mandatory and optional charges as well as a suggestion that the "estimated" qualifier of the total cost concerns the fact that "*[e]xtensions or late returns* result in additional charges" (emphasis added).

14.     While Avis only sometimes provides customers with a document entitled Rental Terms and Conditions at the time that customers pick up their rental vehicles, Avis always provides customers with a Rental Document that describes details of the rental, including the vehicle's make and model; the rental dates; the mileage at pick-up; and an itemized list of the rental charges, including all optional charges such as GPS Navigation and the Fuel Service

Option.

15.     Similarly, when customers return the vehicle, Avis provides them a Return Document, which itemizes the final rental charges.

16.     As part of Avis's vehicle-rental business, it offers complimentary membership programs designed to speed-up and streamline the car-reservation and rental process.

17.     The *My Avis Service Program* provides customers with a personal member identification number—a "Wizard" number—that allows them to create and save a rental profile that contains their personal data, rental preferences, and special-discount information. This way, customers needn't provide this information every time they make a reservation.

18.     The *Avis Preferred Service Program*, which also allows customers to create a personal rental profile using a "Wizard" number, includes the added benefit of allowing customers to bypass the service counter upon airport arrival and to proceed directly to their reserved rental vehicle where the Rental Document and sometimes the Rental Terms and Conditions await them.

19.     Customers who enroll in the *My Avis Service Program* agree to be bound by various terms, described in Avis's Terms of Use/Disclaimer.

20.     Customers who enroll in the *Avis Preferred Service Program* agree to be bound by various terms, described in the Avis Preferred Service Global Terms and Conditions ("Preferred Terms and Conditions").

21.     *My Avis* and *Avis Preferred Service* members both may choose to receive e-receipts for their rental transaction, which e-receipts itemize their final rental charges.

**B.     *Avis's travel-partner program and this program's secret frequent-flyer-miles surcharge***

22.     Through Avis's Travel Partner Program, customers may earn frequent-flyer miles

or reward points on car rentals made at participating Avis airport locations through a variety of partnerships with airlines, hotels, and other select companies (Avis's "Travel Partners").

23.    For example, at the time that Plaintiff entered into the rental transaction that is the subject of this complaint, customers could earn 50 miles per rental day or 500 miles on rentals of five or more days with Continental Airlines and could earn 600 reward points per rental with Southwest Airlines.

24.    *Avis Preferred Service* customers who wish to earn frequent-flyer miles or reward points may enter their frequent-flyer or reward-program membership number during the online reservation process.  All other customers who wish to earn miles or reward points may submit their frequent-flyer or rewards-program membership number by telephone after completing the online reservation.

25.    To participate in its Travel Partners' frequent-flyer and reward-points programs, Avis pays its Travel Partners for the cost of miles or points purchased from them as well as a 7.5% federal excise tax. Under the Tax Relief Act of 1997, this 7.5% federal-excise tax applies to all states, except Arizona, California, Missouri, Oregon and Wyoming.

26.    But without suitable disclosure, Avis turns around and charges its customers a surcharge for "earning" miles or reward points from its Travel Partners when at all stages in the rental process Avis suggests to its customers that it would provide them these miles or reward points at no additional charge.

27.    Upon information and belief, Avis typically charges its customers $0.75 per rental day for the "benefit" of accruing frequent-flyer miles or reward points.

28.    But neither Avis's Terms of Use/Disclaimer associated with its *My Avis Service Program* nor its Preferred Terms and Conditions associated with its *Avis Preferred Service*

*Program* ever explains that Avis will charge customers for frequent-flyer miles or reward points.

29.     In this manner, Avis baits and switches its customers first by suggesting that it will provide them frequent-flyer miles or reward points at no additional charge and then quietly—if not secretly—charging customers for these frequent-flyer miles or reward points without ever properly and objectively disclosing and explaining this surreptitious charge.

30.     At no time during the reservation-and-rental process does Avis disclose to anyone—in an objectively visible and understandable way—that it will charge all customers for frequent-flyer miles or rewards-points earned with their vehicle rentals.

31.     Instead, Avis makes customers believe that it will provide them frequent-flyer miles or reward points at no additional charge while unnoticeably charging them for these miles or points.

32.     Unlike surcharges for the Energy Recovery Fee, Customer Facility Charge, and rental options like GPS Navigation, Avis does not list its frequent-flyer miles or rewards-points surcharge on the estimated total that Avis prominently displays during the online reservation process, nor does Avis list this surcharge anywhere on the e-mail reservation confirmation that itemizes every *other* charge Avis intends to charge its customers.

33.     Likewise, Avis's various terms and conditions make no mention that Avis will charge customers for earning frequent-flyer miles or reward points.  With respect to rental charges, Avis's Rental Terms and Conditions and its Preferred Terms and Conditions instead explain as follows:

> 6.  Rental Charges
>
> * * *
>
> You'll pay all charges that apply to the rental for miscellaneous services, and, where permitted, airport facility fees and/or

6

concession recovery fees, and vehicle license recovery fees, other fees and surcharges.

