# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Edward Schwartz, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br><br>       vs.<br><br>Avis Rent A Car System, LLC, and Avis Budget Group, Inc.,<br><br>        Defendants. | Civil Action No. 11-4052 (JLL)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Bruce D. Greenberg
Jeffrey A. Shooman
**LITE DEPALMA GREENBERG, LLC**
Two Gateway Center, 12th Floor
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0585
E-mail: bgreenberg@litedepalma.com
jshooman@litedepalma.com

Daniel R. Karon
**GOLDMAN SCARLATO KARON & PENNY, P.C.**
700 W. St. Clair Ave., Suite 204
Cleveland, OH 44113
Telephone: (216) 621-1851
Facsimile: (216) 363-5835
E-mail: karon@gskplaw.com

Laura Killian Mummert
**GOLDMAN SCARLATO KARON & PENNY, P.C.**
101 E. Lancaster Ave., Suite 204
Wayne, PA 19087
Telephone: (484) 342-0700
Facsimile: (484) 580-8747
E-mail: mummert@gskplaw.com

Jay R. Faeges
**MILLER GOLER FAEGES LAPINE, LLP**
1301 E. 9th St., Suite 2700
Cleveland, OH 44114-1835
Telephone: (216) 696-3366
Facsimile: (216) 363-5835
E-mail: faeges@mgfl-law.com

412169.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    STATEMENT OF FACTS ......................................................................................... 2

III.   ARGUMENT .............................................................................................................. 3

      A. Rule 56 embraces a forgiving standard that does not entitle Defendants to summary judgment .................................................................................................. 3

      B. By having suffered injury-in-fact for both his business and personal rentals, Plaintiff has Article III standing to sue Defendants for their illegal overcharges. . 4

      C. Plaintiff paid Defendants an illegal surcharge as part of the personal rental that Defendants identified. ............................................................................................ 5

      D. By Plaintiff having paid Defendants for the business rental described in the TAC, Plaintiff suffered fact of injury (despite a collateral source─ORG─having later paid Plaintiff's credit-card company), because ORG's payment to Plaintiff's credit-card company concerns solely Plaintiff's amount of damage and not his fact of injury ............................................................................................................ 7

          1. Fact of injury (or causation) and amount of damage are separate concepts and inquiries ........................................................................................................ 7

          2. If this Court sees fit to consider ORG's payment to his credit-card company (yet not to Defendants), New Jersey's collateral-source rule does not allow this payment to undo Plaintiff's injury-in-fact ........................................................ 8

          3. Defendants' Terms and Conditions explain that fact of injury lies with Plaintiff ............................................................................................................. 9

          4. Defendants' cases purporting to destroy Plaintiff's standing actually demonstrate that direct victims, like Plaintiff, *have* standing ........................... 11

IV.   CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

**CASES**

*Brandon v. Holt,*
  469 U.S. 464 (1985) ................................................................................................ 6

*Ciser v. Nestle Waters N. Am., Inc.,*
  No. 11-cv-5031, 2013 U.S. Dist. LEXIS 12927 (D.N.J. Jan. 30, 2013) ............................. 12, 13

*Cruz v. Coach Stores, Inc.,*
  202 F.3d 560 (2d Cir. 2000) ..................................................................................... 6

*Glictronix Corp. v. AT&T Co.,*
  603 F. Supp. 552 (D.N.J. 1984) ................................................................................ 8

*In re K-Dur Antitrust Litig.,*
  No. 01-1652, 2008 U.S. Dist. LEXIS 118396 (D.N.J. Apr. 14, 2008) ....................................... 4

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.,*
  676 F.3d 318 (3d Cir. 2012) ..................................................................................... 6

*Long v. Landy,*
  35 N.J. 44 (1961) ................................................................................................. 9

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ........................................................................................... 4, 8

*Mariner's Bank v. 4921 Bergenline Corp.,*
  No. A-0676-12T2, 2014 N.J. Super. Unpub. LEXIS 120 (App. Div. Jan. 23, 2014) ................ 12

*Mariner's Bank v. 4921 Bergenline Corp.,*
  596 F.2d 573 (3d Cir. 1978) ................................................................................... 12

