# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| Edward Schwartz, on behalf of himself and others similarly situated, | : | Civil Action No. 11-4052 (JLL) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **PLAINTIFF'S MEMORANDUM OF** |
| vs. | : | **LAW IN SUPPORT OF MOTION FOR** |
|  | : | **CLASS CERTIFICATION** |
| Avis Rent A Car System, LLC, and Avis Budget Group, Inc., | : |  |
|  | : |  |
| Defendants. | : |  |

Bruce D. Greenberg
Jeffrey A. Shooman
**LITE DePALMA GREENBERG, LLC**
Two Gateway Center, 12th Floor
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0585
E-mail: bgreenberg@litedepalma.com
jshooman@litedepalma.com

Daniel R. Karon
**GOLDMAN SCARLATO KARON &**
**PENNY, P.C.**
700 W. St. Clair Ave., Suite 204
Cleveland, OH 44113
Telephone: (216) 621-1851
Facsimile: (216) 363-5835
E-mail: karon@gskplaw.com

Laura Killian Mummert
**GOLDMAN SCARLATO KARON &**
**PENNY, P.C.**
101 E. Lancaster Ave., Suite 204
Wayne, PA 19087
Telephone: (484) 342-0700
Facsimile: (484) 580-8747
E-mail: mummert@gskplaw.com

Jay R. Faeges
**MILLER GOLER FAEGES LAPINE, LLP**
1301 E. 9th St., Suite 2700
Cleveland, OH 44114-1835
Telephone: (216) 696-3366
Facsimile: (216) 363-5835
E-mail: faeges@mgfl-law.com

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTORY STATEMENT ................................................................................. 1

II.   PLAINTIFF'S PROPOSED CLASS DEFINITION ..................................................... 2

III.  STATEMENT OF FACTS ............................................................................................. 2

      A.    Plaintiff's facts demonstrate Defendants' deception. ............................................ 2

      B.    The same material facts apply to all class members. ............................................ 4

IV.   ARGUMENT .................................................................................................................. 6

      A.    The prevailing class-certification standard encourages this Court to grant
            certification. ........................................................................................................... 6

      B.    Plaintiff's class is ascertainable. ........................................................................... 7

      C.    Class members' geographic dispersion throughout the U.S. satisfies Rule 23(a)'s
            numerosity requirement. ........................................................................................ 7

      D.    Plaintiff's and class members' similar factual and legal claims satisfy Rule 23(a)'s
            commonality, typicality, and adequacy requirements............................................ 8

      E.    As required by Rule 23(b)(3), common factual or legal questions relevant to
            Plaintiff's claims predominate over any individual questions affecting class
            members................................................................................................................ 10

            1.    Plaintiff's breach-of-contract claim against Avis Rent A Car System LLC
                  ("ARACS") arises from a uniform contract among all class members and
                  involves common factual and legal questions that predominate over
                  individual questions. ............................................................................... 11

            2.    Plaintiff's NJCFA claim arises from the Defendants' uniform conduct
                  directed toward all class members and involves common factual questions
                  that predominate over any individual questions. ..................................... 14

                  a.    Plaintiff can prove Defendants' unlawful conduct for his
                        intentional-omission-based NJCFA claim through common
                        evidence. ...................................................................................... 15

                  b.    Plaintiff can prove Defendants' unlawful conduct for his
                        unconscionable-conduct-based NJCFA claim through common
                        evidence. ...................................................................................... 16

c.      Plaintiff can prove class members' ascertainable losses through common evidence. ...................................................................... 17

d.      Plaintiff can prove a causal relationship between Defendants' omission-based unlawful conduct and class members' ascertainable losses through common evidence. ......................... 18

i.      Knowability prong: Defendants hid their surcharge so that it was not knowable to a significant number of potential class members. .................................................................. 20

ii.     Even had Defendants' surcharge been knowable, only an insignificant number of class members would have purchased miles anyway because few, if any, class members are willing to pay for miles that they can otherwise get for free. ....................................................... 23

3.      Plaintiff's good-faith-and-fair-dealing claim against ARACS arises from his breach-of-contract claim and involves common questions that predominate over any individual questions. ............................................. 25

F.      A class action is the superior method for adjudicating this case. ........................ 26

G.      Plaintiff's workable, proposed trial plan demonstrates his class action's manageability. ....................................................................................... 27

V.      CONCLUSION ................................................................................................ 28

## TABLE OF AUTHORITIES

**CASES**

*Allapattah Servs., Inc. v. Exxon Corp.,*
333 F.3d 1248 (11th Cir. 2003) ................................................................11

*Amchem Prods v. Windsor,*
521 U.S. 591 (1997)................................................................ 8, 10-11, 16

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,*
133 S. Ct. 1184 (2013)........................................................ 6-7, 10, 13

*Barton v. RCI, LLC*
No. 10-3657, 2013 U.S. Dist. LEXIS 46590 (D.N.J. Apr. 1, 2013)............................17

*Bosland v. Warnock Dodge, Inc.,*
197 N.J. 543 (2009) ................................................................14

*Carrera v. Bayer Corp.,*
727 F.3d 300 (3d Cir. 2013)................................................................7

*Checking Account Overdraft Litigation,*
286 F.R.D. 645 (S.D. Fla. 2012)................................................................7

*Dal Ponte v. American Mortgage Express Corp.,*
No. 04-2152, 2006 U.S. Dist. LEXIS 57675 (D.N.J. Aug. 17, 2006) ..........................15

*Delaney v. American Express Co.,*
No. 06-5134, 2007 U.S. Dist. LEXIS 34699 (D.N.J. May 11, 2007)............................14

*Demmick v. Cellco Partnership,*
No. 06-2163, 2010 U.S. Dist. LEXIS 94041 (D.N.J. Sep. 8, 2012) ............................11, 12, 13, 14

*Elias v. Ungar's Food Prods.,*
252 F.R.D. 233 (D.N.J. 2007)................................................................26

*Elias v. Ungar's Food Prods., Inc.,*
252 F.R.D. 233 (D.N.J. 2008)................................................................15

*Gen. Tel. Co. of Southwest v. Falcon,*
457 U.S. 147 (1982)................................................................8

*Georgine v. Amchem Prods.,*
83 F.3d 610 (3d Cir. 1996)................................................................26

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013).................................................................................................15

*In re Honeywell Int'l Sec. Litig.*,
211 F.R.D. 255 (D.N.J. 2002)...............................................................................................9

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008)......................................................................................6, 15, 27

*In re Linerboard Antitrust Litig.*,
203 F.R.D. 197 (E.D. Pa. 2001)..........................................................................................24

*In Re Mercedes-Benz Tele Aid Contract Litig.*,
257 F.R.D. 46 (D.N.J. 2009)......................................................................................... 14-15

*In re Merck & Co.*,
No. 08-2177, 2012 U.S. Dist. LEXIS 138080 (D.N.J. Sept. 25, 2012) ......................................8, 9

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
MDL No. 1556, 2007 U.S. Dist. LEXIS 85466 (M.D. Pa. Nov. 19, 2007)..................................24

