<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD SCHWARTZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AVIS RENT A CAR SYSTEM, LLC and AVIS BUDGET GROUP, INC.,<br><br>Defendants | Civil Action No. 11-4052 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendants Avis Rent a Car System, LLC and Avis Budget Group, Inc. ("Avis" or "Defendants")' motion for summary judgment as to Edward Schwartz ("Plaintiff")'s claims of (1) violation of the New Jersey Consumer Fraud Act, (2) breach of contract, and (3) breach of the implied covenant of good faith and fair dealing under New Jersey common law. [CM/ECF No. 120.] The Court has considered the submissions made in support of and in opposition to Defendant's motion, and heard oral arguments on the matter. For the reasons set forth below, Defendants' motion for summary judgment is denied.

**I.    BACKGROUND**

As the Court writes only for the parties, it will set forth only those facts it deems relevant to deciding Defendant's motion.

Plaintiff brings this action on behalf of himself and a putative class of Avis customers who were charged a $0.75 surcharge for earning frequent-flyer miles and other rewards through their participation in Avis's Travel Partner Program (the "Program").

1

The Program allows participating customers who rent a car from Avis to earn frequent-flyer miles or other rewards with certain airlines, hotels, and other companies (Avis's "Travel Partners"). Avis pays its Travel Partners for the points and miles earned by customers who participate in the Program, and also pays federal taxes on these points and miles. To offset part of its costs, Avis charges participating customers $0.75 per rental day.

On May 15, 2011, Plaintiff made an online reservation on Avis's website for a rental vehicle between May 15-16, 2011. Plaintiff was to pick up, and return his vehicle at Manchester-Boston Regional Airport. According to Plaintiff, Avis's website prompted him to enter his Continental Airlines frequent-flyer number so that he could earn miles through the Program. Upon completing his online reservation, Plaintiff received an email confirmation containing an itemized list of estimated rental costs, which did not include any charge for earning frequent-flyer miles or rewards through the Program. The email read:

**Base Rate and Charges**

| | |
|---|---|
| Base Rate | $94.99/day |
| Energy Recovery Fee | $0.50/day |
| Vehicle License Fee | $3.00/day |
| Customer Facility Fee | $2.25/day |
| Concession Recovery Fee | 10% |
| Tax (9.0%) | $9.92 |

**Rental Options**

| | |
|---|---|
| GPS Navigation | $13.95 |

**Additional Fees**

Optional equipment and coverages may be subject to taxes and fees that are not included in the estimated total.

Where2 GPS Navigation — Taxes not included.

2

> Gas Service Option — Fees for the Gas Service Option are not included in the Estimated Total.

Plaintiff paid for the car rental with his company's American Express Business Platinum credit card. Though Plaintiff contracted directly with Defendant and was the named cardholder and primary obligor of the credit card used, the charges associated with the car rental were paid by ORG Holdings, Limited and ORG Portfolio Management ("ORG").

As a participant in Avis's Preferred Service Program, Plaintiff was able to bypass the service counter and proceed directly to his rental vehicle on the date of his arrival at Mancherster-Boston Regional Airport. Plaintiff claims that Avis placed a document confirming the terms of the rental (the "Rental Document") inside his rental car. The Rental Document included a list of the same itemized charges that had appeared in the email confirmation that Plaintiff received, as well as a $0.75 daily surcharge described as an "FTP SUR" charge. When Plaintiff returned the car, Avis issued him a receipt (the "Return Document") that again listed all the charges for the rental, and a $0.75 charge described as "FTP-SR."

Plaintiff's Second Amended Complaint asserts (1) a claim for violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et seq.; (2) a claim for breach of contract; (3) a claim for breach of the covenant of good faith and fair dealing; (4) a claim for injunctive relief under New Jersey law; and (5) a claim for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. [CM/ECF No. 96.] Defendant filed a motion for summary judgment on March 14, 2014. [CM/ECF No. 120.] Oral argument was held on July 9, 2014. [CM/ECF No. 143.]

## II. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

3

Civ. P. 56(a). The moving party must first demonstrate that there is no genuine issue of material fact. *Celotex v. Catrett,* 477 U.S. 317 (1986). Courts construe facts and inferences in the light most favorable to the non-movant in order to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. *Id.* at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "Thus, if a reasonable fact finder could find in the nonmovant's favor, then summary judgment may not be granted." *Norfolk Southern Ry. Co. v. Basell USA Inc.,* 512 F.3d 86, 91 (3d Cir. 2008).

## III. DISCUSSION

Defendants have moved for summary judgment arguing that Plaintiff does not have Article III standing and that, even if this Court finds that Plaintiff has standing, Plaintiff's claims should be dismissed on the merits. For the reasons explained below, this Court denies Defendants' motion.

