<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD SCHWARTZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AVIS RENT A CAR SYSTEM, LLC, and AVIS BUDGET GROUP, INC.,<br><br>Defendants. | Civil Action No. 11-4052 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of Plaintiff Edward Schwartz ("Plaintiff")'s, motion to certify class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, [CM/ECF No. 146],[1] and Defendants' motion to exclude Plaintiff's expert Dr. Vicki Morwitz's testimony [CM/ECF No. 149.] The Court has considered the submissions made in support of and in opposition to both motions.  No oral argument was heard pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, Defendants' motion to exclude Plaintiff's expert testimony is denied and Plaintiff's motion to certify is granted.

### I.    <u>BACKGROUND</u>

---

[1] Plaintiff's Notice of Motion for Class Certification states that Plaintiff moves for certification under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). [CM/ECF No. 146.] Rule 23(b)(2) states that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). As discussed with the parties during oral arguments on July 9th, 2014, Defendants ceased engaging in the practices complained about in this action at the end of the class period. Transcript of Oral Argument at 17, *Schwartz v. Avis*, 2014 WL 3866476 (No. 11-4052). As such, the issue of injunctive relief is no longer applicable to this case. Moreover, Plaintiff does not discuss class certification regarding his declaratory relief claim in his moving brief. Thus, it will not be addressed in this Opinion.

As the Court writes only for the parties, it will set forth only those facts it deems relevant to deciding Defendant's motion.

Plaintiff brings this action on behalf of himself and a putative class of Avis customers who were charged a $0.75 surcharge for earning frequent-flyer miles and other rewards through their participation in Avis's Travel Partner Program (the "Program").

The Program allows participating customers who rent a car from Avis to earn frequent-flyer miles or other rewards with certain airlines, hotels, and other companies (Avis's "Travel Partners"). Avis pays its Travel Partners for the points and miles earned by customers who participate in the Program, and also pays federal taxes on these points and miles. To offset part of its costs, Avis charges participating customers $0.75 per rental day.

On May 15, 2011, Plaintiff made an online reservation on Avis's website for a rental vehicle between May 15–16, 2011. Plaintiff was to pick up, and return his vehicle at Manchester–Boston Regional Airport. According to Plaintiff, Avis's website prompted him to enter his Continental Airlines frequent-flyer number so that he could earn miles through the Program. Upon completing his online reservation, Plaintiff received an email confirmation containing an itemized list of estimated rental costs, which did not include any charge for earning frequent-flyer miles or rewards through the Program. The email read:

**Base Rate and Charges**

| | |
|---|---|
| Base Rate | $94.99/day |
| Energy Recovery Fee | $0.50/day |
| Vehicle License Fee | $3.00/day |
| Customer Facility Fee | $2.25/day |
| Concession Recovery Fee | 10% |
| Tax (9.0%) | $9.92 |

**Rental Options**

| | |
|---|---|
| GPS Navigation | $13.95 |

***Additional Fees***
Optional equipment and coverages may be subject to taxes and fees that are not included in the estimated total.

Where2 GPS Navigation—Taxes not included.

Gas Service Option—Fees for the Gas Service Option are not included in the Estimated Total.

As a participant in Avis's Preferred Service Program, Plaintiff was able to bypass the service counter and proceed directly to his rental vehicle on the date of his arrival at Mancherster–Boston Regional Airport. Plaintiff claims that Avis placed a document confirming the terms of the rental (the "Rental Document") inside his rental car. The Rental Document included a list of the same itemized charges that had appeared in the email confirmation that Plaintiff received, as well as a $0.75 daily surcharge described as an "FTP SUR" charge. When Plaintiff returned the car, Avis issued him a receipt (the "Return Document") that again listed all the charges for the rental, and a $0.75 charge described as "FTP–SR."

On July 16, 2014, Plaintiff moved to certify his claims for: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8–1 et seq.; (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing. [CM/ECF No. 146.] On the same day, Defendants moved to exclude the testimony of Plaintiff's expert. [CM/ECF No. 149.]

## II.    LEGAL STANDARD

### A.  Motion to exclude

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 allows a witness qualified as an expert to give testimony if the expert's scientific, technical or specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue if: (i) the testimony is based upon sufficient facts or data, (ii) the testimony

is the product of reliable principles and methods, and (iii) the expert witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994)).

The District Court is required to act as a gatekeeper, preventing the admission of opinion testimony that does not meet these three requirements. *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)). The proponent of the evidence bears the burden of establishing the existence of each factor by a preponderance of the evidence. *Daubert*, 509 U.S. at 592; *In re Paoli*, 35 F.3d at 743-44. A court's rejection of expert testimony should be the exception rather than the rule. Fed. R. Evid. 702 Advisory Committee Note. As the Supreme Court noted in *Daubert*, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595.

**B.  <u>Motion to certify</u>**

Class certification is proper only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litigation.* 552 F.3d 305, 309 (3d Cir.2008) (quoting *Gen Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161 (1982)). To meet the prerequisites of Rule 23, a plaintiff must establish both that the four requirements of Rule 23(a) have been met—numerosity, commonality, typicality, and adequacy—and that the pleading requirements of Rule 23(b)(1), (2), or (3) have been met. Fed. R. Civ. P. 23; *see also Hydrogen Peroxide,* 552 F.3d at 309 n. 6. The plaintiff bears this burden by a preponderance of the evidence. *Hydrogen Peroxide.* 552 F.3d at 320. Rule 23(b)(3) requires that a plaintiff also establish "that the

questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Hydrogen Peroxide,* 552 F.3d at 310.