34.     What's more, Avis's Preferred Service Benefits webpage simply proclaims that "[w]ith over 50 travel partners worldwide, it's easy to earn frequent traveler miles or points on paid rentals," while its Traveler Preferences – HELP webpage merely explains, as follows:

**Frequent Traveler Program**

Avis has many partner relationships with airlines, hotels, and destinations. Renters can earn bonus miles, points and special discounts in these programs.

**Frequent Traveler Membership Number**

Avis has many partner relationships with airlines, hotels, and destinations. Renters can earn bonus miles, points and special discounts in these programs.

35.     Like Avis's Rental Terms and Conditions and its Preferred Terms and Conditions, Avis's Preferred Service Benefits and Traveler's Preferences – HELP webpages also make no mention of charging customers for frequent-flyer miles or reward points—even while specifically discussing Avis's frequent-traveler program.

36.     Instead of describing its frequent-flyer miles or rewards-points surcharges during the reservation process or anywhere in the explanatory materials that shape and control its customers' rental relationships, when customers pick up their vehicles, Avis includes on the Rental Document—for the first time—a line-item charge tucked discreetly into the lower left-hand corner entitled "FTP SUR." (Avis switches to describing this coded entry as "FTP SR" on customers' Return Document or optional e-receipt.)

37.     Importantly, neither Avis's Rental Document nor its Return Document or e-receipt describes theses codes (although describing them in the Return Document or e-receipt wouldn't much matter since by that time customers have concluded their rentals) or explains that

these codes concern surcharges for customers' frequent-flyer miles or reward points earned from vehicle rentals.

**C.**     *Plaintiff's facts*

38.     On May 15, 2011, Plaintiff—an *Avis Preferred Service* member—made a rental reservation through www.avis.com.  His reserved a one-day rental of a Ford Escape (or similarly classed vehicle) for May 15-16, 2011, which he planned to pick up and return to Manchester-Boston Regional Airport.

39.     During the reservation process, Avis prompted Plaintiff to enter his Continental OnePass frequent-flyer number, which he did. This way, Plaintiff could receive 50 frequent-flyer miles for his one-day car rental.

40.     Before completing his vehicle rental, Avis listed all of Plaintiff's rental charges, none of which included a frequent-flyer mile surcharge.

41.     Immediately after Plaintiff completed his rental reservation, Avis sent him an e-mail reservation confirmation, which confirmation estimated the total cost for the rental to be $134.11. A true copy of that confirmation is attached as Exhibit 1.

42.     Plaintiff's estimated total cost included all the charges that he had selected only moments earlier (i.e., GPS navigation) or that Avis had required (i.e., Avis's daily rental amount and the associated taxes, fees, and charges)—and that Avis had listed—when Plaintiff made his reservation.

43.     Avis's e-mail reservation confirmation quoted only the following charges and fees, making no mention of a frequent-flyer miles or rewards-points surcharge:

> **Base Rate and Charges**
> Base Rate                        $94.99/day
> Energy Recovery Fee              $0.50/day
> Vehicle License Fee              $3.00/day

| Customer Facility Charge | $2.25/day |
| Concession Recovery Fee | 10 % |
| Tax (9.0%) | $9.92 |
| **Rental Options** | |
| GPS Navigation | $13.95 |

44.     Avis's e-mail reservation confirmation described certain taxes and fees that were

not included on it:

> **Additional Fees**
>
> Optional equipment and coverages may be subject to taxes and
> fees that are not included in the estimated total.
>
> \* \* \*
>
> Where2 GPS Navigation:
>
> - Taxes not included.
>
> \* \* \*
>
> Gas Service Option:
>
> Fees for the Gas Service Option are not included in the Estimated
> Total.

45.     But unlike Avis's e-mail reservation confirmation's suggestion that the

aforementioned charges would appear later, this confirmation neither included a frequent-flyer

miles or rewards-points surcharge nor suggested that one would appear later.

46.     So while Plaintiff knew precisely what other charges to expect (or not to expect),

he neither had nor could have had any reasonable idea that Avis intended to charge him for

frequent-flyer miles or reward points.

47.     When Plaintiff arrived at the airport on the day of his rental, as an *Avis Preferred*

*Service* member he dashed past the Avis service counter and headed directly to his vehicle, as

Avis intended and its *Preferred Service* program encouraged.

9

48.     Avis had slid Plaintiff's Rental Document (true copy attached as Exhibit 2) into a Rental Terms and Conditions multi-fold sleeve (true copy attached as Exhibit 3) and had placed both inside his car. Plaintiff's Rental Document included the identical charges as had appeared on Avis's e-mail reservation confirmation but now—for the first time—Avis included its $0.75/day "FTP SUR" charge.

49.     As described earlier, this new charge was tucked quietly into the Rental Document's lower left-hand corner as the bottom line in a sea of other undefined and unhighlighted codes and in tiny font designed and formatted never to be read or questioned, much less understood by a reasonable renter, especially one who was dashing and driving, as Avis intended and its *Preferred Service* program encouraged.