*Polhemus v. Water Island,*
  252 F.2d 924 (3d Cir. 1958) ..................................................................................... 5

*Poller v. Columbia Broadcasting Sys.,*
  368 U.S. 464 (1962) ............................................................................................ 14

*In re Potash Antitrust Litig.,*
  159 F.R.D. 682 (D. Minn. 1995) ................................................................................ 8

*Rossi v. Standard Roofing,*
  156 F.3d 452 (3d Cir. 1998) ..................................................................................... 7

*Smith v. City of Allentown*,
  589 F.3d 684 (3d Cir. 2009) ............................................................................................. 3

*Smith v. Transworld Sys., Inc.*,
  953 F.2d 1025 (6th Cir. 1992) ......................................................................................... 6

**STATUTES**

N.J.S.A. § 2A:14-1 ................................................................................................................ 7

N.J.S.A. § 2A:15-2 .............................................................................................................. 14

N.J.S.A. § 2A:15-97 .............................................................................................................. 9

**RULES**

Fed. R. Civ. P. 15(b) ............................................................................................................. 6

Fed. R. Civ. P. 56(c) ............................................................................................................. 3

**SECONDARY SOURCES**

Restatement (Second) of Torts, § 920A(2) (1977) ............................................................... 9

412169.1

I.      **PRELIMINARY STATEMENT**

Defendants encouraged Plaintiff and other members of their Preferred program to accrue frequent-flyer miles on vehicle rentals but hid the fact that they were surcharging customers $0.75 per day for these rewards. Third Amended Complaint ("TAC") at ¶¶ 22, 26-28. Now, Defendants seek summary judgment on the alleged basis that Plaintiff suffered no injury-in-fact and sustained no ascertainable loss. But the record evidence—including Defendants' own documents—debunks Defendants' belief that Plaintiff lacks standing, whether for his personal rentals or for his business rentals paid by a collateral source, namely, ORG Portfolio Management—the company that Plaintiff owns.

Despite Plaintiff's many rentals (both personal and business) identified in Defendants' documents, Defendants devotes their summary-judgment effort to a single business rental by Plaintiff. But to *properly* consider Plaintiff's Article III standing, and whether a factual question exists concerning it, the Court needs to consider the *full* record, not merely Defendants' slice of it. And because Defendants' documents demonstrate that Plaintiff paid for personal rentals without ORG's reimbursement, under Defendants' own summary-judgment theory, he has standing and their motion must be denied.

With respect to the business rental described in Plaintiff's TAC, although Defendants insist that Plaintiff lacks injury-in-fact because ORG allegedly paid Defendants for that rental, the record actually shows that *Plaintiff* paid Defendants for it by using his credit card for which he is both cardholder and primary obligor. For this reason, to suggest that Plaintiff did not suffer injury-in-fact from Defendants' illegal surcharge for his business rental confuses Plaintiff's *fact* of injury, which Defendants caused, with Plaintiff's *amount* of damage, which is a jury question. And the caselaw indicates likewise, describing injury-in-fact as an invasion of or injury to any

1

legally protected interest, economic or non-economic. So for *all* of Plaintiff's rentals, whether business or personal, *he*—not ORG—was the contracting party. As such, Plaintiff suffered injury-in-fact both ways—for his personal rentals *and* for his business rentals.

Finally, Avis's Preferred Service Global Terms and Conditions ("Terms and Conditions") endorse Plaintiff's injury-in-fact, insisting that for all rentals, Plaintiff—not ORG—is entitled to recover Defendants' surcharges. So as all these reasons will establish, Plaintiff suffered injury-in-fact sufficient to confer standing to sue Defendants, meaning this Court should deny Defendants' Motion for Summary Judgment.

## II.   STATEMENT OF FACTS

Each time Plaintiff rents from Defendants, he is the sole renter, and he always pays for his rentals with credit cards issued in his name. Plaintiff's Statement of Facts ("PSOF") at ¶ 3. And for every credit card that Plaintiff uses for his vehicle rentals, he is the cardmember and he the account's primary obligor. *Id.* at ¶¶ 3-4.