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)............................................................................................8, 10

*International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*,
192 N.J. 372 (N.J. 2007)...................................................................................................18

*Kalow & Springut, LLP v. Commerce Corp.*,
No. 07-3442, 2012 U.S. Dist. LEXIS 173785 (D.N.J. Dec. 7, 2012)...........................................14

*Klein v. Budget Rent A Car Sys.*,
No. 12-7300 (JLL), 2013 U.S. Dist. LEXIS 58403 (D.N.J. Apr. 24, 2013)..................................17

*Kleiner v. First Nat. Bank of Atlanta*,
97 F.R.D. 683 (N.D. Ga. 1983)...........................................................................................11

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*,
150 N.J. 254 (N.J. 1997)...................................................................................................14

*Maloney v. Microsoft Corp.*,
No. 09-2047, 2012 U.S. Dist. LEXIS 28676 (D.N.J. Mar. 5, 2012)...........................................25

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012).................................................................................... *passim*

*Mercedes-Benz Tele Aid Contract Litigation*,
257 F.R.D. 46 (D.N.J. 2009)............................................................................17, 18

*Murphy v. Implicito*,
920 A.2d 678 (App. Div. 2007) ................................................................................11

*Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ......................................................................................8, 9

*Newton v. Merrill Kynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001)......................................................................................9

*Petinga v. Sears, Roebuck & Co.*,
No. 05-5 166, 2009 U.S. Dist. LEXIS 48693 (D.N.J. June 9, 2009)............................17

*Pro v. Hertz Equip. Rental Corp.*,
No. 06-3830, 2008 U.S. Dist. LEXIS 100181 (D.N.J. Dec. 11, 2008),
*amended on other grounds*, 2009 U.S. Dist. LEXIS 36061 (D.N.J. Feb. 3, 2009) ................ 13-14

*Schwartz v. Avis Rent A Car System LLC*,
No. 11-04052, 2012 U.S Dist. LEXIS 189251 (D.N.J. Sept. 18, 2012) ............................... *passim*

*Seidenberg v. Summit Bank*,
348 N.J. Super. 243 (App. Div. 2002) ......................................................................26

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
323 F.3d 32 (1st Cir. 2003)......................................................................................11

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001).......................................................................................7

*Sullivan v. DB Inv., Inc.*,
667 F.3d 273 (3d Cir. 2011)....................................................................................10

*Sullivan v. Sovereign Bancorp Inc.*,
33 F. App'x 640 (3d Cir. 2002) ................................................................................13

*Summerfield v. Equifax Info. Servs. LLC*,
264 F.R.D. 133 (D.N.J. 2009)..................................................................................10

*Thiedemann v. Mercedes-Benz USA, LLC*,
183 N.J. 234 (N.J. 2005) .........................................................................................17

*Verizon N.J., Inc. v. DMJM Harris, Inc.*,
No. 08-3028, 2009 U.S. Dist. LEXIS 37678 (D.N.J. May 1, 2009).............................13

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ................................................................................................ 12-13

*Winkler v. DTE, Inc.,*
205 F.R.D. 235 (D. Ariz. 2001) ....................................................................................11

**STATUTES**

N.J.S.A. 56:8-1 ................................................................................................................1

**RULES**

Fed. R. Civ. P. 23 .................................................................................................. *passim*

## I.    INTRODUCTORY STATEMENT

Defendants extend to their customers the benefit of earning reward miles and points for their vehicle rentals, Third Amended Complaint ("TAC") at ¶ 22. But Defendants hide from their customers the fact that they are charging them $0.75 per day for this benefit via Defendants' frequent-flyer surcharge. *Id.* at ¶¶ 26-28. In fact, Defendants direct their deception toward their very best customers—members of the Avis Preferred customer loyalty program, like Plaintiff and all putative class members.

Plaintiff will show that this case deserves class certification. Defendants breached their substantially uniform contracts with Plaintiff and all class members. And Defendants made New Jersey law applicable to all rentals made by class members, so that not only New Jersey breach-of-contract law applies classwide, but the New Jersey Consumer Fraud Act does, too, N.J.S.A. 56:8-1 *et seq.* ("NJCFA"). Defendants hid their frequent-flyer surcharge from Plaintiff and all class members, burying it deep in the Avis.com website where Defendants' own evidence shows that virtually no one found it. What's worse, when Defendants *did* describe it, they did so in various impenetrable codes only after customers' rentals had already commenced and concluded. In this manner, Defendants' uniform misconduct also deserves certification of an NJCFA class.

And while class certification is supported by Plaintiff's expert, Dr. Vicki Morwitz, Harvey Golub Professor of Business Leadership and Professor of Marketing at New York University's Stern School of Business, Defendants' expert *also* supports class certification, as his report concedes the commonality and predominance of key issues. So for the reasons set forth below, Plaintiff respectfully submits that this Court grant Plaintiff's motion for class certification.

## II.    PLAINTIFF'S PROPOSED CLASS DEFINITION

> All Avis Preferred members with a United States address who, until June 14, 2012, rented a vehicle through www.avis.com and who paid a surcharge for receiving frequent-flyer miles from any of Defendants' travel partners.

## III.    STATEMENT OF FACTS

### A.    Plaintiff's facts demonstrate Defendants' deception.

Plaintiff needed to pick up a rental car at Manchester-Boston Regional Airport. TAC ¶ 38. As a necessary and expected part of this process, Plaintiff logged onto Defendants' website. *Id.* Plaintiff entered his arrival place and date; his car preference; any add-ons; and, as Defendants invited, his preferred airline's frequent-flyer membership number. *Id.* at ¶ 39. During this process, Defendants' website made no reference to their frequent-flyer surcharge but carefully itemized all *other* charges for Plaintiff's rental, including: (1) Defendants' base-rental rate; (2) Energy Recovery Fee; (3) Vehicle Licensing Fee; (4) Customer Facility Charge; (5) Concession Recovery Fee; (6) Tax; and (7) GPS Navigation.

After considering these charges, Plaintiff accepted Defendants' rental offer by clicking "RESERVE." Acknowledging a rental relationship between the parties, the next screen contained a reservation confirmation that "Thank[ed Plaintiff] for renting with us!" *See* Declaration of Bruce D. Greenberg, Ex. 1 at 1. The reservation confirmation also contained more terms that twice described strict consequences "[i]f [Plaintiff] fail[ed] to return the vehicle as agreed," thus suggesting its binding effect. *See id.* at 2. None of these other terms mentioned a frequent-flyer-mile surcharge either.

Defendants then e-mailed Plaintiff a rental-reservation confirmation that contained the same information detailed on the reservation-confirmation webpage. *Id.* at 3. The two reservation confirmations identified certain charges that might appear later, such as fees for extensions or

2

late returns, taxes and fees for optional equipment and coverages, and "Fees for the Gas Service Option not included in the Estimated Total," *id.* at 4, 6, but again did not mention Defendants' frequent-flyer surcharge.