### A. Article III Standing

In order to have Article III standing, a plaintiff must allege: (1) an injury-in-fact; (2) causation between the conduct complained of and the alleged injury; and (3) that the court can redress the injury. "[S]tanding is a 'threshold question in every federal case.'" *Wheeler v. Travelers Ins. Co.,* 22 F.3d 534, 537 (3d Cir. 1994) (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)). "[The Article III standing] requirements ensure that plaintiffs have a 'personal stake' or 'interest' in the outcome of the proceedings 'sufficient to warrant . . . [their] invocation of

4

federal-court jurisdiction and to justify exercise of the court's remedial powers on . . . [their] behalf[.]'" *Id.* at 537-38 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 441 U.S. 26, 38-39 (1976); *Warth*, 422 U.S. at 498-99).

"While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005). The size of the plaintiff's injury is irrelevant as long as it is identifiable. *U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, n. 14 (1973). Moreover, "[t]he contours of the injury-in-fact requirement, while not precisely defined, are very generous." *See Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982).

Defendants argue that Plaintiff does not have Article III standing because he did not suffer an out-of-pocket economic loss. (Oral Argument, 8: 5-9; Def. Br. 7.) They reason that because Plaintiff's employer, ORG, paid Plaintiff's credit card bill, Plaintiff did not suffer an injury-in-fact. For this same reason, Defendants also argue that this Court cannot redress Plaintiff's alleged injury. This Court disagrees.

1. <u>Injury-in-fact</u>

The injury-in-fact element of Article III standing does not require a showing of a direct economic harm. To establish an injury-in-fact, a plaintiff only has to show an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Here, Plaintiff has a legally protected interest in his contractual agreement with Defendant. Not only did Plaintiff contract directly with Defendant, but he was also the named cardholder on the credit card used to pay for the rental cost and the primary obligor. The alleged invasion of this legally protected interest was concrete, particularized, and real. When

5

contracting with Defendant to rent a car, Plaintiff was led to believe that he would be able to accrue frequent flyer miles for free. Instead, Defendant included a hidden fee in Plaintiff's total rental cost, charging Plaintiff for his ability to accrue those frequent flyer miles. This is sufficient to show that he has standing to sue for claims arising out of this contractual dispute.

Though the injury-in-fact element of Article III standing does not require an economic harm, Plaintiff has shown that he has suffered one. Assuming that the daily $0.75 surcharge for participating in the Program is contrary to New Jersey law, ORG is entitled to be reimbursed for that expense. Further, pursuant to the business practice between Plaintiff and ORG, ORG only pays for Plaintiff's business car rental expenses. [CM/ECF No. 121-1, 4.] If Plaintiff charges a personal car rental on his business credit card, he must reimburse ORG for that expense. (*Id.*) The $0.75 surcharge, though not a personal car rental cost, is not a valid business travel expense. Thus, Plaintiff "has this obligation to ORG, which itself is a detriment to him that should be compensated." (Oral Argument, 32:9-11.)

Defendants argue that Plaintiff did not suffer an economic harm because his credit card bill was paid by ORG, relying on *Wheeler* to support this argument. (*See id.* at 7:14-23, 8:5-10) ("I think the precedential case that establishes there's no injury-in-fact is the Third Circuit decision in Wheeler . . . [it] stands for the proposition that a plaintiff, who has either been reimbursed or has not incurred any out-of-pocket loss doesn't have standing, and that is relatively the same situation as we have here[.]") *Wheeler*, however, is distinguishable from the matter at hand.

In *Wheeler*, the plaintiff-appellee was hit by a car and suffered injuries that caused substantial medical expenses. 22 F.3d at 536. At that time, she was insured through both Medicare and a policy from Travelers Insurance Company. *Id.* Medicare paid most of the

6

medical bills directly to her healthcare provider. *Id.* Travelers then paid the difference directly to her. *Id.* The plaintiff-appellee then sued Travelers to recover the expenses paid by Medicare. *Id.*

The *Wheeler* Court concluded that the plaintiff-appelle did not have standing because she failed to "establish that she suffered any actual or threatened injury from Traveler's denial of her claim for no-fault benefits" since Medicare paid for the expenses she was trying to recover. *Id.* at 538. The Court explained that the plaintiff-appellee "never [had] anything to gain from [her] lawsuit," *id.*, and that "there is no real controversy between Travelers and [the plaintiff-appellee]." *Id.* at 539. It concluded that the "dispute realistically [was] between Medicare and Travelers[.]"

The Third Circuit, however, distinguished the facts in *Wheeler* from other "actions which may benefit third parties." *Id.* The Court gave as an example a workers' compensation case in which the injured plaintiff "brings a third-party action against an alleged tortfeasor." *Id.* The Circuit Court explained:

> In that situation the worker's compensation insurance carrier may be able to assert a lien on the proceeds of a recovery in the third-party action. But such cases are distinguishable from this case. In the third-party action the focus of the case is on the dispute between the employee and the alleged tortfeasor. The claim of the insurer asserting the lien is tangential to the matters at issue in the third-party action, e.g., negligence of the defendant and damages suffered by the plaintiff.