When determining whether these requirements have been met, "the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 591 (3d Cir. 2012) (quoting *Hydrogen Peroxide,* 552 F.3d at 307). "This is true even if the class certification inquiry overlaps with the merits of the causes of action." *Id.*

### III.   ANALYSIS

#### A. Motion to Exclude

Before this Court can consider whether class certification is appropriate in this case, it must decide whether it should exclude the testimony of Plaintiff's expert witness. As discussed below, Defendants argue that Plaintiff does not meet the predominance requirement for Rule 23 certification of the NJCFA claim because he cannot show that: (i) the disclosures of the frequent-flyer miles surcharge was not knowable to a significant number of class members, or (ii) if the surcharge had been knowable, most class members would not have signed up for Avis's frequent-flyer program. (Def. Br. 15-16, 19-20) (relying on *Marcus,* 687 F.3d at 607-08). In arguing that the present case satisfies either of the two *Marcus* prongs, Plaintiff relies on the expert report of Dr. Vicki Morwitz. Defendants have moved to exclude this report, arguing that it does not comply with the standards of admissibility set forth by the United States Supreme Court in *Daubert.* Because the exclusion of Dr. Morwitz's report would defeat Plaintiff's attempt to certify

his NJCFA claim, this Court will address Defendants' Motion to Exclude before addressing the merits of Plaintiff's Motion to Certify.

In order for a witness to be deemed qualified to testify as an expert, he or she must possess specialized knowledge, skill, experience, training or education. Fed. R. Evid. 702; *Schneider*, 320 F.3d at 407; *In re Paoli*, 35 F.3d at 741. Furthermore, testimony is said to be reliable if it is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *In re Paoli*, 35 F.3d at 741-43. In other words, the expert must have a reliable basis for his or her belief. *Id.; see also Daubert*, 509 U.S. at 590 (stating that proposed testimony must be supported by appropriate validation). Lastly, in order for expert testimony to be deemed fit, it must be relevant for the purposes of the case and must assist the trier of fact. *Schneider*, 320 F.3d at 404.

Defendants do not argue that Dr. Morwitz is not qualified to speak on the underlying subject or that her opinions are not relevant to the issues in this case. Instead, Defendants solely argue that Dr. Morwitz's opinions as to the two *Marcus* prongs are unreliable. The Court will address these arguments in turn.

### 1.  The Knowability Prong of *Marcus*

In her report, Dr. Morwitz concludes that during the relevant time periods, "virtually none" of Defendants' customers could have known that they were being charged a surcharge for earning frequent-flyer miles. (Docket #146-15.) To support this opinion, Morwitz relies on (i) a number of documents that contain the surcharge disclosure, (ii) data regarding the number of visitors to Avis's website, (iii) data from other airlines concerning how they distribute frequent-flyer miles, and (iv) scholarly literature.

Defendants first argue that Dr. Morwitz's report is unreliable because she did not conduct a survey of Avis's customers to determine whether they were aware of the surcharge. (Def. Br. 18.) However, Defendants have not cited to a case that holds that the lack of a consumer survey automatically renders an expert's report inadmissible. At the same time, their reliance on *Neale v. Volvo Cars of N. Am., LLC*, No. 10-4407, 2013 WL 784962 (D.N.J. Mar. 1, 2013) is misplaced. In *Neale*, the defendants' expert issued an opinion regarding the ineffectiveness of a recall notice, citing to a study "demonstrating that on average 70% of vehicle owners responded to recall notices, with response rates as low at 23% and as high as 96%." *Id.* at *3. The court found the expert's opinion to be unreliable because the expert did not determine where Volvo owners fall within that rage, and if such owners "have an average response rate on the higher end of that range, [the expert] could not argue that a reasonable person would not respond to a recall notice about the alleged defect." *Id.* This problem does not exist in the present case, as Dr. Moritz does not rely on a study that yields results of such a wide range. Though she uses academic literature to inform her opinion, Plaintiff's expert relies on the available web traffic data of Avis.com to determine that almost no customers clicked on the different links that contained information about the frequent-flyer miles surcharge. This data showed that, from January 2009 to June 2012, less than 1% of the customers that visited Defendants' website clicked on the surcharge information links.

Defendants also take issue with Dr. Morwitz's analysis of the Rental Documents. For example, Defendants point to Dr. Morwitz's reliance on a study that concludes that 85% of customers do not examine supermarket receipts for accuracy, and argue that because this study shows that 15% of supermarket customers *do* examine their receipts, her opinion is unreliable. This Court, however, fails to see how a study confirming that only a minority of customers examine