50.     When Plaintiff returned his car the next day, Avis issued him a Return Document (true copy attached as Exhibit 4) and later sent him an e-receipt, a true copy of which is attached as Exhibit 5. Both included an "FTP SR" charge of $0.75/day, still failing ever to explain what this charge was and switching it from FTP SUR to FTP SR.

## CLASS-ACTION ALLEGATIONS

51.     Plaintiff brings this lawsuit on behalf of the following class under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All Avis customers who rented a vehicle from Avis through www.avis.com and who paid a surcharge for receiving frequent-flyer miles or reward points from an Avis Travel Partner.

> Excluded from Plaintiff's class are (a) Avis and any entity in which Avis has a controlling interest; (b) Avis's employees, officers, directors, agents, and representatives and their family members; (c) class counsel, employees of class counsels' firms, and class counsels' immediate family members; and (d) the presiding judge and magistrate judge and any of their immediate family members.

52.     Avis deceived Plaintiff into paying a surcharge for his frequent-flyer miles or reward points in connection with his vehicle rental; therefore, Plaintiff is a class member.

53.     Plaintiff can identify all other class members from Avis's records.

54.     Plaintiff does not know the exact size of the class since this information is in Avis's exclusive control. But based on the nature of the commerce involved, Plaintiff believes that the class numbers in the thousands and that class members are dispersed throughout the U.S. Therefore, joinder of all class members would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

55.     Plaintiff's claims are typical of other class members' claims because Plaintiff and class members were all injured by Avis's uniform deception of leading customers to believe that Avis would not charge them for frequent-flyer miles or reward points.

56.     Common legal or factual questions predominate within the class, including but not limited to the following:

   a.     Whether Avis's uniform representations, omissions, and conduct regarding its frequent-flyer miles or rewards-points surcharge were misleading or false;

   b.     Whether Avis uniform behavior in marketing its Travel Partner Program constituted affirmative misrepresentations, intentional omissions, or unconscionable commercial practices that violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*;

   c.     Whether Avis's uniform representations, omissions, and conduct were likely to deceive consumers into believing that Avis would provide them frequent-flyer miles or reward points at no additional charge to the other prices that Avis enumerated in consumers' rental reservations;

   d.     Whether Avis undertook a course of conduct to hide its frequent-flyer miles or rewards-points surcharge;

   e.     Whether Avis's conduct injured Plaintiff and class members;

   f.     Whether as a result of Avis's wrongdoing, Plaintiff and class members sustained damages and are entitled to damages and/or restitution and if so,

11

the proper measure and appropriate formula for determining their damages and restitution; and

g.      Whether Avis owes Plaintiff and the class members injunctive relief.

57.     Plaintiff can and will fairly and adequately represent and protect class members' interests and has no interests that conflict with or are antagonistic to their interests. Moreover, Plaintiff's attorneys are experienced and competent in complex, class-action litigation.

58.     Class certification is the superior procedural vehicle for fairly and efficiently adjudicating Plaintiff's claims because:

a.      Common questions of law or fact predominate over any individual questions that exist within the class and, consequently, economies to the Court and the parties exist in litigating these common issues on a classwide basis instead of on a repetitive, individual basis;

b.      Each class member's damage claim is too small to make individual litigation an economically viable possibility, and few class members have any interest in individually controlling the prosecution of separate actions;

c.      Class treatment is required for optimal deterrence and compensation and for limiting the Court-awarded, reasonable legal expenses incurred by class members;

d.      Despite the relatively small size of each class member's claim, the aggregate volume of their claims—coupled with the economies of scale inherent in litigating similar claims on a common basis—will enable class counsel to litigate this case on a cost-effective basis; and

e.      Plaintiff anticipates no unusual difficulties in this class action's management in that all legal and factual questions are common to the class.

59.     Class certification is appropriate under Federal Rule 23(b)(2) because Avis has acted on grounds generally applicable to Plaintiff and the class members, all of whom are at imminent risk of irreparable harm from Avis having charged and continuing to charge them hidden surcharges for frequent-flyer miles and reward points and all of whom are entitled, as a

12

result, to a declaration that establishes their rights and Avis's duties with respect to these surcharges.

## FIRST CAUSE OF ACTION
### Violation of New Jersey Consumer Fraud Act Against ABG and ARACS
### (N.J.S.A. 56:8-1, *et seq.*)

58.     This legal claim incorporates all of the foregoing allegations.

59.     In violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*—particularly N.J.S.A. 56:8-2—Avis used and employed unconscionable commercial practices, deception, fraud, misrepresentations, and/or the knowing concealment, suppression, and/or omission of material facts with the intent that others rely thereon, in its marketing, advertisement and implementation of its Travel Partner Program.