When Plaintiff makes personal rentals, he pays the credit-card bill himself, or he reimburses ORG if ORG paid his credit-card bill for him. *Id.* ¶¶ 3-4. But when Plaintiff rents for business, after Plaintiff pays Defendants, ORG pays Plaintiff's credit-card company. *Id.* at ¶ 3.

Plaintiff did not know (because Defendants never told him) that every time he rented from them, they charged him $0.75 per day for the frequent-flyer miles that they had invited him to accrue. Plaintiff did not know this because Defendants hid this charge from him by concealing it in their rental documents and on their website. Even Defendants' rental confirmations to Plaintiff never said anything about their hidden charge. TAC ¶¶ 22, 26-28.

Plaintiff's TAC describes a business rental, and Plaintiff paid Defendants for this rental charge with his own credit card. On this credit card, Plaintiff was the cardmember and primary

2

obligor. *Id.* at ¶ 6. As such, following this rental, Plaintiff paid Defendants and incurred their rental charge; ORG then paid Plaintiff's credit-card company. ORG *never* paid Defendants. *Id.* at ¶ 7.

Finally, in the event any overcharges are due back to Plaintiff (such as Defendants' frequent-flyer surcharge), Defendants' Terms and Conditions require Defendants to refund Plaintiff, not ORG. *Id.* at ¶ 8. So because Plaintiff was the sole renter, cardmember, and primary obligor on all rentals, and because Defendants' Terms and Conditions require Defendants to pay any overcharges to Plaintiff, not ORG, Defendants must repay Plaintiff for his frequent-flyer surcharges if the jury finds against them. *Id.* at ¶ 9. And this repayment obligation stands to reason since it was Plaintiff—not ORG—who rented from Defendants and who paid Defendants with his credit card.

### III.     ARGUMENT

**A.     Rule 56 embraces a forgiving standard that does not entitle Defendants to summary judgment.**

Summary judgment is appropriate only where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining this, the Court must consider the record evidence in the light most favorable to the nonmoving party. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).

But Defendants cannot meet their summary-judgment burden for two reasons. First, Plaintiff paid a surcharge on a personal rental and never received reimbursement for this surcharge from ORG. Second, as the contracting party and person who paid Defendants for his business rentals (never mind ORG, merely as a collateral source, later paying Plaintiff's credit-

3

card company), Plaintiff suffered the *fact* of injury. What's more, Defendants' Terms and Conditions requires them to repay any alleged overcharges to Plaintiff, not to ORG or anyone else. These realities demonstrate Plaintiff's injury-in-fact for which reason this Court should deny Defendants' Motion for Summary Judgment.

**B.    By having suffered injury-in-fact for both his business and personal rentals, Plaintiff has Article III standing to sue Defendants for their illegal overcharges.**

Article III standing involves three elements:

- "[P]laintiff must have suffered an injury in fact─an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."

- "There must be a causal connection between the injury and the conduct complained of─the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court."

- "It must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal citations and quotation marks omitted).

With respect to Plaintiff's injury-in-fact, which is the only element that Defendants challenge, he paid Defendants for both his personal and business rentals even though ORG later paid his credit-card bill for his business rental described in the TAC. And Plaintiff was the contracting party for both types of rentals. PSOF ¶¶ 3, 6. So by having paid Defendants for his rentals, Plaintiff suffered injury-in-fact (or the *fact* of damage), *see In re K-Dur Antitrust Litig.*, No. 01-1652, 2008 U.S. Dist. LEXIS 118396, at *47 n.14 (D.N.J. Apr. 14, 2008) ("The fact of injury element is referred to interchangeably as 'injury-in-fact' . . . ."), because Plaintiff─not ORG─ paid the illegal surcharges to Defendants. When considered this way, Defendants'

4

concern really rests solely with Plaintiff's *amount* of damage for his business rental, which inquiry is─and has always been─a jury question. *See, e.g.*, *Polhemus v. Water Island,* 252 F.2d 924, 926 (3d Cir. 1958) (recognizing the jury's job to decide the amount of plaintiff's damages).