Upon arrival at Manchester-Boston Regional Airport, Plaintiff skipped the rental counter and immediately took possession of his car, as Defendants encourage members of their Avis Preferred program to do. Defendants had placed their "Rental Document"─a piece of cardstock that they discreetly tucked into a multi-fold jacket─unobtrusively on Plaintiff's passenger seat without any mention of this document's significance. Exs. 2-3. Entirely unknown to Plaintiff, Defendants had introduced for the first time, into the Rental Document's lower left-hand corner among other terms, a $0.75/day surcharge for Plaintiff's acceptance of Defendants' offer to earn frequent-flyer miles. Ex. 2. And instead of describing their charge in an understandable way, Defendants used a secret and undefined code—"FTP SUR." *Id.*

When Plaintiff returned his car, Defendants generated a paper receipt known as their "Return Document," accompanied by a nearly identical e-receipt. Exs. 4-5. But while both documents included Defendants' frequent-flyer surcharge, Defendants again buried this charge among various other terms and again encoded it, this time as a *new* code, "FTP SR$," thus making any detection of Defendants' hidden surcharge even more unlikely. *Id.* And while the Return Document included a key to the "Codes," FTP SR$ was *not* one of the codes that Defendants included and defined. *See* Ex. 4.

As a result of Defendants' scheme, and with this Court having denied Defendants' motion to dismiss, Plaintiff now moves for class certification.

3

**B.**    **The same material facts apply to all class members.**

Like Plaintiff, all class members rented vehicles through Avis.com and followed the same four-step rental reservation process. *See* Ex. 6 (Defendant's Supplemental Responses and Objections to Plaintiff's First Set of Requests for Admission, No. 9). And while Defendants modified Avis.com over time with regard to the placement of information related to their frequent-flyer surcharge, Defendants' insufficient modifications applied to all class members. For example, between 2005 and January 13, 2009, a link to information about Defendants' frequent-flyer surcharge appeared on the bottom of the web page where Avis Preferred members entered their profile information regarding their frequent-flyer-program membership. Ex. 7 (Defendant's Second Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories, No. 20). On January 14, 2009, Defendants moved that link to the webpage for their individual airline travel partners. *Id*. Then, on May 22, 2012, Defendants added where renters enter their flight information when making a rental reservation a link to Defendants' webpage that describes their surcharge, but Defendants vaguely entitled this link, "Help?," instead of something that related to their surcharge.

Defendants track objective data about how visitors use their website through a third-party vendor referred to as Omniture. This tracking includes monitoring how visitors navigate Defendants' website and observing how many visitors navigate to specific webpages within Defendants' website. Exs. 8-9. For example, data from January 2009–May 2013 show that there were a total of 149,499,787 unique visitors to Avis.com. Ex. 8. But of these visitors, only 0.03% actually visited the discreet webpage─however it appeared─that described Defendants' frequent-flyer surcharge. *Id.* Put another way, 99.97% of Avis.com visitors did *not* see the information on Defendants' website that described their surcharge. *Id.* Similarly, Defendants also track the top

4

200 paths navigated within Avis.com. Ex. 9. From January 2007 – March 2013, none of those

paths included navigation to information about Defendants' frequent-flyer surcharge. *Id.*

Like Plaintiff, class members agreed to be bound by Defendants' uniform (and

sprawling) Avis Preferred Service Global Terms and Conditions ("Terms and Conditions") that

Defendants described in their website and that include the following language concerning rental

charges:

> **6. Rental Charges**
>
> … You'll pay all charges that apply to the rental for miscellaneous
> services and, where permitted, airport facility fees and/or
> concession recovery fees, vehicle license recovery fees, other fees
> and surcharges. If you present any rewards certificates, coupons or
> vouchers associated with a loyalty rewards program, you may be
> charged a redemption fee. If you use a car with automatic toll
> payment capability, you will pay for all tolls incurred during your
> rental and all related service charges. You will also pay a
> reasonable fee for cleaning the car's interior upon return for
> excessive stains, dirt or soilage attributable to your use. We
> maintain a non smoking fleet. You will pay an additional charge if
> you return the car and it smells of smoke. You and any third party
> to whom any rental charges are billed, such as an insurer or
> employer, are jointly and severally responsible for payment of all
> such charges. If you direct us to bill any such charges to a third
> party, you represent that you are authorized to do so.

Ex. 10 at Paragraph 6 (AVIS 00308-318, effective July 23, 2008); Ex. 11 at Paragraph 6 (AVIS

00319-329, effective September 15, 2009); and Ex. 12 at Paragraph 7 (AVIS 00612-635,

effective September 1, 2011).

Defendants' Terms and Conditions also contain the following choice-of-law provision

applicable to all class members:

> Except as may be otherwise explicitly stated in a particular
> provision of this Agreement, if your enrollment Profile indicates a
> United States address, then the terms and of this Agreement are
> governed by the law of the State of New Jersey, without regard to
> its conflict of law principles.

5

Exs. 10-12, each at Paragraph 1.B.

In support of his motion, Plaintiff submits the report of Dr. Morwitz, an expert in "the psychology of how consumers process price information." Ex. 13 ("Morwitz Report") at 1. For the period 2005 through mid-June 2012, Dr. Morwitz analyzed how Defendants presented information about the frequent-flyer surcharge and, as it concerns Plaintiffs' consumer-fraud claim, opined on (1) whether a significant number of class members could have known about Defendants' surcharge, and (2) whether, if class members *had* known about Defendants' surcharge, would they have paid it anyway. *Id.* at 4. Based on the academic literature and documents produced by the parties and third parties, Dr. Morwitz concludes to a reasonable degree of behavioral certainty that virtually all class members could not have known about Defendants' surcharge, and even if they did, only an insignificant number of class members would have paid it because class members understand that over 90% of the frequent-flyer miles available on the market are available at no additional cost. *Id.* at 5-6.

## IV.   ARGUMENT

### A.   The prevailing class-certification standard encourages this Court to grant certification.

For a court to certify a class action, plaintiff must satisfy the four requirements of Rule 23(a), and one of the subparts of Rule 23(b) by a preponderance of the evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008). As for factual or legal disputes that touch upon the elements of the cause of action, the court may resolve them only "when necessary to determine whether a class certification requirement is met." *id.* at 316, and the court should consider only merits inquiries to the extent "they are relevant to determining whether the Rule 23

prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013).

**B.    Plaintiff's class is ascertainable.**

An implicit requirement to class certification is that plaintiff's proposed class definition must be precise, objective, and readily ascertainable. *See Carrera v. Bayer Corp.,* 727 F.3d 300, 306 (3d Cir. 2013) ("[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria."). Here, class members share the following objective criteria: they rented a vehicle through Avis.com and purchased frequent-flyer miles. And perhaps most important, as enrolled members of Defendants' Avis Preferred program, Defendants have a record of class members' names, addresses, and overcharge amounts. So like in *Checking Account Overdraft Litigation*, 286 F.R.D. 645 (S.D. Fla. 2012), where the court found that class members who were charged overdraft fees were ascertainable through defendants' electronic records, *id.* at 651, class members here can be easily identified, right down to their names and addresses.