*Id.* at 539. This distinction applies to the matter at hand. ORG's claim to recover the amount it wrongly paid on Plaintiff's credit card bill is analogous to the worker's compensation insurance carrier's lien in the above example. Though ORG paid Plaintiff's credit card bill and is entitled to be reimbursed for the amount in question, its claim on this payment is "tangential to the matters at issue" in this action. Instead, the focus here is on Defendants' fraudulent behavior aimed at Plaintiff and Defendants' breach of the contract entered into with Plaintiff. As such, the

dispute here is clearly between Plaintiff and Defendants. Unlike the plaintiff-appellee in *Wheeler*, the Plaintiff here does have something to gain from his lawsuit: the amount he owes ORG for the hidden fees charged by Defendant.

2. Causation

The second element of Article III standing is "a causal connection between the injury and the conduct complained of...." *Lujan*, 504 U.S. at 560-61 (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41—42 (1976)). Defendants do not argue that Plaintiff lacks standing because there is no causation. In fact, none of the parties discussed this element in their arguments. Still, it is clear to this Court that there is a causal connection between the injury and Defendants' alleged conduct. Defendants omitted material facts regarding the $0.75 charges for participating in the Program. Their omissions and misrepresentations induced Plaintiff to enter into a contract with them, which was subsequently breached and caused an economic harm.

3. Redressability

The final element of Article III standing, redressability, means that a plaintiff's requested remedy would "likely" cure the alleged harm. *Lujan*, 504 U.S. at 561. Defendants argue that this Court cannot redress Plaintiff's alleged harm because "Plaintiff has suffered no such harm." (Def. Br. 7.) They reason that any monetary award to Plaintiff would constitute a windfall to him because Plaintiff's company, and not Plaintiff himself, paid the frequent flyer surcharge. Defendants further argue that this Court cannot award damages to ORG because that entity is not a party to this action and has asserted no claims against Defendant.

This Court may properly redress Plaintiff for his injury. Defendants' arguments ignore the fact that Plaintiff must reimburse ORG for the Travel Partner Program surcharge if that charge is illegal. As explained above, Plaintiff owes that money to ORG. Thus, any award for

damages granted to Plaintiff would not constitute a windfall to him. As such, it is possible to redress Plaintiff's injury.

### B. Merits of Plaintiff's Claims

Defendants move for summary judgment on Plaintiff's claims for (1) violation of the NJCFA, (2) breach of contract, and (3) breach of the implied covenant of good faith and fair dealing. (Def. Br. 7.) Defendants' sole argument for summary dismissal of these claims is that Plaintiff cannot show that he suffered any damages as required for establishing valid claims under these causes of action. (*Id.* at 7-8.) This Court disagrees.

To establish a prima facie case under the NJCFA, a plaintiff must show: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merk & Co., Inc.*, 192 N.J. 372, 389 (2007). An ascertainable loss is "a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009); *see also Thiedman v. Mercedes-Benz-USA, LLC*, 183 N.J. 232, 248 (2005) (evidence of ascertainable loss "must be presented with some certainty demonstrating that it is capable of calculation, although it need not be demonstrated in all its particularity to avoid summary judgment"). In interpreting the NJCFA, courts have been instructed to "be faithful to the Act's broad remedial purposes. . . [and] construe the [Act] broadly, not in a crabbed fashion." *Bosland*. 197 N.J. at 556-57 (citations omitted). Similarly, to state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations. *Frederico v. Home Depot.* 507 F.3d 188, 203 (3d Cir.2007). Finally, "[d]amage is an element of the [breach of the implied covenant of good faith

9

and fair dealing] claim which Plaintiff must allege to survive Defendant's motion to dismiss." *DeHart v. U.S. Bank, N.A.*, 811 F. Supp. 2d 1038, 1048-49 (D.N.J. 2011) (citing *Wade v. Kessler Instit.*, 343 N.J. Super. 338 (App. Div. 2001)).

Defendants have failed to show that there is no genuine issue of material fact as to Plaintiff's damages. As explained above, ORG only pays for Plaintiff's business car rental expenses. [CM/ECF No. 121-1, 4.] If Plaintiff charges a personal car rental on his business credit card, he must reimburse ORG for that expense. (*Id.*) The $0.75 surcharge, though not a personal car rental cost, is not a valid business travel expense. Thus, assuming that the daily $0.75 surcharge for participating in Avis's Travel Partners Program is contrary to New Jersey law, ORG deserves to be reimbursed for that expense. This sufficiently satisfies the elements of "ascertainable loss" and "damages" of Plaintiff's claims.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment [CM/ECF No. 120.] is denied.

An appropriate Order accompanies this Opinion.

Jose L. Linares
United States District Judge

Dated: August 6th, 2014