their receipts undermines Dr. Morwitz's conclusion.[2] Defendants also argue that Dr. Morwitz's opinion that most consumers would not understand that "FTP SUR" is shorthand for "Frequent Traveler Surcharge Program" is unreliable because the only way to know what consumers understood would be to look at empirical data or ask each consumer directly. However, in concluding that this shorthand is an example of price obfuscation, "which means presenting price information in a manner that is confusing to consumers and designed not to be noticed or processed carefully," (Morwitz Report at 23), Dr. Morwitz relies on literature concerning this practice. (*See id.* at 12.) Thus, Defendants are incorrect in arguing that Morwitz's opinion is based only on her subjective beliefs. If anything, the absence of a study conducted by Plaintiff's expert regarding consumers' reactions to the "FTP SUR" shorthand is relevant to the weight, not the admissibility, of her conclusion. *See In re TMI Litig.*, 193 F.3d 613, 692 (3d Cir. 1999) *amended*, 199 F.3d 158 (3d Cir. 2000) ("So long as the expert's testimony rests upon "good grounds", it should be tested by the adversary process . . . rather than excluded from juror's scrutiny for fear that they will not . . . satisfactory weigh its inadequacies."). Finally, Defendants criticize Dr. Morwitz's conclusion that the Rental Documents are insufficient because they are received after the rental has already concluded, arguing that most customers are repeat renters and therefore had numerous opportunities to learn of the surcharge. However, because Dr. Morwitz concludes that most consumers do not examine their receipts for accuracy, the fact that most customers are repeat renters is not dispositive.

---

[2] Defendants mainly take issue with the fact that Dr. Morwitz relies on this study to conclude that "virtually none" of Avis's customers knew about the surcharge. This court agrees that if 15% of Avis's customers did in fact know about the surcharge, the term "virtually none" would be an exaggeration. However, this study is not the sole basis upon which Dr. Morwitz forms her conclusion, and thus it is plausible that this study in conjunction with the other literature and data relied on by Dr. Morwitz supports her "virtually none" conclusion.

Defendants' third set of arguments focuses on Dr. Morwitz's critique of the surcharge disclosures on Avis's website. In concluding that Avis's website did not inform consumers of the surcharge during the relevant time periods, she relies on data that shows that from January 2009 through June 2012, a very insignificant number of visitors to Avis.com viewed the webpage that provided information about the surcharge. For example, in January 2009, of the 2,272,074 visitors to Avis.com, only .007% clicked through to this page. Defendants argue that this data is unreliable because some consumers may have visited the disclosure webpage before 2009, and some may have already been aware of the surcharge and therefore had no reason to visit the disclosure webpage. However, these arguments rest on speculation, and Dr. Morwitz's reliance on data that does not extend earlier than January 2009 is only relevant to the weight of her testimony, not its admissibility. *See In re Front Loading Washing Mach.*, No. 08-51, 2013 WL 3466821, at *8 (D.N.J. July 10, 2013) (finding that while an expert's testimony would have been stronger if he conducted a test in a more accurate manner, "this factor goes to weight and not admissibility"). Defendants also argue that Dr. Morwitz's opinion that a reasonable consumer would have been confused by Avis's labeling of the surcharge as a "tax" on its website is unreliable because Morwitz points to no evidence to support this proposition. However, in forming her opinion, she relies on academic literature concerning the way consumers react to the word "tax" (*see* Morwitz Report at 19), and as discussed above, the fact that Dr. Morwitz did not gather her own data does not render her opinion inadmissible.

Finally, Defendants argue that Dr. Morwitz's opinion ignores additional ways in which the surcharge was disclosed, including (i) advertisements that Avis placed in various periodicals, and (ii) disclosures that appeared on the webpages of airlines. However, to the extent that Defendants wish to use their own evidence to contradict Dr. Morwitz's report, the appropriate time to do so is

not in a motion to exclude. Instead, Defendants' evidence and arguments will be considered during this Court's class certification analysis.

Accordingly, this Court does not find that Dr. Morwitz's report regarding the knowability prong of *Marcus* is unreliable under *Daubert*.

### 2.   The Materiality Prong of *Marcus*

In her report, Morwitz concludes that "even had Avis's frequent-flyer surcharge been knowable to consumers, only an insignificant number of them would likely have purchased these miles and have paid Avis's surcharge anyway." (Morwitz Report at 26.) To support this opinion, Morwitz relies on (i) academic literature that demonstrates that consumers enjoy receiving products that are offered for free, (ii) her independent analysis that verifies that the vast majority of frequent-flyer miles that consumers can obtain are available without a surcharge or fee, and (iii) academic literature that suggests that consumers are less likely to buy products when these products cost more than what consumers expect them to cost.

Defendants first argue that Morwitz's opinion regarding materiality is unreliable because Morwitz did not conduct a survey or gather any empirical data concerning the amount that Avis customers might expect frequent flyer miles to cost, and instead bases her conclusions on her own subjective beliefs. However, while Morwitz did not gather any data, she relies on scholarly literature and data from other airline. Thus, her opinion is not, as Defendants suggest, completely unfounded. Further, the two cases cited by Defendants to support this argument are distinguishable from the present case. In *Bowers v. Nat'l Collegiate Athletic Ass'n*, 564 F. Supp. 2d 322, 356 (D.N.J. 2008), the Court excluded expert testimony regarding "accommodations and support that are available to learning disabled college students, and the success of such students in college." The Court found the expert's testimony to be unreliable because he relied solely on his own

experience and did not explain why that experience was a sufficient basis for his opinion. Id. at 357. Further, when plaintiff's counsel emailed the expert explaining the testimony that she needed, the expert replied that he would "ask around on the student athletes with disabilities," which the court found to be suspect. Id. Such issues are not present in this case. Defendants also cite to *American Home Products Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739 (D.N.J. 1994) for the proposition that a survey is needed to support an expert's opinion regarding consumer expectations. However, *American Home Products* was a Lanham Act case wherein the Court stated that "[b]ecause [p]ublic reaction is the measure of a commercial's impact, an implied falsity claim [under the Lanham Act] must be proven in a false advertising case via the use of a consumer survey." As such, *American Home Products* is inapplicable to the present case.