60.     ***Avis's unlawful conduct – Avis's affirmative misrepresentations.*** By the following affirmative acts, Avis misrepresented the truth to Plaintiff and other reasonable renters, acting in such a manner as to convince Plaintiff and other reasonable renters that Avis would not charge them for the frequent-flyer miles or reward points that Avis invited and encouraged Plaintiff and reasonable renters to request during the rental-reservation process:

   a.     Avis affirmatively represented to Plaintiff and other reasonable renters that its Travel Partner Program involved no additional charge in the estimated price that Avis quoted to Plaintiff and other reasonable renters by failing to disclose its frequent-flyer miles or rewards-points surcharge to Plaintiff and other reasonable renters and instead by enumerating only *other* fees and charges associated with Plaintiff's and other reasonable renters' vehicle rentals.

   b.     Avis affirmatively listed multiple other charges to Plaintiff and other reasonable renters during the on-line rental-reservation process and affirmatively invited Plaintiff and other reasonable renters to enter their airline frequent-flyer number or points-program number, which they did. But during this entire time and afterwards, Avis affirmatively hid (in discrete, extremely difficult-to-find areas on its website) and affirmatively encoded (in later-produced documents that Avis expected neither Plaintiff nor reasonable renters to see, understand, or appreciate) the fact that Avis

was affirmatively charging Plaintiff and other reasonable renters $.0.75/day for the frequent-flyer miles or reward points that Avis never properly disclosed during the reservation process.

c.   Although Avis's rental-reservation process "estimated" Plaintiff's and other reasonable renters' eventual rental prices, Avis affirmatively misrepresented that only specific pricing elements constituted Plaintiff's and other reasonable renters' rental prices, and these specific elements did not include Avis's frequent-flyer miles or rewards-points surcharge.

d.   While affirmatively misrepresenting to Plaintiff and other reasonable renters that their estimated rental prices were based on specifically enumerated pricing elements, Avis also affirmatively represented that only extensions, late returns, or its Gas Service Option were subject to later inclusion to Plaintiff's and other reasonable renters' estimated rental prices. But Avis made no similar reference that its frequent-flyer miles or rewards-points surcharge would also affect Plaintiff's and other reasonable renters' rental prices.

e.   Although Avis's rental-reservation process clearly and affirmatively stated and explained to Plaintiff and other reasonable renters that Avis would not charge them for the frequent-flyer miles or reward points that Avis's on-line rental-reservation process affirmatively encouraged Plaintiff and other reasonable renters to request, Avis did, in fact, charge Plaintiff and other reasonable renters for these frequent-flyer miles and reward points.

f.   Avis affirmatively structured and designed its website in such a manner as to bury its website's sole reference to Avis's frequent-flyer miles or rewards-points surcharge multiple mouse actions (meaning drags and clicks) and web pages deep. Avis also affirmatively structured and designed its website in such manner as to cause Plaintiff and other reasonable renters not to discover Avis's frequent-flyer miles or rewards-points surcharge.

To discover Avis's frequent-flyer or reward-points surcharge, Plaintiff and other reasonable renters would have had to undertake the investigative process from a place entirely unassociated with where they would start the online-reservation process (much less an investigation that they never even knew or ever expected they had to initiate). To discover this charge, Avis affirmatively structured and designed its website in such manner as to require Plaintiff and other reasonable renters to sidestep the reservation fields that Avis prominently displayed on its homepage and from where Avis reasonably expected Plaintiff and other reasonable renters to begin their on-line rental-reservation process.

Instead, Plaintiff and other reasonable renters had to (yet wouldn't or couldn't) know to click "Cars & Services," which is not only Avis's last of four tabs but bears a moniker having no reasonable relationship to the rental-reservation process. In this manner, Avis affirmatively structured and designed its website in such manner as to require Plaintiff and other reasonable renters to plot a course through multiple web pages if they ever hoped to find Avis's eventual reference to its frequent-flyer miles or rewards-points surcharge (affirmatively misdescribed three times as a "Tax") that Avis buried deep in its website.

Avis's affirmative web design and structure creates the plausible inference that Avis affirmatively acted to prevent Plaintiff and other reasonable renters from discovering its frequent-flyer miles or rewards-points surcharge.

g.   Avis's website, rental-reservation process, Rental Documents, and Return Documents were structured and designed in such a way as to hide Avis's charge to Plaintiff and other reasonable renters for the frequent-flyer miles or reward points that Avis invited them to accrue when entering their airline frequent-flyer number, or points-program number. Avis hid this surcharge from Plaintiff and other reasonable renters when Avis could have easily and simply referred to this charge in its enumerated pricing fields and/or on its homepage for Plaintiff and other reasonable renters to see before completing their rental reservation.

Instead, Avis, in addition to omitting reference to its frequent-flyer miles or rewards-points surcharge from the rental-reservation process and hiding it deep in its website, listed its frequent-flyer miles or rewards-points surcharge at the bottom of the lower left-hand corner of Plaintiff's and other reasonable renters' Rental Documents', in no darker or more pronounced, or larger print or font than any of these documents' other pro-forma terms, which Rental Document Avis slipped quietly into a multi-fold sleeve.

Avis designed its rental-reservation process so that Plaintiff and other reasonable renters would have little chance even to see their Rental Documents and Return Documents (and the new terms tucked into them) before committing to Avis and driving off since, after all, Avis's Rental Documents and Return Documents did not even exist when Plaintiff and other reasonable renters formed their contracts with Avis.