**C.  Plaintiff paid Defendants an illegal surcharge as part of the personal rental that Defendants identified.**

From August 13–19, 2010, Plaintiff rented a car from Defendants for personal use and used his credit card to pay Defendants. PSOF ¶ 14. Although Defendants limit their Motion to Plaintiff's May 15, 2011 business rental, they admit at paragraph 4 of their Statement of Undisputed Material Facts that Plaintiff pays for personal rentals himself.

But as Defendants observe (and as Plaintiff's TAC indicates), Plaintiff's lawsuit concerns *all* surcharges paid by Preferred members on *all* reservations made through www.avis.com: "All Avis customers who rented a vehicle from Avis through www.avis.com and who paid a surcharge for receiving frequent-flyer miles or reward points from an Avis Travel Partner." TAC ¶51. To this end, Defendants' own documents show that Defendants surcharged Plaintiff $5.25 for a personal rental during the class period. PSOF at ¶ 14.  *See also* Greenberg Dec. Exhibit D (Defendants' August 13 Rental Document demonstrating Plaintiff's personal rental during the class period). These admitted facts demonstrate that Plaintiff suffered injury-in-fact relating to this personal rental, which injury creates standing for Plaintiff to sue his claims against Defendants.

Since the TAC covers *all* surcharged rentals through www.avis.com, TAC at ¶ 51, that should begin and end the discussion. But should this Court desire more specificity in the TAC, Fed. Civ. R. 15(b), encourages this Court to adjust the TAC to conform it to the evidence, even at summary judgment: "If, at trial, a party objects that evidence is not within the issues raised in

5

the pleadings, the court may permit the pleadings to be amended." *Id. See also Brandon v. Holt*, 469 U.S. 464, 471 (1985) ("[E]ven at this late stage of the proceedings, petitioners are entitled to amend their pleadings to conform to the proof . . . ."); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000) ("Under Fed. R. Civ. P. 15(b), a district court may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice."); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1030 (6th Cir. 1992) (recognizing district courts' ability to amend pleadings through trial).

The Third Circuit recently recognized the district court's authority to amend a complaint at summary judgment. In *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318 (3d Cir. 2012), the Third Circuit "assum[ed], without holding, that Rule 15(b) applies at the summary judgment stage." *Id.* at 327. But there, the court denied plaintiff's proposed amendment because, unlike here, the litigation was eight years old and only one week remained before trial. As such, plaintiff's proposed amendment, again unlike here, would have prejudiced defendants by denying them the ability to conduct suitable discovery because many relevant documents had become unavailable. *Id.* at 328. But here, not only did *Defendants* introduce the fact of Plaintiff's personal rental, which Plaintiff had not surprisingly forgotten, there is no further discovery relating to this rental since all the discovery concerning it came from Defendants. Plus, the existence of Plaintiff's personal rental has no effect on his claims anyway, including any of his claims' statutes of limitations. *See* N.J.S.A. § 2A:14-1 (six-year statute of limitations for breach of contract, consumer fraud, and breach of the duty of good faith and fair dealing).

6

412169.1

**D.** **By Plaintiff having paid Defendants for the business rental described in the TAC, Plaintiff suffered fact of injury (despite a collateral source—ORG—having later paid Plaintiff's credit-card company), because ORG's payment to Plaintiff's credit-card company concerns solely Plaintiff's amount of damage and not his fact of injury.**

**1.** **Fact of injury (or causation) and amount of damage are separate concepts and inquiries.**

Since ORG did not reimburse Plaintiff (or otherwise pay) for his personal rentals, based on this fact alone, Plaintiff suffered injury-in-fact and has standing to sue Defendants. And if this weren't enough, as the contracting party for the business rental described in Plaintiff's TAC, Plaintiff paid for this rental with a credit card for which he is the cardmember and primary obligor. PSOF ¶ 3. In this manner, Plaintiff suffered injury-in-fact the moment he paid Defendants' surcharge (i.e., the moment Defendants' charged his credit card) since *Plaintiff alone* was contractually required to pay this surcharge and, concomitantly, he alone was contractually entitled to receive damages relating to any injuries stemming from his contract with Defendants.