**C.    Class members' geographic dispersion throughout the U.S. satisfies Rule 23(a)'s numerosity requirement.**

Plaintiff satisfies Rule 23(a)'s numerosity requirement where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Defendants' documents reflect that between January 2005 and August 2011, 11.9 million rental transactions occurred

through Avis.com and involved a frequent-flyer surcharge, thus making joinder impracticable. *See* Ex. 14. Accordingly, Plaintiff satisfies Rule 23's numerosity requirement.

### D.    Plaintiff's and class members' similar factual and legal claims satisfy Rule 23(a)'s commonality, typicality, and adequacy requirements.

Plaintiff also satisfies Rule 23(a)'s remaining requirements—commonality, typicality, and adequacy. The typicality and commonality analyses "tend to merge" into a single inquiry, *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982), and the adequacy requirement "tends to merge" with Rule 23(a)'s commonality and typicality requirements. *Amchem Prods v. Windsor*, 521 U.S. 591, 626 n.20 (1997). *Accord Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("The concepts of commonality and typicality are broadly defined and tend to merge).

Commonality is satisfied if the named plaintiff "share[s] at least one question of fact or law with the grievances of the prospective class." *Neal*, 43 F.3d at 56. Typicality contemplates whether the class representative's claims or defenses resemble the class's claims or defenses. *Id*. at 57-58. Finally, adequacy concerns whether the class representative and class counsel will fairly and adequately protect class members' interests. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 312 (3d Cir. 1998) (adequacy requirement is designed to test the qualifications of counsel and to uncover conflicts of interest between named parties and the class).

Plaintiff satisfies Rule 23's commonality and typicality requirements because class members have not merely *some* relevant legal or factual issues in common but virtually *all* legal or factual issue in common. But despite this extensive cohesion, even a *single* common question may be sufficient to satisfy commonality, *see In re Merck & Co.*, No. 08-2177, 2012 U.S. Dist.

8

LEXIS 138080, at *10 (D.N.J. Sept. 25, 2012) ("[T]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class") (quoting *Neal*, 48 F.3d at 56)), and "factual differences among the putative claims of the class members will *not* defeat class certification." *Id.* (quoting *Neal*, 48 F.3d at 56) (emphasis added). *See also In re Honeywell Int'l Sec. Litig.*, 211 F.R.D. 255, 260 (D.N.J. 2002) ("The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class" (quoting *Newton v. Merrill Kynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001))). In particular, class members share the following common issues:

1. What constitutes class members' contracts with Defendants?

2. Did Defendants breach their contracts with class members?

3. Did Defendants' uniform rental-reservation process bait-and-switch class members?

4. Was Defendants' surcharge description knowable to class members?

5. Assuming Defendants' surcharge wasn't knowable to class members, had class members known about it, would they have paid it anyway?

6. Did Defendants' uniform actions breach their duty of good faith and fair dealing owed to class members?

As it concerns adequacy, Plaintiff's interests to recover his damages are identical to class members' interests. *See* Ex. 15 (Feb. 5, 2013 Schwartz Tr. at 106:15 – 107:15). And when considering proposed lead counsel's adequacy, Rule 23(g) instructs the court to consider: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions and the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. To this end, Plaintiff's interim co-lead counsel, Lite DePalma Greenberg and Goldman Scarlato Karon

& Penny, have performed extensive work in this litigation, including having drafted Plaintiff's various complaints, briefed Defendants' motions to dismiss, conducted class discovery, and prepared this class-certification motion, all of which demonstrates their experience and capabilities and which satisfies Rule 23(g)'s criteria for appointment as co-lead counsel. *See* Exs. 18, 19.

**E.    As required by Rule 23(b)(3), common factual or legal questions relevant to Plaintiff's claims predominate over any individual questions affecting class members.**

Rule 23(b)(3)'s predominance inquiry asks whether the proposed class is "sufficiently cohesive to warrant adjudication by representation, and assesses whether a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (internal quotation marks omitted). But while this inquiry involves examining the elements of a plaintiff's claims "through the prism of Rule 23," *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 142 (D.N.J. 2009) (internal quotation marks omitted), Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen*, 133 S. Ct. at 1196 (emphasis in original, internal quotation marks, brackets omitted). Rather, Rule 23(b)(3) merely requires "that common questions *predominate* over any questions affecting only individual class members." *Id.* (emphasis in original, quotation marks deleted). *See also Prudential*, 148 F.3d at 315 ("[T]he presence of individual questions does not *per se* rule out a finding of predominance.").

The Rule 23(b)(3) requirement that common questions of law and fact predominate over individual questions is satisfied here. As the Supreme Court has observed, "[p]redominance is a test readily met in certain cases alleging consumer . . . fraud . . . ." *Amchem*, 521 U.S. at 625

(citation omitted). And in the manner now demonstrated, common issues predominate as to all of

Plaintiff's claims.

1.    **Plaintiff's breach-of-contract claim against Avis Rent A Car System LLC ("ARACS") arises from a uniform contract among all class members and involves common factual and legal questions that predominate over individual questions.**

A breach of contract claim under New Jersey law must satisfy the following elements:

"(1) the parties entered into a valid contract, (2) the defendant did not perform his or her

obligations under the contract, and (3) the plaintiff suffered damages as a result." *Schwartz v.*

*Avis Rent A Car System LLC*, No. 11-04052, 2012 U.S Dist. LEXIS 189251, at *20 (D.N.J. Sept.

18, 2012) (citing *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007)). And where

the contract at issue is uniform to all class members, courts often find that common issues

predominate. *See, e.g., Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32 (1st Cir.

2003) (reversing and remanding decertification order involving class covering two states based

on breach of form contract for wireless service); *Allapattah Servs., Inc. v. Exxon Corp.,* 333 F.3d

1248, 1260-61 (11th Cir. 2003) (affirming certification order in case involving breach of written

dealer agreements for wholesale gasoline); *Winkler v. DTE, Inc.,* 205 F.R.D. 235 (D. Ariz. 2001)

(certifying breach-of-contract claim where class purchased used vehicles from dealer using form

sales contracts); *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983) (certifying

class involving breach of form loan agreements).

In *Demmick v. Cellco Partnership*, No. 06-2163, 2010 U.S. Dist. LEXIS 94041 (D.N.J.

Sep. 8, 2010), this Court certified a similar consumer breach-of-contract claim involving

allegations that Cellco had overbilled New Jersey and Maryland consumers for wireless

telephone service. Defendants argued that individual factual questions predominated over

Plaintiff's breach-of-contract claims under New Jersey and Maryland law because there were 21

11

different versions of the contract. *Id.* at *29-31. This Court disagreed and ruled that "minor differences in the wording of the various . . . contracts do not materially differ in the respects at issue in this case." *Id.* at *31. And because Cellco had "billed all of its . . . customers for overage minutes in the same manner," this Court found that "what [was] at issue in [Plaintiffs'] breach of contract claims [was] a common billing scheme which Plaintiffs assert[ed] represent[ed] a uniform breach of [Cellco's contracts]." *Id.* at *32.