Second, Defendants complain that Morwitz's opinion that most consumers are able to receive frequent-flyer miles for free is "entirely unsupported (and in fact, is incorrect)." (Defs' Mot. at 19). However, Morwitz' opinion is not "entirely unsupported," as she bases her conclusion on data from multiple airlines concerning the way they distribute their frequent-flyer miles. (*See* Morwitz Report at 28.) Whether or not her conclusion is incorrect is a question that should not be answered when the Court is determining whether to exclude an expert under *Daubert. See Oddi v. Ford Motor Co.*, 234 F.3d 136, 145-46 (3d Cir. 2000) ("The test of admissibility is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct. Rather, the test is whether the particular opinion is based on valid reasoning and reliable methodology." (internal quotations and citation omitted))

Finally, Defendants argue that Morwitz's opinion is undermined by a survey conducted by Defendants' expert, Dr. Ravi Dhar, whereby Dhar shows that roughly the same number of respondents opt for frequent flyer miles whether the surcharge is disclosed (96.7% of respondents)

or not (97.5% of respondents). However, while Defendants may attempt to impeach Morwitz using this survey, it does not serve as a basis for excluding her report. *See Daubert*, 509 U.S. at 595 (stating that the "presentation of contrary evidence . . . [is a] traditional and appropriate means of attacking shaky but admissible evidence"); *In re Jacoby Airplane Crash Litig.*, No. CIV. 99-6073, 2007 WL 2746833 (D.N.J. Sept. 19, 2007) ("As Plaintiffs persuasively argue . . . [d]isagreement of another expert does not render a report untrustworthy." (internal quotations omitted)).

Accordingly, Defendants' Motion to Exclude is denied.

## B. Motion to Certify

### 1. Class Definition

Before considering whether Plaintiff has met the requirements for Rule 23 certification, this Court must first determine whether the proposed "parameters defining the class or classes to be certified" are "readily discernible, clear, and precise[.]" *Marcus,* 687 F.3d at 591 (quoting *Wachtel v. Guardian Life Ins. Co., 453* F.3d 179, 187 (3d Cir. 2006)). Plaintiffs define the proposed class as:

> All Avis Preferred members with a United States address who, until June 14, 2012, rented a vehicle through www.avis.com and who paid a surcharge for receiving frequent-flyer miles from any of Defendants' travel partners.

(Pl. Br. 2.) Defendants do not challenge the parameters of Plaintiff's class definition.

Here, the proposed class members enrolled in Avis's Preferred program, rented a vehicle through Defendants' website, and purchased frequent-flyer miles. As such, Defendants have a record of their contact information and the amount of money they spent on the frequent-flyer mile surcharges. This is sufficient for this Court to conclude that the proposed class definition is "readily discernible, clear, and precise." *Marcus,* 687 F.3d at 591.

### 2. *Class Certification*

Plaintiff seeks class certification under Federal Rule of Civil Procedure 23(b)(3) for his claims for: (1) violation of the NJCFA; (2) breach of contract under New Jersey common law; and, (3) violation of Defendants' duty of good faith and fair dealing. Rule 23(b)(3) provides that in order to maintain a class action, the Court must first determine that the prerequisites of Federal Rule of Civil Procedure 23(a) are satisfied, in addition to the requirements of 23(b)(3). Rule 23(a) requires a showing of (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Georgine v. Amchem Prods.*, 83 F.3d 610, 624 (3d Cir. 1996) (citing Fed. R. Civ. P. 23(a)). In addition, Rule 23(b)(3) requires a finding "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Defendants argue that Plaintiff's motion should be denied because: (1) Plaintiff's claims are not typical of those of the class he purports to represent; (2) a class action is not the superior method for adjudication of this case; (3) Plaintiff and his counsel "may not" satisfy the adequacy requirement under Rule 23; and (4) individual issues predominate over common ones. Though they do not challenge the numerosity and commonality requirements for certification, this Court will consider all of the Rule 23 requirements in turn.

**1. Numerosity**

Rule 23(a)(1) provides that the proposed class must consist of members that are so "numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility but only the difficulty or inconvenience of joining all members of the class." *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. 1990) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Similarly, this Court

has held that "[t]o meet the numerosity requirement, class representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." *Varacallo v. Massachusetts Mut. Life Ins. Co.,* 226 F.R.D. 207, 229 (D.N.J. 2005) (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F.Supp. 450, 507 (D.N.J. 1997) *aff'd sub nom. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283 (3d Cir. 1998) (hereinafter "*Prudential I*"). Joinder of a class that numbers in the hundreds will normally be found impracticable, although the numerosity requirement is usually satisfied with much smaller classes. *See Prudential I,* 962 F.Supp. at 510 (citing 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.05, at 3-25).

Here, Plaintiff argues that joinder of all Class Members is impracticable because "11.9 million rental transactions" that "involved a frequent-flyer surcharge" occurred through Defendants' website between January 2005 and August 2011. (Pl. Br. 7-8) (citing Docket #146-16.) This amount of rental transactions is sufficiently high to make joinder of all the class members difficult or impractical. *See Prudential I,* 962 F.Supp. at 510. Defendants have not presented evidence showing otherwise. Thus, this Court finds that the numerosity requirement of Fed. R. Civ. P. 23(a)(1) is satisfied.