Moreover, Avis's first non-buried and non-website reference to its frequent-flyer surcharge was in the form of a secret code—" FTP SUR": a code that was contained in Avis's Rental Document and that Avis could not expect any reasonable renter to crack, especially considering that this acronym neither looks nor sounds like "frequent-flyer" or "reward points"

anything. Avis then *re*-encoded this charge as "FTP SR$" in Plaintiff's and other reasonable renters' Return Documents to make doubly sure that they would not realize what Avis had done.

These facts create the plausible inference that Avis made affirmative misrepresentations for the purpose of committing an unlawful act proscribed by the NJCFA—namely, to generate additional and illegal revenues from Plaintiff and other reasonable and unsuspecting renters.

h.      Avis's affirmative misrepresentations were material to Plaintiff's and other reasonable renters' decisions to request frequent-flyer miles or reward points. The knowledge of a charge for frequent-flyer miles or reward points is important to vehicle renters because: (1) they need and deserve to make informed decisions concerning whether they want to spend money for frequent-flyer miles or reward points, and (2) they need and deserve to be able to calculate whether these frequent-flyer miles or reward points might actually cause them to *lose* money where Avis's surcharge for frequent-flyer miles or reward points exceeds the cash value of the miles or points received.

But Avis did *not* allow Plaintiff and other reasonable renters to make this important calculation. Avis intentionally disregarded these practical and important reasons for why Plaintiff and other reasonable renters needed to know that Avis was charging them for frequent-flyer miles and reward points. Avis's disregard of a fact affecting the ultimate cost to Plaintiff and other reasonable renters for frequent-flyer miles or reward points creates the plausible inference that Plaintiff and other reasonable renters would have considered knowledge of the surcharge material to their decision whether or not to provide Avis their airline frequent-flyer number or points-program number—as opposed, importantly, to this information having affected their decision to rent a vehicle from Avis.

61.     ***Avis's unlawful conduct – Avis's intentional omissions.*** Avis made the following omissions with intent and knowledge to conceal or omit material facts (i.e., knowing concealments) by both failing to include these material facts in a place where Plaintiff and other reasonable renters would expect to see them and by instead (to the extent that any disclosure was made at all) hiding these facts in obscure places with the intention that neither Plaintiff nor other reasonable renters ever see them:

a.      When Plaintiff and other reasonable renters executed their rental agreements, Avis had not disclosed to them its intention to charge them

for frequent-flyer miles or reward points, which Avis did intend to do, if Plaintiff and other reasonable renters accepted Avis's invitation to enter their airline frequent-flyer number or points-program number.

b.      Avis never informed Plaintiff and other reasonable renters of the frequent-flyer miles or rewards-points surcharge that Avis intended to (and did) charge them if Plaintiff and other reasonable renters accepted Avis's invitation to enter their airline frequent-flyer number or points-program number.

c.      By refusing to make a clear and comprehensive disclosure of its frequent-flyer miles or rewards-points surcharge (either during the rental-reservation process or on its website) when Avis was aware that it was going to assess this charge, Avis acted with intent and knowledge to conceal or omit the material fact that it was going to charge Plaintiff and other reasonable renters for the frequent-flyer miles or reward points that Avis invited them to accrue when entering their frequent-flyer number or points-program number.

d.      Had Avis wanted or intended for Plaintiff and other reasonable renters to know that it was charging them for the frequent-flyer miles or reward points that it invited them to accrue when entering their airline frequent-flyer number or points-program number, Avis could (indeed, should) have described this intention during the on-line rental-reservation process by including this charge in the list of other enumerated pricing fields that Plaintiff and other reasonable renters observed while engaging in the vehicle-rental process, or elsewhere on Avis's website.

To accomplish this, Avis could (indeed, should) have included this surcharge (or at least reference to it) somewhere on one of the screens associated with Avis's on-line rental-reservation process, including on the confirmation page. When doing this, Avis could (indeed, should) have done this in a place and manner where Avis could expect Plaintiff and other reasonable renters to see, appreciate, and understand it.

The fact that Avis omitted this information from the rental-reservation process and omitted it from any conspicuous place on its website, when it could (indeed, should) have easily included it in both places, creates the plausible inference that Avis omitted this information intentionally and knowingly for the purpose of generating additional and illegal revenues from Plaintiff and other reasonable and unsuspecting renters..

e.      Avis refused to disclose, during the rental-reservation process and meaningfully on its website, its intention to charge Plaintiff and other reasonable renters a frequent-flyer miles or rewards-points surcharge for the frequent-flyer miles or reward points that Avis invited them to accrue

when entering their airline frequent-flyer number or points-program number.

Avis omitted any reference to its frequent-flyer miles or rewards-points surcharge in the enumerated items that constituted Plaintiff's and other reasonable renters' estimated charges; omitted reference to its frequent-flyer miles or rewards-points surcharge when listing other charges that were subject to later inclusion, such as extensions, late returns, or its Gas Service Option; and omitted any reference to its frequent-flyer miles or rewards-points surcharge on its homepage, from where it encouraged Plaintiff and other reasonable renters to proceed when making their on-line vehicle rentals.