Plaintiff's injury-in-fact occurred at the time he paid Defendants for his business rental because that was when Defendants' illegal conduct *caused* Plaintiff harm, never mind the eventual amount of this harm. *See, e.g.*, *Rossi v. Standard Roofing,* 156 F.3d 452, 484 (3d Cir. 1998) (explaining that fact of injury and causation are the same concept.); *Mid-West Paper Prods. Co. v. Continental Group, Inc.,* 596 F.2d 573, 586 n.49 (3d Cir. 1978) (observing that fact of injury, or causation, does not pay regard to plaintiff's specific amount of damage; that is a separate inquiry); *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 694-95 (D. Minn. 1995) (distinguishing fact of injury from amount of damage).

And the possibility that ORG can be credited for having paid Plaintiff's business rental, which actually it cannot (*see* infra. Sec. III.D.3), does not undo the fact that Plaintiff is the person

7

412169.1

who paid Defendants and, accordingly, the person whom Defendants injured. Because Plaintiff's injury—and not his injury's amount—is what drives the injury-in-fact inquiry, and Defendants' injured Plaintiff the moment he paid Defendants' surcharge.

2.    **If this Court sees fit to consider ORG's payment to his credit-card company (yet not to Defendants), New Jersey's collateral-source rule does not allow this payment to undo Plaintiff's injury-in-fact.**

The payment that ORG made to Plaintiff's credit-card company (not to Defendants) is no more than a collateral-source payment (*i.e.*, a payment made by a source independent of the wrongdoer) that, as a matter of law, does not eliminate Plaintiff's injury-in-fact and does not affect the amount Plaintiff's damages. Indeed, in *Glictronix Corp. v. AT&T Co.*, 603 F. Supp. 552 (D.N.J. 1984), Judge Debevoise recognized this distinction when describing plaintiffs' injury-in-fact (or causation) as separate from their amount of damages. *Id*. at 586 ("In order for a class to be certified in an antitrust action under Rule 23(b)(3), plaintiff must demonstrate that both the violation and fact of injury can be proved for the entire class by common evidence. The amount of damages can be established individually for each class member.").

Whether ORG had paid Plaintiff's credit-card company or not, when Defendants illegally surcharged Plaintiff, they caused him injury-in-fact because Defendants' illegal surcharge was "an invasion of a legally protected interest." *Lujan* at 560-561. ORG's payment to Plaintiff's credit-card company does not change that fact, since New Jersey's collateral-source doctrine, which concerns amount of—not fact of—damages, applies only to personal-injury and wrongful-death claims. *See* N.J.S.A. § 2A:15-97 (limiting collateral-source rule to "civil action[s] brought for personal injury or death . . . .").

In particular, a plaintiff's total or partial compensation from a collateral source is not applied to reduce the damages award assessed on the wrongdoer. *Long v. Landy,* 35 N.J. 44, 55,

8

56 (1961). *See also* Restatement (Second) of Torts, § 920A(2) (1977) (payments made to an injured party by a source other than the tortfeasor are "not credited against the tortfeasor's liability although they cover all or part of the harm from which the tortfeasor is liable"). And the public policy driving this sensible rule is that "a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor."

So while the collateral-source rule allows for a limited exception in personal-injury and wrongful-death cases, it does not apply to other types of claims, like Plaintiff's. As such, while Defendants might be able to argue that ORG's payment to Plaintiff's credit-card company affects Plaintiff's amount of damage—although, they would be wrong because the collateral-source rule does not apply to that sort of payment—Defendants cannot properly argue that ORG's collateral payment affects Plaintiff's injury-in-fact. Since Plaintiff was the injured party, Plaintiff—not ORG—is the one entitled to damages.

**3.   Defendants' Terms and Conditions explain that fact of injury lies with Plaintiff.**

If the foregoing weren't enough to demonstrate that Plaintiff suffered injury (or is owed damages), Defendants' Terms and Conditions resolve any uncertainty:

> 17. Credit Card Billing
>
> *You agree* that all charges will be billed to the card designated by you and that *your signature* on the Enrollment Profile and Master Rental Agreement will be deemed to have been made on the applicable credit card voucher.