Here, Plaintiff can demonstrate that *all* elements of his breach of contract claim can be established through common proof. Like in *Demmick*, the contractual terms and conditions that controlled Plaintiff and the class members' rental transactions were substantially identical. Exs. 10-13. By charging Plaintiff and class members for a frequent-flyer surcharge that was not part of their contracts, ARACS failed to perform its contractual obligation—namely, to charge the promised price for class members' rentals. And by having paid a surcharge, Plaintiff and class members all suffered damages as the result of ARACS's breach. Ex. 14 (transactional data showing that ARACS' collected approximately $10 million in frequent-flyer surcharges from January 2005–September 2012).

As such, the only issue affecting Plaintiff's breach-of-contract claim is whether ARACS' frequent-flyer surcharge breached his and class members' contracts. Indeed, this Court agreed that this was the sole issue affecting Plaintiff's breach-of-contract, explaining (when denying Defendants' second motion to dismiss) that, "[t]he only contested issue is whether Defendants' imposition of the surcharge amounted to a breach of the contract." *Schwartz*, 2012 U.S. Dist. LEXIS 189251, at *20. In this manner, and as this Court recognized, whether class members' contracts did or did not include the frequent-flyer surcharge that gave rise to ARACS' breach is a question that will result in the same answer for every class member. *See Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541, 2551 (2011) ("What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (emphasis in original, internal quotation marks omitted). That said, whether ARACS is ultimately deemed at summary judgment or trial to *have breached* class members' uniform contract is a merits question necessarily reserved for another day. For as the *Amgen* Court recently instructed, "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen*, 133 S. Ct. at 1191 (internal quotes and brackets omitted).

But not only do common factual questions predominate, so do common *legal* questions, since Defendants' Terms and Conditions uniformly require the application of New Jersey law. Exs. 10-12 each at Paragraph 1.B. ("[I]f your Enrollment Profile indicates a United States address, then the terms of this Agreement are *governed by the law of the State of New Jersey* . . . .") (emphasis added).

In this regard, in *Demmick*, this Court instructed that, "[w]here a contract's choice of law provision is 'broad and all-encompassing' [like Defendants' here], the provision 'encompasses all tort claims that may arise from the [contract].'" *Id.* at *8 (citing *Sullivan v. Sovereign Bancorp Inc.*, 33 F. App'x 640, 642 (3d Cir. 2002)). *See also Verizon N.J., Inc. v. DMJM Harris, Inc.*, No. 08-3028, 2009 U.S. Dist. LEXIS 37678, at *12-13 (D.N.J. May 1, 2009) (a contract's forum-selection clause applied to tort claims because the claims "stemmed from the performance of the contract itself"); *Pro v. Hertz Equip. Rental Corp.*, No. 06-3830, 2008 U.S. Dist. LEXIS 100181, at *14 (D.N.J. Dec. 11, 2008) ("Choice of law clauses that use the language governed and construed by . . . are considered to be broad capturing both contract and tort claims,

particularly tort claims that relate to the contract.") (internal quotation marks omitted), *amended on other grounds*, 2009 U.S. Dist. LEXIS 36061 (D.N.J. Feb. 3, 2009); *Delaney v. American Express Co.*, No. 06-5134, 2007 U.S. Dist. LEXIS 34699, at *8-9 (D.N.J. May 11, 2007) (applying New Jersey law to all of plaintiff's claims, including fraud claims, where the contract stated it was governed by the laws of the state in which it is delivered) (internal quotation marks omitted). In this manner, Defendants' broadly worded governed-by language means that New Jersey law applies to *all* of Plaintiff's claims. *See Demmick*, 2010 U.S. Dist. LEXIS 94041, at *9-10 (broadly worded governed-by language means that a contract's choice-of-law is not "narrow" and instead applies "to breach of contract and fraud claims (common law and consumer fraud)"). Simply put, because New Jersey law applies to all class members' claims, as Defendants required, no individual legal questions predominate.

2.    **Plaintiff's NJCFA claim arises from the Defendants' uniform conduct directed toward all class members and involves common factual questions that predominate over any individual questions.**

Class-action consumer-fraud claims involve large numbers of plaintiffs, a single or small number of defendants, and a course of conduct that affected all class members the same way. And because the NJCFA's purpose is to "root out consumer fraud," *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 254, 261 (N.J. 1997), "courts have been instructed to 'be faithful to the Act's broad remedial purposes [to] construe the [Act] broadly, not in a crabbed fashion.'" *Schwartz*, 2012 U.S. Dist. LEXIS 189251, at *10 (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)). For these reasons, courts commonly certify class-action claims under the NJCFA. *See e.g.*, *Kalow & Springut, LLP v. Commerce Corp.*, No. 07-3442, 2012 U.S. Dist. LEXIS 173785, at *7-12 (D.N.J. Dec. 7, 2012) (holding that the NJCFA applied to all class members' claims and, accordingly, certifying a class); *In Re Mercedes-Benz Tele Aid Contract*

*Litig.*, 257 F.R.D. 46, 73 (D.N.J. 2009) (certifying a class under the NJCFA where "Plaintiffs'

consumer fraud claim is predominated by issues of law and fact that are common to the proposed

class"); *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 238-39 (D.N.J. 2008) (certifying

class under the NJCFA where claim was predominated by issues of law and fact common to the

proposed class); *Dal Ponte v. American Mortgage Express Corp.,* No. 04-2152, 2006 U.S. Dist.

LEXIS 57675, at *22-25 (D.N.J. Aug. 17, 2006) (certifying a nationwide class under the

NJCFA).

    The NJCFA imposes liability on any person "who uses 'any unconscionable commercial

practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing,

concealment, suppression, or omission of any material fact with intent that others rely upon such

concealment.'" *Schwartz*, 2012 U.S. Dist. LEXIS 189251, at *8 (citation omitted). "To establish

a *prima facie* case under the NJCFA, a plaintiff must show the following: (1) unlawful conduct

by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between

the unlawful conduct and the ascertainable loss." *Id*. To certify an NJCFA claim, a plaintiff must

demonstrate these elements through common evidence. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d

349, 359 (3d Cir. 2013) ("predominance requirement focuses on whether essential elements of

the class's claims can be proven at trial with common, as opposed to individualized, evidence")

(citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311).

**a.    Plaintiff can prove Defendants' unlawful conduct for his intentional-omission-based
        NJCFA claim through common evidence.**

    Plaintiff's intentional-omissions claim stems from Defendants' failure to have disclosed

their frequent-flyer surcharge to class members. Why Defendants failed to do this, which will

demonstrate their intent, will be answered the same way for all class members. For instance, why

Defendants did not include their surcharge on Plaintiff's rental confirmation or in their Terms and Conditions (as even Buddy Altus, Avis Budget Group's employee in charge of distribution, and an Avis Preferred member himself, admitted[1]), why Defendants double-encoded their surcharge in a difficult-to-understand way (as Mr. Altus also confessed[2]), and why Defendants described their surcharge in inconspicuous places where few renters could expect to see it are all questions that will be answered the same for all class members. In short, given the uniform nature of class members' car rentals, all questions (and it needn't even *be* all questions, *see Amchem,* 133 S. Ct. at 1196) relating to Defendants' omissions, including whether these omissions were intentional, can be demonstrated through Defendants' common proof.