## 2. Commonality and Predominance

It is customary in Rule 23(b)(3) class actions for courts to jointly apply the Rule 23(a)(2) commonality requirement and the Rule 23(b)(3) predominance test. *See Varacallo,* 226 F.R.D. at 230. The Third Circuit has approved this approach. *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 528 (3d Cir. 2004) ("[T]he Rule 23(b)(3) predominance requirement, which is far more demanding, incorporates the Rule 23(a) commonality requirement.... Accordingly, we analyze the two factors together . . . ." (citations omitted)); *Amchem Prods.,* 83 F.3d at 626.

Under Rule 23(a)(2), commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Not all claims or facts have to be common to all class members; "the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Prudential I,* 148 F.3d at 310; *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994).

However, for a class that is certified under Rule 23(b)(3), which the Plaintiffs are here seeking, the Court must also find that these common questions predominate over individual issues. *Prudential I,* 962 F.Supp. at 510-11. "To assess predominance, a court at the certification stage must examine each element of a legal claim 'through the prism' of Rule 23(b)(3)." *Marcus,* 687 at 600 (quoting *In re DVI, Inc. Sec. Litig.,* 639 F.3d 623, 630 (3d Cir. 2011)). A plaintiff must "demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Id.* (quoting *Hydrogen Peroxide,* 552 F.3d at 311). "In cases where it is alleged that the defendant . . . engaged in a common course of conduct, courts have found that conduct to satisfy the commonality and predominance requirements." *Varacallo,* 226 F.R.D. at 231. In addition, the need to calculate "damages on an individual basis should not preclude class [certification] when the common issues which determine liability predominate." *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 137 (3d Cir. 2000); *see also Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir. 1977).

Defendants do not contest that the commonality requirement is satisfied. Instead, they argue that Plaintiff does not satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) for neither the NJCFA claim nor the common law breach of contract and breach of duty of good faith and fair dealing claims. (Def. Br. 22.)

    i.   Predominance of Plaintiff's NJCFA claim

To establish a cause of action under the NJCFA, a plaintiff must show: (a) an unlawful conduct by the defendant; (b) that the plaintiff suffered an ascertainable loss; and, (c) a causal connection between defendant's unlawful conduct and plaintiff's ascertainable loss. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merk & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007) (quoting N.J.S.A.§56:8-2).

Here, Plaintiff argues that Defendants engaged in two different types of unlawful conduct: intentional omissions and unconscionable commercial practices. (Compl. at ¶¶61-62; Pl. Br. 15-16.) According to Plaintiff, Defendants knowingly omitted the fact that Avis charged $0.75 a day for participating in its Program "by both failing to include [this fact] in a place where Plaintiff and other reasonable renters would expect to see them and by instead (to the extent that any disclosure was made at all) hiding these facts in obscure places with the intention that neither Plaintiff nor other reasonable renters ever see them[.]" (Compl. at ¶61.) The unconscionable commercial practices alleged by Plaintiff are premised on this omission. (Docket #57, fn 3.)

Plaintiff argues that the class will be able to prove the unlawful conduct element with common evidence because Defendants' actions were uniform as to all members of the class. (Pl. Br. 15-16.) This Court is satisfied that Plaintiff will be able to prove this element using common evidence given the fact that Avis entered into a standard form contract with millions of customers over the class period and that the surcharge information was presented in similar manner to most Avis customers for that period.

Regarding the ascertainable loss element, Plaintiff argues that "class members need merely show the amount of the surcharge they paid to Defendants, which is easily discernable from Defendants' transaction data." (Pl. Br. 18.) This Court agrees. An ascertainable loss is "either out-of-pocket loss or a demonstration of loss in value . . . that it is quantifiable or measurable."

*Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005). Here, the ascertainable loss is the amount paid in surcharges for participation in the Program, which is easily quantifiable and measurable.

Finally, Plaintiff argues that the class can prove the causality element of the NJCFA claim with common evidence. The determination of whether common questions predominate over individual ones regarding this final element depends on the type of unlawful conduct alleged by the plaintiff. When the alleged unlawful conduct is a "knowing omission," a court must find:

> [E]ither (1) that the alleged [omissions] were not knowable to a significant number of potential class members before they purchased . . . [the product], or (2) that, even if the [omissions] were knowable, that class members were nonetheless relatively uniform in their decision-making, which would indicate that, at most, only an insignificant number of class members actually knew of the alleged [omissions] and purchased . . . [the product] at the price they did anyway. These finding cannot be side-stepped. They are necessary to determine whether the predominance requirement is met in this case.

*Marcus*, 687 F.3d at 610.[3]

With respect to the first *Marcus* prong, Defendants argue that Plaintiff fails to meet the predominance requirement because the information regarding the $0.75 surcharge was knowable. (Def. Br. 15.) They attempt to demonstrate this by presenting several ways in which the surcharge was disclosed and arguing that a significant number of customers knew about the surcharge given the aggregate sources of information. This is unpersuasive, especially considering that all of the rentals in question were done exclusively through Avis's website. At the same time, Defendants do not present expert opinion to establish that the surcharge was knowable. Instead, Defendants' expert only addresses the "knowability" prong by questioning the reliability of Plaintiff's expert's

---

[3] Because this Court has previously held that Plaintiff properly pleaded an unconscionable commercial practice under the NJCFA "[t]o the extent that Avis's alleged unconscionable conduct [was] premised on alleged omissions," (Docket No. 57, fn 3), this Court will apply the *Marcus* Court's "knowability" requirement to both unlawful practices alleged by Plaintiff.

testimony. Given the evidence presented by the parties, including their experts' testimonies, this Court concludes that the information about the surcharge was "not knowable to a significant number of potential class members[.]" *Marcus*, 687 F.3d at 610.