These facts are all material omissions relating to Avis's intention to charge Plaintiff and other reasonable renters for the frequent-flyer miles that Avis invited them to accrue when entering their airline frequent-flyer number or points-program number. And these facts create the plausible inference that Avis made these omissions knowingly and intentionally for the purpose of generating additional and illegal revenues from Plaintiff and other reasonable and unsuspecting renters.

f.      Although Avis's rental-reservation process "estimated" Plaintiff's and other reasonable renters' eventual rental prices by listing specific pricing elements, Avis did not similarly list or refer to Avis's frequent-flyer miles or rewards-points surcharge.

By informing Plaintiff and other reasonable renters that their estimated rental prices were based on specifically enumerated pricing elements and that only extensions, late returns, or its Gas Service Option were subject to later inclusion in Plaintiff's and other reasonable renters' estimated rental prices, but omitting any similar reference to its frequent-flyer miles or rewards-points surcharge when it knew it was going to assess this charge, Avis acted with intent and knowledge to conceal or omit this material fact..

g.      Avis's intentional omissions were material to Plaintiff's and other reasonable renters' decisions to request frequent-flyer miles or reward points. The knowledge of a charge, which Avis intentionally omitted thereby creating the plausible inference that frequent-flyer miles or reward points could be obtained at no additional charge, is important to vehicle renters. This knowledge is important to them because: (1) they need and deserve to make informed decisions concerning whether they want to spend money for frequent-flyer miles or reward points, and (2) they need and deserve to be able to calculate whether these frequent-flyer miles or reward points might actually cause them to *lose* money where Avis's

18

surcharge for frequent-flyer miles or reward points exceeds the cash value of the miles or points received.

But Avis did *not* allow Plaintiff and other reasonable renters to make this important calculation. Avis intentionally disregarded these practical and important reasons for why Plaintiff and other reasonable renters needed to know that Avis was charging them for frequent-flyer miles and reward points. Avis's disregard of a fact affecting the ultimate cost to Plaintiff and other reasonable renters for frequent-flyer miles or reward points creates the plausible inference that Plaintiff and other reasonable renters would have considered knowledge of the surcharge material to their decision whether or not to provide Avis their airline frequent-flyer number or points-program number—as opposed, importantly, to this information having affected their decision to rent a vehicle from Avis.

62.     *Avis's unlawful conduct – Avis's unconscionable commercial practices and deceptions.* Avis engaged in the following unconscionable commercial practices and deceptions:

a.      Avis repeatedly listed specific pricing elements during its rental-reservation process (only the *amounts* of which were subject to adjustment), then embedded its double-encoded frequent-flyer miles or rewards-points surcharge into Plaintiff's and other reasonable renters' Rental Documents, Return Documents, and e-receipts knowing that Plaintiff and reasonable renters would neither detect nor understand that these later documents included Avis's hidden charge.

b.      In this manner, Avis advertised to Plaintiff and other reasonable renters merchandise (i.e., frequent-flyer miles and reward points) at no additional charge as part of Avis's plan or scheme not to sell them vehicle rentals at the prices Avis presented and advertised in the price estimates that Avis provided Plaintiff and other reasonable renters.

c.      As a result, Avis baited-and-switched Plaintiff and other reasonable renters by first not including—then later adding—secret, hidden, and/or improperly disclosed frequent-flyer miles or rewards-points surcharges to their vehicle rentals.  This activity was altogether different from having merely encouraged Plaintiff and other reasonable renters to purchase a *different* product or service *in addition to* Avis's advertised vehicle rentals. It was different because Avis didn't "encourage" Plaintiff and other reasonable renters to do anything; rather, Avis hid what it was doing *from* Plaintiffs and other reasonable renters.

d.      Avis's intention to charge and act of charging Plaintiff and other reasonable renters for frequent-flyer miles or reward points (i.e., the charges that Avis hid or improperly disclosed) constituted Avis's plan or

scheme not to sell Plaintiff and other reasonable renters vehicle rentals at the prices that Avis advertised to them on its website and that Avis described to them in its subsequent rental confirmations.

e.  Avis's bait-and-switch concerned not Plaintiff's and other reasonable renters' vehicle-rental contract as a whole but rather their interest and belief in receiving frequent-flyer miles or reward points for no additional charge, unlike the enumerated charges that Avis conspicuously circumscribed on Plaintiff's and other reasonable renters' vehicle-rental confirmation screen and on other screens associated with the vehicle-rental process.

f.  Avis's suggestion that no additional charges would be associated with Plaintiff's and other reasonable renters vehicle rentals—Avis's "bait"— which Avis followed by charging Plaintiff and other reasonable renters for the frequent-flyer miles and reward points that Avis had earlier intentionally suggested it would not—Avis's "switch." In this manner, Avis's plan or scheme switched Plaintiff's and other reasonable renters' deals after they had made their rental-reservation contacts with Avis (i.e., after they had gotten in the door).