18. Error in Rental Charges

You understand that all charges are not final and are subject to your review and to recalculation. *You'll pay any undercharges and will receive a refund of any overcharges that we discover on review*. You authorize any such credits or additional charges to be made by the method of payment designated on your Enrollment Profile.

Greenberg Decl. Ex. C at 16 ¶ 22 (emphasis added).

The "You" discussed is Plaintiff. Defendants considered *him* as having agreed to pay them; *him* as being the person responsible for paying any undercharges; and perhaps most important, *him* as being the person entitled to receive any refunds of overcharges. Defendants' Terms and Conditions do not condition Plaintiff's rights and responsibilities on whether someone else paid his credit-card company. Rather, Defendants went out of their way to describe *Plaintiff* as the person who owed Defendants any undercharges and as the person to whom Defendants owed any overcharges.

Like Defendants' Terms and Conditions do not base Plaintiff's receipt of any overcharges on whether an outside source paid his credit-card company, neither do Defendants' Terms and Conditions premise Plaintiff's obligation to pay any undercharges on the presence of an outside source. Simply put, Defendants recognize who potentially owes them money and who to whom they potentially owe money─Plaintiff and Plaintiff alone. This is because the rental contract is between Plaintiff and Defendants, meaning that if Plaintiff breached it, he (not ORG) would owe damages to Defendants, and if Defendants breached it (like they did), they would owe damages to Plaintiff (not ORG). So while Defendants likely did not have Article III in mind when drafting their Terms and Conditions, these Terms and Conditions actually recognize where injury-in-fact properly lies, and it lies with Plaintiff.

10

412169.1

4.  **Defendants' cases purporting to destroy Plaintiff's standing actually demonstrate that direct victims, like Plaintiff, *have* standing.**

Defendants' two case citations do not support the proposition that a contracting party to a breached contract or the direct victim of a consumer-fraud scheme lacks standing. First, no spin on these cases can undo Plaintiff's standing to sue Defendants for their surcharge on his personal rental; that proposition is unassailable. But also, neither case concerns a business rental or purchase where the contracting party paid the leaser or seller directly with a credit card on which the contracting party was the cardmember and primary obligor.

*Mariner's Bank v. 4921 Bergenline Corp.*, No. A-0676-12T2, 2014 N.J. Super. Unpub. LEXIS 120 (App. Div. Jan. 23, 2014), involved a real-estate deal gone bad. Perez, the third-party plaintiff, took issue with his partners who had diverted profits from an LLC that Perez and his partners controlled. *Id.* at *6. When Perez sued to recover his lost profits, the court resisted, instructing that New Jersey's LLC Act "restricts the ability of an LLC member to assert claims that belong to the LLC." *Id.* at *14. "To maintain a direct action," the court explained, "a shareholder must suffer special injury," *id.* at *14, and "a member of a limited liability company may not bring an action in his or her own name, to redress wrongs to the company, even if the member indirectly suffers harm as a result." *Id.* at *15.

So *Mariner's Bank* involved an injury to an LLC for which a partner sought to sue individually. It did not involve a contractual relationship between a partner and a defendant, the breach of which created a legal claim in the partner's personal favor; it did not involve an LLC's payment to a third party relating a partner's personal contract claim; and it did not involve a defendant's resistance to a partner's claim that he suffered injury-in-fact for his breached contract. These distinctions are real and they demonstrate that *Mariner's Bank* actually does not

11

support Defendants' position that Plaintiff, as a party to a breached contract, lacks standing to sue on it.

*Ciser v. Nestle Waters North America, Inc.*, No. 11-cv-5031, 2013 U.S. Dist. LEXIS 12927 (D.N.J. Jan. 30, 2013), is more nuanced but careful consideration demonstrates its misapplication. Ciser's company, CCC, contracted for monthly water deliveries from Nestle. But despite CCC's contract, Ciser paid Nestle's monthly invoices with his own money, eventually suing, along with CCC, over the size of Nestle's monthly late fee. *Id.* at *1. Because CCC never attempted to argue that it had standing, Judge Martini dismissed CCC's claims and allowed Ciser's claims to proceed. *Id.* at *5.