### b.   Plaintiff can prove Defendants' unlawful conduct for his unconscionable-conduct-based NJCFA claim through common evidence.

The first basis for Plaintiffs' unconscionable-conduct claim under the NJCFA involves Defendants' intentional omissions. Given the overlap with Plaintiff's omission-based NJCFA allegations just discussed, Plaintiff's classwide evidence necessary to prove his omission-based unconscionable-conduct claim is necessarily the same, as this Court recognized when denying Defendants' second motion to dismiss: "To the extent that Avis's alleged unconscionable conduct is premised on alleged omissions, Plaintiff has adequately pleaded the unconscionable conduct for the reasons stated *supra.*" *Schwartz,* 2012 U.S. Dist. LEXIS 189251, at *16 n.3.

---

[1] Q. Could you read paragraph six [of the Terms and Conditions]?
  A. Okay.
  Q. Is there any reference to a "frequent-flyer surcharge" in that paragraph?
  A. No.
Ex. 16 (Feb.4, 2013 Altus Tr. at 138:2-6).
[2] Q: How about FTP SR? Do you know what that means?
  A: No.
*Id*. at 22:20-22.

The other basis for Plaintiff's unconscionable-conduct claim under the NJCFA is Defendants' bait-and-switch scheme. "To state a claim under the NJCFA for a 'bait and switch,' a plaintiff must allege '[t]he advertisement of merchandise as part of a plan or scheme . . . not to sell the same at the advertised price.'" *Id*. at *17 (citing *Petinga v. Sears, Roebuck & Co*., No. 05-5 166, 2009 U.S. Dist. LEXIS 48693, at *19 (D.N.J. June 9, 2009)). *See also, Klein v. Budget Rent A Car Sys.*, No. 12-7300 (JLL), 2013 U.S. Dist. LEXIS 58403, at *15 (D.N.J. Apr. 24, 2013) (same). Because the elements of Plaintiff's bait-and-switch allegation derive exclusively from the Defendants' conduct (e.g., *Defendants'* uniform contract and *Defendants'* uniform intention not to honor their contracts' advertised price), Plaintiff can prove his bait-and-switch allegation through classwide evidence.

### c.   Plaintiff can prove class members' ascertainable losses through common evidence.

With respect to an NJCFA claim, "either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages.'" *Barton v. RCI, LLC*, No. 10-3657, 2013 U.S. Dist. LEXIS 46590, at *23 (D.N.J. Apr. 1, 2013) (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (N.J. 2005). *See also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (an ascertainable loss is either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable.") (internal quotation marks omitted). In this manner, ascertainable losses relating to NJCFA claims are often demonstrable through common proof, as Judge Debevoise pronounced in *Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009): "The amount of Plaintiffs' 'ascertainable loss,' which will serve as the basis for quantifying damages at trial, is easily calculated using common proof. Simply put, the sum of

17

each class member's loss is the amount necessary to fulfill his or her expectation of a functioning [product.]." *Id.* at 73.

To demonstrate ascertainable loss here, class members need merely show the amount of the surcharge they paid to Defendants, which is easily discernable from Defendants' transactional data. Ex. 14 (data showing that Defendants collected approximately $10 million in frequent-flyer surcharges for the period January 2005–September 2012). As such, Plaintiff can demonstrate the ascertainable-loss prong of his NJCFA claim using classwide proof.

**d.    Plaintiff can prove a causal relationship between Defendants' omission-based unlawful conduct and class members' ascertainable losses through common evidence.**

When considering the causation element of Plaintiff's NJCFA claim, *Marcus v. BMW of North America,* 687 F.3d 583 (3d Cir. 2012) requires discussion. But importantly, *Marcus's* causation analysis applies only to Plaintiff's *omission-based* NJCFA claims, whether involving intentional-omissions or omission-based unconscionability allegations. *Id.* at 609 ("As a matter of substantive New Jersey law, *International Union [of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.,* 192 N.J. 372 (N.J. 2007)] instructs that when a plaintiff knows the truth behind a *fraudulent misrepresentation or omission*, that plaintiff may not succeed under the CFA.") (emphasis added). *See also Schwartz*, 2012 U.S. Dist. LEXIS 189251, at *16 n.3 (distinguishing between Defendants' unconscionable conduct premised on their alleged bait-and-switch and Defendants' "unconscionable conduct . . . premised on [their] alleged omissions . . . ."). By its terms, then, *Marcus* does not apply to Plaintiff's bait-and-switch allegations. As such, classwide proof will easily allow our fact finder to determine whether Defendants' uniform conduct caused class members' ascertainable losses resulting from Defendants' bait-and-switch

(i.e., did Defendants "advertise[their] merchandise as part of a plan or scheme . . . not to sell the same at the advertised price"? *Schwartz*, 2012 U.S. Dist. LEXIS 189251, at *17).

The *Marcus* court instructed that when considering the susceptibility of causation to classwide proof for an NJCFA *omission-based* claim (whether an intentional omission or omission-based unlawful conduct), a court must find the following:

> "*[E]ither* (1) that the alleged defects were not knowable to a significant number of potential class members before they purchased [defendant's product], *or* (2) that, even if the defects were knowable, that class members were nonetheless relatively uniform in their decisionmaking, which would indicate that, at most, only an insignificant number of class members actually knew of the alleged defects and purchased [defendant's product] at the price they did anyway."

*Id.* at 611 (emphasis added).

And this test stands to reason. For if a defendant's scheme is knowable (call it, *Marcus's* "knowability prong"), class members cannot rightly say that this scheme deceived them (or if some class members insist that it did, individual questions would predominate as to whether the entire class was deceived). In this manner, a knowable scheme cannot be said to have *caused* class members ascertainable loss.

But the *Marcus* court added that sometimes lack of knowability might not be enough to establish causation. Even if class members do *not* know about a defendant's omission, if they *had* known about it and would *still* have purchased defendant's product, it similarly cannot be said that defendant's omission caused ascertainable loss to class members.  As plaintiff will demonstrate below, neither this "no harm, no foul prong," nor the "knowability prong," defeat predominance.

i.    **Knowability prong: Defendants hid their surcharge so that it was not knowable to a significant number of potential class members.**

Since *Marcus's* prongs are disjunctive, if classwide proof demonstrates that Plaintiff and a significant number of class members could not have known about Defendants' surcharge, then Plaintiff will have demonstrated that causation can be proved through classwide evidence and the causation analysis is over. Defendants' website, its rental documents, and the expert opinion of Dr. Morwitz, an expert in "the psychology of how consumers process price information," Morwitz Report at 1, demonstrate that Defendants' surcharge was not knowable to Plaintiff and a significant number of class members.

First, Omniture—Defendants' own objective website-tracking data—shows that from January 2009 through May 2013, 99.9% of Avis.com visitors never visited the webpage that described Defendants' frequent-flyer surcharge. Ex. 8. Similar data documenting the top 200 navigational paths taken by Avis.com visitors also show that *none of these paths* include navigation to the webpage that describes Defendants' surcharge. Ex. 9. *See also* Morwitz Report at 13.