Avis did not suitably disclose the surcharge on their webpage from 2005 to June 2012, when the class period ends. Though Defendants claim that "Preferred Customers were always able to see that a $0.75-per-rental-day surcharge would be assessed if they opted to obtain frequent flyer miles[]" because they provided different links to this information throughout the car rental process, the links they describe were not conspicuously presented to customers. (Def. Br. 7-8, fn 6.) From 2005 to January 2009, the surcharge was disclosed through a web link "that appeared on the bottom of the web page on which members of Avis's Preferred Service Program . . . would enter their profile information, information regarding their membership in any relevant frequent travel programs, and their travel preferences." (Docket #146-9, 4.) According to Plaintiff's expert, Dr. Morwitz, it would have been unlikely for a customer to have noticed this link at the bottom of that page. (Docket #146-15, 12.) In support, she points to the January 2009 data of webpage visits for Avis.com, which shows that out of 2,272,074 unique visitors to the site, only 165 people clicked on the link that provided the surcharge information. (*Id.* at 13.) The expert states that this sample, although small, is indicative of the web traffic since 2005. (*Id.*) She based this opinion on "both the data on webpage viewership for the end of this time period, data for the later time period, and the consistency of these data across time, as well as on academic literature[.]" (*Id.* at 13-14.)

Dr. Morwitz also points out that the link was presented "far from webpages where Avis list[ed] other rental-car-cost information[.]" (*Id.* at 13.) Because of this, she describes the surcharge information as a "shrouded attribute," or "information that firms hide or obfuscate from their customers." (*Id.* at 12.) She supports this statement with studies about how consumers have

18

incomplete pricing information when companies "make finding price information complicated, difficult, or confusing." (*Id.*)

From January 2009 to May 2012, Avis moved the link that disclosed the surcharge to "a webpage originating under the major heading 'Cars and Services.'" (*Id.* at 17.) In order to locate the link, a customer would have had to click on "Cars and Services," then "Miles & Points/Partners," then "Airlines," and then choose an airline. (Id.) Once the airline was chosen, a link entitled "Click here for Frequent Traveler Tax/Surcharge Information" was located near the bottom of the page. (Docket #146-9, 5.) Dr. Morwitz considers this another example of "shrouded attribute." She explains that in order to find the link during this period, a customer would have had to start the search for this information under the tab labeled "Cars and Services," a title which is "reasonably unrelated to Avis's surcharge." (Docket #146-15, 17-18.) She explains that during this period "virtually no consumers viewed Avis's frequent-flyer surcharge information." (*Id.* at 18.) She also argues that even if a customer reached the page with the surcharge disclosure link, the title of that link, "Frequent Traveler Tax," is confusing and would not lead people to think that it discloses a surcharge for frequent flyer miles. (*Id.*) She supports this argument with academic literature that explains how people interpret a cost labeled as a "tax" rather than a "surcharge." (*Id.* at 19-20.)

Finally, for the period between May 2012 and June 2012, Defendants moved the link disclosing the surcharge to the page for "step 4 of the online reservation process." (Docket #146-9, 7.) The link was titled "Help?" and was located in the section of the page where customers could enter their flight information. (*Id.*) If customers clicked on the "Help?" link, they would be sent to a different page with a link titled "Frequent-Flyer Tax Recovery/Surcharge." (*Id.*) Dr. Morwitz

again explains that virtually no customers clicked on this link during this period. (Docket #146-15, 21.) Her analysis for this period is similar to the analysis of the periods explained above.

Defendants' expert, Dr. Dhar, criticizes this analysis because Dr. Morwitz does not use "empirical analysis" to reach her conclusions. (Docket #147-5, 3.) However, Dr. Dhar does not present his own empirical data as a counterargument. Instead, he points to different sources from which a customer might have gotten notice of the surcharge. He concludes, without support, that "it is likely that individual renters would have differed as to their awareness of the surcharge depending upon their attention to these sources." (*Id.* at 8.) Dr. Dhar also points out that Dr. Morwitz did not consider the changes made to the surcharge disclosure in February 2013. (*Id.* at 7.) He argues that "[t]his is significant in light of the large number of members of the putative class who visited the Avis website after February 2013 and likely had knowledge of the surcharges based on the online rental reservation process on the website alone." (*Id.*) This criticism, however, is irrelevant because the class period ends in 2012.

Dr. Dhar also suggests that Dr. Morwitz's conclusion is flawed because she does not take into account whether the customers that visited the Avis website did not click on the surcharge disclosure links because they had previously discovered said surcharge. (*Id.* at 8.) However, Dr. Morwitz does consider this. As explained above, she considers how few people clicked on the link for a period of time, and took into account the consistency of the data throughout that time. She also relies on studies that show that "the more often a consumer visits the same website, the less time this consumer spends on that website." (Docket #146-15, 12.) Based on this, Dr. Morwitz concluded that repeat renters were less likely to deviate from the pages that they needed to visit in order to make a car rental. (*Id.* at 15-16.)