63.  ***Plaintiff's ascertainable loss resulting from Avis's unlawful conduct.*** Avis's above-described conduct caused Plaintiff an ascertainable loss since, as a result, Plaintiff paid for frequent-flyer miles when Avis suggested that he would not have to.

64.  Plaintiff had to pay for these frequent-flyer miles when he didn't expect to or have to because Avis misrepresented to him that there was no charge for them and intentionally failed to disclose the existence of this charge.

65.  Plaintiff's ascertainable loss is definite, certain, and measurable—$0.75/ day— rather than merely theoretical.

66.  By alleging damages of $0.75/day, which are not .67% of his total rental charge but are instead 100% of his overpayment for frequent-flyer miles based on Avis's illegal behavior, Plaintiff and other reasonable renters are able to present their damages with certainty and are able to demonstrate that these damages are capable of calculation and particularization.

67.  By paying for frequent-flyer miles or reward points when Avis suggested that Plaintiff and other reasonable renters would not have to, Plaintiff and other reasonable renters lost the benefit of their bargain as to frequent-flyer miles and reward points (i.e., they paid more

than they should have for what Avis delivered to them and paid what they did not expect or intend to pay). In this manner, Avis denied Plaintiff and other reasonable renters the fruits of their agreements with Avis as to frequent-flyer miles and reward points.

68.     As such, Plaintiff and other reasonable renters received less than Avis promised them. Avis's illegal conduct thus caused Plaintiff's and other reasonable renters' losses.

69.     *The causal relationship between Plaintiff paying for frequent-flyer miles and Avis's scheme to make Plaintiff believe he would not have to.* Avis's misrepresentations, deceptions and intentional failure to list its frequent-flyer or reward-points surcharge along with its other enumerated pricing fields during the reservation process and Avis's intentional act of burying reference to this charge deep in its website caused Plaintiff and other reasonable renters to pay for frequent-flyer miles or reward points.

70.     Plaintiff alleges a causal connection between Avis's unlawful conduct (i.e., Avis's affirmative and/or intentional failure to list its frequent-flyer or reward-points surcharge alongside its other enumerated pricing fields during the reservation process, its act of intentionally burying reference to this charge deep in its website, and its bait-and-switch scheme) and Plaintiff's and other reasonable renters' ascertainable losses (i.e., the $0.75/day that Avis charged Plaintiff and other reasonable renters for frequent-flyer miles and reward points).

71.     Avis's unlawful conduct proximately caused Plaintiff and other reasonable renters to pay $0.75/day wrongly for frequent-flyer miles and reward points, as opposed to having caused them to decide whether to rent from Avis or to request frequent-flyer miles during the rental-reservation process.

72.     During the process in which Plaintiff and other reasonable renters rented a vehicle, Avis's affirmative misrepresentations, unconscionable commercial practices, and deceptions were discreetly on Avis's website and in its Rental Documents, Return Documents, and e-receipts, which affirmative misrepresentations, unconscionable commercial practices, and deceptions Plaintiff and other reasonable renters necessarily saw since they all completed the on-

21

line reservation and subsequent rental process. In contrast, Avis kept its omissions and other unconscionable commercial practices and deceptions quiet, meaning Plaintiff and other reasonable renters did not necessarily see them, as is the nature of omissions and unconscionable commercial practices and deceptions that are in the form of omissions.

73.     Avis expressed, made, and/or committed its affirmative misrepresentations, intentional omissions, unconscionable commercial practices, and deceptions during and after the rental-reservation process, which conduct Plaintiff and other reasonable renters were exposed to (as it concerned Avis's misrepresentations or unconscionable commercial practices and deceptions) or which conduct Avis intentionally kept from Plaintiff and other reasonable renters (as it concerned Avis's omissions or unconscionable commercial practices and deceptions in the form of omissions).

74.     The facts constituting Avis's affirmative misrepresentations, intentional omissions, unconscionable commercial practices, and deceptions create the plausible inference that Avis intended to and did trick Plaintiff and other reasonable renters into believing that their estimated rental amounts included and entitled them to frequent-flyer miles and reward points, which they did not, because neither Plaintiff nor other reasonable renters (as a direct and intended result of Avis's affirmative misrepresentations, intentional omissions, unconscionable commercial practices, and deceptions) saw or understood that Avis would charge them for frequent-flyer miles and reward points; indeed, everything Avis did with respect to inducing Plaintiff and other reasonable renters to enter their airline frequent-flyer number or points-program number suggested, if not affirmatively stated, precisely the opposite.

75.     All the acts, practices, misrepresentations, and omissions by Avis described above constitute affirmative misrepresentations; intentional omissions; and unconscionable, unlawful,

22

fraudulent, and deceptive commercial practices that directly and proximately caused Plaintiff's and other reasonable renters' ascertainable losses.

## SECOND CAUSE OF ACTION
### Breach of Contract under New Jersey Law Against ARACS

76.     This legal claim incorporates all of the foregoing allegations.

77.     Plaintiff contracted with Avis by reserving a rental vehicle on www.avis.com. That contract never explained that Avis would charge him for frequent-flyer miles or reward points.