But unlike Ciser and CCC, as between Plaintiff and ORG, *only Plaintiff* had a relationship with Defendants. For ORG's part, it had only a relationship with Plaintiff's credit-card company and could not have paid Defendants even had it wanted to, because ORG did not make the rental reservation, ORG did not rent the car described in Plaintiff's TAC, and ORG was not at the airport to pay Defendants for Plaintiff's rental.

In contrast, Ciser *and* CCC had relationships with Nestle. Indeed, Ciser *stepped over* CCC to pay Nestle─a possibility that, given Plaintiff's use of a credit card for which he is the cardmember and primary obligor, could never have happened here because only Plaintiff was at Defendants' rental location to pay Defendants. So unlike *Ciser,* where both Ciser and CCC had the opportunity to pay (and to get overcharged by) Nestle, here only Plaintiff suffered a breached contract with Defendants, only Plaintiff was defrauded by Defendants, and only Plaintiff could have been injured in fact. So when ORG paid Plaintiff's credit-card company for his business rental, this payment did not undo the fact that Defendants had injured Plaintiff; it only arguably affected the amount of damage necessary to compensate Plaintiff for his injury.

On first blush, then, while *Ciser* might look like it applies, a mindful reading reveals its distinctions, and a careful analysis exposes its limitations. *See also* N.J.S.A. § 2A:15-2 ("[A] person for whose benefit a contract is made, either simple or sealed, may sue thereon in any court and may use such contract as a matter of defense in an action against him although the consideration of the contract did not move from him."). And when considered alongside *Mariner's Bank*, neither of these cases upends the fact that Defendants caused Plaintiff injury-in-fact for the business rental described in his TAC. In this manner, a question of fact exists with respect to Defendants' insistence that Plaintiff lacks Article III standing to sue his contract, consumer-fraud, and good-faith-and-fair-dealing claims.

## IV.  CONCLUSION

Defendants surcharged Plaintiff for his personal rental, which rental had nothing to do with ORG. If this Court would prefer for Plaintiff to amend his complaint to more specifically describe this personal rental, he can easily do that with no prejudice to Defendants. And though ORG paid Plaintiff's credit-card company (not Defendants) for his business rental, *Plaintiff* was the contracting party, *Plaintiff* was the person that Defendants surcharged, and *Plaintiff* is the person who has a claim. Defendants might take issue with Plaintiff's *amount* of damage (although New Jersey's collateral-source rule instructs that they cannot), but nothing can undo Plaintiff's statutory right to maintain a claim for having been the person whose contract Defendants breached and having been the person that Defendants defrauded. Defendants even recognized this reality in their own Terms and Conditions.

Considering all this, and as the U.S. Supreme Court cautioned in *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 473 (1962), "summary procedures should be used sparingly . . . where motive and intent play leading roles, the proof is largely in the hands of the alleged

13

[defendants], and hostile witnesses thicken the plot." For all these reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment.

Dated: April 14, 2014

*s/Bruce D. Greenberg*
Bruce D. Greenberg
Jeffrey A. Shooman
**LITE DEPALMA GREENBERG, LLC**
Two Gateway Center, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
E-mail: bgreenberg@litedepalma.com
jshooman@litedepalma.com

Daniel R. Karon
**GOLDMAN SCARLATO KARON & PENNY, P.C.**
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
Telephone: (216) 622-1851
Facsimile: (216) 241-8175
E-mail: karon@gskplaw.com

Laura Killian Mummert
**GOLDMAN SCARLATO KARON & PENNY, P.C.**
101 E. Lancaster Ave., Ste. 204
Wayne, PA 19087
Telephone: (484) 342-0700
Facsimile: (484) 342-8747
E-mail: mummert@gskplaw.com

Jay R. Faeges
**MILLER GOLER FAEGES LAPINE, LLP**
1301 E. 9th St., Suite 2700
Cleveland, OH 44114-1835
Telephone: (216) 696-3366
Facsimile: (216) 363-5835
E-mail: faeges@mgfl-law.com

*Attorneys for Plaintiff and the Putative Class*

14

412169.1