In this manner, Dr. Morwitz explains that Defendants' description of their surcharge on Avis.com is a "shrouded attribute, meaning information that firms hide or obfuscate from their customers." *Id.* at 12 (internal quotation marks and citation omitted). And Defendants' adjustments to their website over time were so insubstantial that they neither affect Dr. Morwitz's opinion nor Defendants' own Omniture data.

Contributing to Plaintiff's no-knowability conclusion is John Sellers, Avis Budget Group's Director of Customer Loyalty. Mr. Sellers explained that customers who had no knowledge of Defendants' surcharge would not discover the webpage describing this surcharge because the only way to find that webpage was to specifically type "frequent-flyer tax" or

20

"frequent-flyer surcharge" in the website's search field, which reasonable consumers would not

even know to do, unless prompted:

> Q. Do you know where, on Avis.com, you are referring to, where
> the surcharge "is disclosed"?
>
> A. Yes.
>
> Q. Where is that?
>
> A. If you go to the Avis website, the very first line, there is a
> search field and customers may enter information for whatever
> item relative to the car rental experience that they may want to
> look up information for. If you type in "frequent flyer tax" or
> "frequent-flyer surcharge, frequent flyer program," then it will
> redirect you to a section of the site that has that specific
> information in there. There may be a link that—from there, if you
> want additional information about specific airline partner
> programs, that you would click on or go to in that particular arena.
>
> Q. So if a customer doesn't know to type in "frequent-flyer
> surcharge" because they are unaware that it even exists, they
> wouldn't know to put that in the box and find it. Is that right?
>
> A. The customer doesn't know what the customer doesn't know.

Ex. 17 (Feb. 14, 2013 Sellers Tr. at 113:23-114:20). Thus, the evidence demonstrates that

Defendants' surcharge was not knowable on Avis.com to a significant number of class members.

*See* Morwitz Report 13, 18, 21-22.[3]

Second, the documents associated with a car rental also demonstrate that Defendants'

surcharge was not knowable to a significant number of class members. Defendants' reservation

---

[3] Although Defendants provided webpage viewership data only for the period January
2009 through May 2013, Dr. Morwitz concludes that from 2005–approximately January 13,
2009, very few customers viewed Defendants' surcharge-description webpage. She bases her
opinion on Defendants' webpage viewership data for the end of this time period, data for later
time periods, and the consistency of this data across time, as well as on academic literature,
which she also reviewed and which demonstrated that customers do not tend to engage in full
and complete online searches, despite the nominal cost of those searches. Morwitz Report at 13-
14.

summary and rental-reservation confirmations provided to class members do not itemize or reference their surcharge as they do other fees and surcharges. Ex. 1; *supra* at pp. 2-3. Defendants' Rental Document, which they placed inside a five-fold jacket in Plaintiff's rental car at the time of pick-up, inconspicuously contained an indecipherable reference to "FTP SUR $ 0.75/DY." Ex. 2. Likewise, Defendants' Return Document—which class members received only *after* their rentals had concluded—similarly obfuscated Defendants' surcharge, this time via a different code: "FTP SR$ 0.75/DY". Exs. 4-5.

Dr. Morwitz refers to the presentation of these codes as an example of "price obfuscation, which means presenting price information in a manner that is confusing to consumers and designed not to be noticed or processed carefully." Morwitz Report at 23-24. And Mr. Altus, an Avis executive and a Preferred member himself, testified that even *he* did not know what "FTP SR" meant. *See supra* n.2. What's more, Defendants' Terms and Conditions do not discuss Defendants' frequent-flyer surcharge either; Mr. Altus confessed as much. *See supra* n.1.

Taken together, when considering Defendants' failure to (1) suitably disclose their surcharge to class members on their website; (2) include their surcharge during the rental-reservation process and confirmation as Defendants did for all their other charges; (3) present their surcharge on their Rental Documents and Return Documents in a non-shrouded way; and (4) mention their surcharge in their Terms and Conditions, only one conclusion emerges: Defendants' surcharge was not knowable to Plaintiff and a significant number of class members. Accordingly, Plaintiff can demonstrate through common proof that Defendants' intentional omissions caused his and class members' ascertainable losses.

ii.    **Even had Defendants' surcharge been knowable, only an insignificant number of class members would have purchased miles anyway because few, if any, class members are willing to pay for miles that they can otherwise get for free.**

Under *Marcus's* disjunctive standard, if classwide evidence demonstrates that knowability can be demonstrated (or not) through classwide proof, then the causation analysis ends there. *See Marcus,* 687 F.3d at 611 (explaining that before certifying a class, the court must find "*either* (1) that the alleged defects were not knowable to a significant number of potential class members . . . *or* (2) that, even if the defects were knowable, that class members were nonetheless relatively uniform in their decisionmaking, [such that] only an insignificant number of class members actually knew of the alleged defects and purchased or leased their cars at the price they did anyway.") But still, Dr. Morwitz explains that even *had* class members known about Defendants' surcharge (i.e., Defendants' surcharge was knowable), class members' reaction to this surcharge would have been relatively uniform in that only an insignificant number of class members would have purchased Defendants' miles anyway.

First, Dr. Morwitz explains how consumers uniformly enjoy getting products for free and thus assign a higher value to products that are offered for free over simply the economic value of getting them for a price of zero. Morwitz Report at 27-28. She then examines the frequent-flyer-mile market and notes that virtually *all* frequent-flyer miles that consumers can obtain are available without a surcharge or fee. Based on her observation that consumers prefer free products, taken with the fact that virtually all frequent-flyer miles offered in the marketplace *are* free (except for Defendants' and a smattering of others'), she concludes that "even *had* a significant number of consumers known about [Defendants'] frequent-flyer surcharge, virtually none of these consumers would have requested frequent-flyer miles." *Id.* at 33 (emphasis added).

Added to this, Dr. Morwitz discusses "reference prices," which are "prices that consumers use as a standard to evaluate a good's purchase price." *Id.* at 33. She notes that if

consumers have a reference price (or expectation of) $0.00 for obtaining frequent-flyer miles, and that if a provider attempts to charge them more than this, consumers will be less likely to buy this provider's miles and will instead be more likely to acquire miles from a provider that offers miles for no additional cost. *Id.* at 34. Based on this tested reality, Dr. Morwitz concludes that "had [Defendants] advised consumers of [their] surcharge for a benefit that is all but universally offered in the marketplace at no additional cost, these consumers would not have chosen to receive [Defendants'] fee-based miles." *Id.* at 34, 35.

Of course, whether Dr. Morwitz's conclusions about classwide behavior are right or wrong is a question for the jury. All that matters for class-certification is whether she offers a credible theory for demonstrating that class members would not have purchased Defendants' miles had they known about Defendants' surcharge. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, MDL No. 1556, 2007 U.S. Dist. LEXIS 85466, at *25 (M.D. Pa. Nov. 19, 2007) ("'To the extent that [class certification] involves a battle of experts, it [is] not appropriate for the Court to determine which expert is more credible at this time.'") (quoting *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 217 n. 13 (E.D. Pa. 2001)). This she has done.