Given Dr. Morwitz's expert analysis, this Court concludes that the surcharge information was not knowable. Though Defendants argue otherwise by pointing to sources other than the Avis website through which customers could have discovered the surcharge, this Court finds this unpersuasive. The rental documents did not disclose the surcharge to Plaintiff before he finalized the car rental online because they were given to him when he picked up his car and once he returned it. Moreover, the surcharge was listed in these documents under the code "FTP SUR" and "FTP-SR." Similarly, the e-Receipt was sent to Plaintiff after the car was returned.

Additionally, Defendants point to print ads as a source of disclosure. However, these ads mention the surcharge in the fine print. Moreover, Defendants do not present any evidence regarding where these ads were published or the rate of circulation. They also argue that members of the putative class could have discovered the surcharge by visiting their Travel partners' webpages. Yet, Defendants acknowledge that these pages stated that a surcharge "may" apply, not "will apply."

Finally, Defendants argue that Plaintiff should have known about the surcharge because charging for frequent-flyer miles is common knowledge. Plaintiff's expert concludes that "consumers do not need to pay a fee to obtain frequent-flyer miles from the airlines themselves." (Docket #146-15, 29.) Dr. Morwitz based this opinion on different airlines' data of the total of frequent flyer miles that were earned and redeemed by their customers "(1) from their own flights; (2) from flights on their partner airlines; and (3) through rental-car companies, hotels, credit cards, miles sold to customers, and other means." (*Id.*) With this information, she concluded that for the period between 2005 and 2012, over 91% of the frequent-flyer miles made available by airlines were earned "for no additional cost." (*Id.* at 31.) Defendants' expert, Dr. Dhar, attempts to rebut this claim by pointing out that most credit card companies that offer miles charge a fee and that

other car rental companies charge similar surcharges. (Docket #147-5, 4.) However, Defendants' evidence, in light of Dr. Morwitz's expert testimony, does not show that "charging for frequent-flyer miles is common knowledge."

Because this Court finds that the surcharge was not knowable, it is unnecessary to consider the second prong of the *Marcus* test.

ii.   Predominance of the common law claims

To state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Moreover, "[t]he party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005) (relying on 23 Williston on Contracts §§ 63:22 (Lord ed. 2002); *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121 (N.J. 2001); and *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997)). "[B]ad faith normally connotes an ulterior motive or sinister purpose." *McPherson v. Employees' Pension Plan of Am. Re-Insurance Co.*, 33 F.3d 253, 256-257 (3d Cir. 1994). "A plaintiff may be entitled to relief under the covenant if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *Brunswick Hills Racquet Club*, 864 A.2d at 396 (quoting *Wilson*, 773 A.2d at 1130).

Plaintiff argues that these common law contract claims can be proven with common evidence because they arise out of a uniform contract. (Pl. Br. 11.) ("[W]here the contract at issue is uniform to all class members, courts often find that common issues predominate."). Here, the

terms of the contract between Plaintiff and Defendants are substantially similar to those entered between the putative class members and Defendants. (*See* Docket #146-12; 146-13; 146-14; 146-15.) Moreover, Defendants' behavior is uniform for all members of the putative class. Whether Defendants charged a hidden surcharge for frequent-flyer miles is a question that will be answered equally for all members of the class. Similarly, whether the class members performed their own contractual obligations can be answered with common evidence by looking at Defendants' rental records. Because Plaintiff's claim for breach of the covenant of good faith and fair dealing arises out of his breach of contract claim, the putative class will be able to prove this claim with the same common evidence.

Defendants argue that Plaintiff fails to establish the predominance requirement for these claims because each member of the class "would have to show that he/she has the injury-in-fact that would prove the causation and damages required for the contract-related claims alleged here." (Def. Br. 22.) This Court disagrees. Defendants seem to recast the jurisdictional challenge they asserted in their motion for summary judgment as a reason to deny class certification. This Court has already dismissed this argument. *See Schwartz v. Avis Rent a Car Sys., LLC,* No. 11-4052, 2014 WL 3866476 (D.N.J. Aug. 6, 2014).

**3. Superiority**

In addition to predominance, Rule 23(b)(3) requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In making its superiority determination, the Court will consider four nonexclusive factors:

> (1) the interest of individual members of the class in individually controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in

a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action.

*See* Fed. R .Civ. P. 23(b)(3); *Prudential I,* 962 F.Supp. at 522. Considering these factors, this Court concludes that a class action is the superior form of adjudication.

Regarding the first factor, Plaintiff argues that "a class action is the only economically feasible way for a class members to recover their damages from Defendants[]" because the individual damages are "small multiples of $0.75." (Pl. Br. 26.) This Court agrees. The cost of prosecuting these claims individually will outweigh the financial benefit any one plaintiff would gain if successful at trail. As such, "the interest of most class members in conducting separate lawsuits" is not sufficiently "strong as to require denial of class certification." *Prudential I,* 962 F.Supp. at 523.

The second and third factors, though not addressed by either party, do not weigh against class certification. As far as this Court is aware, there is no litigation commenced elsewhere by class members. Moreover, there is no evidence showing that a different forum has a greater interest in this action. Instead, New Jersey has a strong interest in resolving suits arising under New Jersey laws.