78.     Plaintiff fully performed and satisfied his obligations under the contract that Avis formed with him through Avis's reservation process.

79.     Avis breached its contract with Plaintiff by not performing according to the contract's obligations in violation of New Jersey common law and by instead charging Plaintiff for frequent-flyer miles that Avis offered to Plaintiff at no additional charge as a term of Avis's rental contract.

80.     Plaintiff has suffered damages as a direct and proximate cause of Avis's breach of contract.

## THIRD CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing Against ARACS

81.     This legal claim incorporates all of the foregoing allegations.

82.     The contract formed between Avis and Plaintiff through Avis's reservation process was subject to the implied covenant that Avis would conduct its business with Plaintiff in good faith and would deal fairly with him.

83.     Avis breached this implied covenant by failing to disclose its Travel Rewards Program surcharge and by misrepresenting that it would provide him frequent-flyer miles at no additional charge when Avis knew that it was subjecting Plaintiff to a charge that, due to Avis's failure to disclose it, Plaintiff could never have contemplated.

84.     Avis breached this implied covenant by not providing terms in its contract that conspicuously disclosed this surcharge to the Plaintiff.

85.     Plaintiff has been damaged as a direct and proximate result of Avis's breach of the implied covenant of good faith and fair dealing.

## FOURTH CAUSE OF ACTION
### Request for Injunctive Relief Against ABG and ARACS under New Jersey Law

86.     This legal claim incorporates all of the foregoing allegations.

87.     Injunctive relief is appropriate when it appears with reasonable certainty that a party to an action will continue or repeat its wrongful acts.

88.     Enjoining Avis from continuing to charge customers, like Plaintiff, its hidden surcharge for frequent-flyer miles and reward points is appropriate because Plaintiff has established a reasonable likelihood of success on the merits; Plaintiff will suffer irreparable harm without such an order; the balance of the equities, including the public interest, weigh in favor of granting Plaintiff's request injunctive relief; and alternate remedies are inadequate to assist Plaintiff.

## FIFTH CAUSE OF ACTION
### Request for Declaratory Relief Against ABG and ARACS
### Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

89.     This legal claim incorporates all of the foregoing allegations.

90.     Plaintiff contends that Avis is charging him and others illegal surcharges for frequent-flyer miles or reward points; Avis likely believes these surcharges are not illegal.

91.     As such, an actual controversy exists between Plaintiff and Avis concerning the parties' rights and duties with respect to the legality of Avis's surcharge for frequent-flyer miles and reward points.

92.     The parties require this Court's declaration as to their respective rights, duties, and any other relevant legal relations, whether or not Plaintiff could seek or is otherwise entitled to further relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A.      An order declaring that this action is properly maintainable as a class action, certifying Plaintiff as the class representative, and designating Plaintiff's counsel as lead counsel for the class;

B.      An order awarding Plaintiff and the Class compensatory damages, treble damages, attorneys' fees, and costs of suit for Avis's consumer fraud, pursuant to N.J.S.A. 56:8-19;

C.      An order awarding damages to Plaintiff and the class for ARACS' breach of contract;

D.      An order awarding damages to Plaintiff and the class for ARACS' breach of the duty of good faith and fair dealing;

E.      An order enjoining Avis from continuing to charge customers for receiving frequent-flyer miles of reward points unless Avis properly discloses these charges;

F.      An order declaring illegal Avis's practice of charging customers for frequent-flyer miles or reward points with proper disclosure;

G.      An order awarding Plaintiff pre- and post-judgment interest;

H.      An order awarding Plaintiff's costs of suit; and

I.      An order providing such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  May 29, 2013

*s/ Bruce D. Greenberg*
Bruce D. Greenberg
Jeffrey A. Shooman
**LITE DePALMA GREENBERG, LLC**
Two Gateway Center, 12th Floor
Newark, NJ 07102
Telephone:   (973) 623-3000
Facsimile:    (973) 623-0858
E-mail:        bgreenberg@litedepalma.com
                jshooman@litedepalma.com

Daniel R. Karon
**GOLDMAN SCARLATO KARON & PENNY, P.C.**
700 W. St. Clair Avenue, Suite 204
Cleveland, OH 44113
Telephone:   (216) 622-1851
Facsimile:    (216) 241-8175
E-mail:        karon@gskplaw.com

Laura Killian Mummert
**GOLDMAN SCARLATO KARON & PENNY, P.C.**
101 E. Lancaster Ave, Ste. 204
Wayne, PA 19087
Telephone:   (484) 342-0700
Facsimile:    (484) 342-8747
E-mail:        mummert@gskplaw.com

Jay R. Faeges
**MILLER GOLER FAEGES, LLP**
1301 E. 9th Street, Suite 2700
Cleveland, OH 44114-1835
Telephone:   (216) 696-3366
Facsimile:    (216) 363-5835
E-mail:        faeges@millergolerfaeges.com

*Attorneys for Plaintiff and the Putative Class*