Defendants' expert, Dr. Ravi Dhar, likewise opines that class members' reaction to Defendants' surcharge is a uniform one, like *Marcus* requires for certifying a class based on knowable omissions. *See* Ex. 21. Focusing exclusively on *Marcus's* would-have-purchased prong (and entirely ignoring *Marcus's* knowability prong), Dr. Dhar constructed a survey for the alleged purpose of demonstrating that all class members *would have purchased* miles even had they known about Defendants' surcharge. *Id.* at 6-7. But by insisting that *all* class members would have purchased miles had they known about Defendants' surcharge, Dr. Dhar concedes that all class members *acted uniformly*, confirming that causation can be demonstrated through

classwide proof. *See id.* at 25, ¶ 63 (indicating that the "overwhelming majority" of respondents

opted for miles despite knowledge of their cost); 26, ¶ 65 (same); 27, ¶ 67 (same).

Dr. Dhar repeats this concession in his Rebuttal Report. Ex. 22 at 3, ¶ 10 (admitting that

class members' knowledge of Defendants' surcharge would have had "only a *de minimis*

difference on the individual decisions to earn miles for the overwhelming majority of

respondents"). So while both Dr. Morwitz and Dr. Dhar agree that class members with actual

knowledge of Defendants' surcharge reacted uniformly, which expert is right─*i.e.* these experts'

competing would-have versus would-not-have opinions─is reserved for the merits stage. *See,*

*e.g.*, *Maloney v. Microsoft Corp.*, No. 09-2047, 2012 U.S. Dist. LEXIS 28676, at *7 (D.N.J.

Mar. 5, 2012) (at class certification, "[t]he Court's role is not to determine which side will

prevail on the merits, but [only] to determine if the putative class could prevail on the merits

using common proofs.") (internal quotation marks and citation omitted).

So when considering Plaintiff's testimony (concerning his behavior) alongside Dr.

Morwitz's testimony (concerning class members' behavior), it is evident that Plaintiff can

demonstrate through classwide proof that no more than an insignificant number of class

members would have paid Defendants' surcharge since class members could have otherwise

obtained miles for free. Because at bottom, at class certification, if lack of knowability is not

enough, what matters is whether Plaintiff can answer *Marcus's* would-still-have-purchased

question through classwide proof and he can.

**3.     Plaintiff's good-faith-and-fair-dealing claim against ARACS arises from his breach-of-contract claim and involves common questions that predominate over any individual questions.**

"The covenant [of good faith and fair dealing] requires that neither party to a contract

'shall do anything which will have the effect of destroying or injuring the right of the other party

to receive the fruits of the contract.'" *Schwartz*, 2012 U.S. Dist. LEXIS 189251, at *23 (citing

*Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 254 (App. Div. 2002)). The *anything* that

Defendants did to Plaintiff and class members was to surcharge them for frequent-flyer miles

that Defendants presented to all class members in the same way, never mind whether a jury

might consider ARACS doing so to have been legal or illegal. For largely the same reasons as

involve Plaintiff's contract and NJCFA claims, he can demonstrate good faith and fair dealing's

elements through proof that applies to the entire class. *See id*. at *24 ("declin[ing] to dismiss

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing for the same

reasons it . . . declined to dismiss [Plaintiff's] breach of contract and CFA claims.").

**F.    A class action is the superior method for adjudicating this case.**

In addition to predominance, Rule 23(b)(3) requires "that a class action is superior to

other available methods for the fair and efficient adjudication of the controversy. The rule asks [a

court] to balance, in terms of fairness and efficiency, the merits of a class action against those of

alternative available methods of adjudication. *Georgine v. Amchem Prods.*, 83 F.3d 610, 632 (3d

Cir. 1996) (internal quotation marks and citation omitted). And in cases involving small damages

per person, class actions are considered especially suitable. *See, e.g.*, *Elias v. Ungar's Food

Prods.*, 252 F.R.D. 233, 252 (D.N.J. 2007) (recognizing that "individual purchaser[s] have little

interest in pursuing separate claims [where] the recovery sought by each would not be

sufficiently large to render separate cases economically feasible").

Here, while the total amount of surcharge collected is approximately $10 million, *see* Ex.

14, each class member's damages are in small multiples of $0.75. As such, a class action is the

only economically feasible way for class members to recover their damages from Defendants.

**G.    Plaintiff's workable, proposed trial plan demonstrates his class action's manageability.**

As the Third Circuit recognized in *Hydrogen Peroxide*, 552 F.3d at 319, "in introducing the concept of a 'trial plan,' the Advisory Committee's 2003 note focuses attention on a rigorous evaluation of the likely shape of a trial on the issues." The court noted the Committee's observation that "[a] critical need is to determine how the case will be tried[, and that a]n increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof." *Id.* (citing Fed. R. Civ. P. 23 advisory committee's note, 2003 Amendments.). To this end, Plaintiff has provided the Court a proposed trial plan that he believes presents a realistic, practical, and workable process for managing and trying his certified claims. *See* Ex. 23 (Plaintiff's proposed trial plan).

## V.    CONCLUSION

Defendants tricked, baited, and switched Plaintiff and class members into paying for

something that was not part of their deal.  Plaintiff has satisfied all requirements of Rule 23,

including showing that common issues of fact and law predominate.  In particular, he has ably

demonstrated how he can prove his liability theories, which center on Defendants' uniform

behavior, through classwide evidence.  Accordingly, for those and the foregoing reasons,

plaintiff's motion for class certification should be granted.

Dated: March 17, 2014

                                               **LITE DePALMA GREENBERG, LLC**

                                               *s/Bruce D. Greenberg*_____
                                               Bruce D. Greenberg
                                               Jeffrey A. Shooman
                                               Two Gateway Center, Suite 1201
                                               Newark, NJ 07102
                                               Telephone: (973) 623-3000
                                               Facsimile: (973) 623-0858
                                               E-mail: bgreenberg@litedepalma.com
                                               jshooman@litedepalma.com

                                               Daniel R. Karon
                                             **GOLDMAN SCARLATO KARON &**
                                             **PENNY, P.C.**
                                             700 W. St. Clair Ave., Suite 200
                                             Cleveland, OH 44113
                                             Telephone: (216) 622-1851
                                             Facsimile: (216) 241-8175
                                             E-mail: karon@gskplaw.com

Laura Killian Mummert
**GOLDMAN SCARLATO KARON &
PENNY, P.C.**
101 E. Lancaster Ave., Ste. 204
Wayne, PA 19087
Telephone: (484) 342-0700
Facsimile: (484) 342-8747
E-mail: mummert@gskplaw.com

Jay R. Faeges
**MILLER GOLER FAEGES LAPINE,
LLP**
1301 E. 9th St., Suite 2700
Cleveland, OH 44114-1835
Telephone: (216) 696-3366
Facsimile: (216) 363-5835
E-mail: faeges@mgfl-law.com

*Attorneys for Plaintiff and the Putative
Class*