With respect to the fourth factor, management difficulties "encompass[] the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164 (1974). "The Court must query not whether there will be any manageability problems, but whether reasonably foreseeable difficulties render some other method of adjudication superior to class certification." *Prudential I,* 962 F.Supp. at 524-25; Newberg on Class Actions § 4:72 ("[T]he question that courts consider when they analyze manageability is not whether a class action is manageable in the abstract but how the problems that might occur in managing a class suit compare to the problems that would occur in managing

litigation without a class suit."). Since challenges to the manageability prong of the superiority requirement often arise when a case involves many individual issues, "the manageability concern often simply echoes the predominance analysis[;] [t]herefore, courts generally hold that if the predominance requirement is met, then the manageability requirement is met as well." Newberg on Class Actions § 4:72; *Prudential I,* 962 F.Supp. at 525 (finding that plaintiffs alleged "both the existence and predominance of common issues and demonstrate[d] the superiority of aggregate adjudication" because plaintiffs established that "they could offer classwide evidence with respect to both liability and damages[.]").

Defendants argue that adjudicating this suit as a class action will present management difficulties because "the issues that would have to be decided here are individual, not common ones, and are not susceptible of class-wide proof." (Def. Br. 23) (internal quotations omitted). They contend that Plaintiff's trial plan reflects these management difficulties. According to Defendants, the first-stage of the trial plan, which focuses on Defendants' liability, improperly focuses "solely on Avis's conduct, which directly conflicts with Third Circuit teaching." (*Id.* at 24) (citing *Marcus,* 687 F.3d at 607). They further argue that the second and third stage improperly relies on an "'aggregate' or 'class-wide' damages model as a proxy for proving the 'harm' element of class members' claims" in lieu of determining whether each class member has a valid claim. (*Id.* at 25.)

This is insufficient to show that managing this case as a class action is not the superior method of adjudication. As explained above, Defendants' first argument is without merit because their reliance on *Marcus* is misplaced. The Third Circuit in *Marcus* did not reject the District Court's conclusion that "a causal relationship between an alleged unlawful practice and a consumer's ascertainable loss may be presumed... when a defendant is alleged to have omitted . . . material information . . . and when a defendant's marketing statements do not differ from one

consumer to another[.]"*Marcus*, 687 f.3d at 607. Rather, the Circuit Court explained that the District Court failed to make the necessary findings of fact to justify this conclusion. *Id.* It reasoned that "before applying a 'presumption of causation' to an NJCFA claim, a court must consider not only the defendants' course of conduct, but also that of the plaintiffs[,] [s]pecifically . . . whether plaintiffs could have known the truth underlying the defendant's fraud." *Id.* Unlike the district court in *Marcus*, this Court held that Defendants' "knowing omission" was not knowable. As such, individual issues related to causation do not predominate over common ones.

Defendants' interpretation of the second and third stages of the trial plan is also misplaced. Plaintiff is not attempting to prove harm by using an "aggregate" or "class-wide" damages model. Instead, he is proposing to calculate damages by using Defendants' data on how many people paid the $0.75 surcharge per day.

Moreover, both of Defendants' arguments fail to consider the difficulties of trying this dispute without a class action. As mentioned above, it would be very difficult for each plaintiff to litigate his or her dispute with Avis individually because the recoverable amount of damages are likely marginal. Accordingly, this Court finds that Plaintiff has satisfied the predominance requirement of Rule 23.

## 4. Typicality

Rule 23 also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Tel. Co. v.. EEOC,* 446 U.S. 318, 330 (1980). "Typicality lies where there is a strong similarity of legal theories or where the claims of the class representatives and the class members arise from the same alleged course of conduct by the defendant." *Prudential I,* 962 F.Supp. at 518 (citations omitted).

In addition, "factual differences between the claims of the putative class members do not defeat certification." *Prudential II,* 148 F.3d at 311 (quoting *Baby Neal,* 43 F.3d at 56).

Here, Plaintiff has shown that the legal and factual issues that he asserts in his claims are very similar to those of the class. However, Defendants argue that "Plaintiff's claims are not typical of those of the class he purports to represent" because Plaintiff did not suffer an injury-in-fact and, therefore, does not have Article III standing. (Def. Br. 27-28.) Again, this Court has already held that Plaintiff did suffer an injury-in-fact when it denied Defendants' motion for summary judgment. *See Schwartz,* No. 11-4052, 2014 WL 3866476. As such, Defendants' argument is unpersuasive.

## 5. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts look at two factors: "(1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class." *Prudential I,* 962 F.Supp. at 519. A party challenging the Class' representation has the burden to prove that the representation is not adequate. *Id.; Varacallo,* 226 F.R.D. at 233.

Defendants neither question Plaintiff's attorneys' qualifications nor argue that Plaintiff's interests are antagonistic to those of the class. Instead, they suggest that Plaintiff and his counsel "may not" satisfy the adequacy requirement because it is unclear how Plaintiff learned that he was charged for the frequent flyer miles. (Def. Br. 29.) They imply that Plaintiff's counsel told Plaintiff about his possible claim against Avis. (*Id.*) However, Defendants do not offer any evidence in support of this claim. As such, they fail to prove that the representation is not adequate.

IV.      **CONCLUSION**

Based on the reasons set forth above, Defendants' motion to exclude Plaintiff's expert testimony [CM/ECF No. 149] is denied.   Plaintiff's motion to certify [CM/ECF No. 146.] is granted.

An appropriate Order accompanies this Opinion.

Jose L. Linares
United States District Judge

Dated: August 28, 2014