## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD SCHWARTZ, on behalf of himself and others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>AVIS RENT A CAR SYSTEM, LLC, and AVIS BUDGET GROUP, INC.,<br><br>*Defendants.* | Civil Action No. 11-4052 (JLL) (JAD) |
| DANIEL KLEIN and STEPHANIE KLEIN, on behalf of themselves and others similarly situated,<br><br>*Plaintiffs,*<br><br>vs.<br><br>BUDGET RENT A CAR SYSTEM, INC. and AVIS BUDGET GROUP, INC.,<br><br>*Defendants.* | Civil Action No. 12-7300 (JLL) (JAD) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FOR INCENTIVE AWARDS TO NAMED PLAINTIFFS, AND FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com
*Attorneys for Plaintiffs and the Classes*
[Additional Counsel on Signature Page]

594509.1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................. 1

II. Factual and procedural background..................................................... 2

    A.  Litigation history of the cases dates back five years ............................... 2

    B.  The Settlement Agreement resolves all claims with a substantial benefit to the nationwide classes ............................................. 3

    C.  Defendants are paying for the best notice practicable ............................ 5

III. ARGUMENT................................................................... 6

    A.  This Court should finally certify the Settlement Classes ........................ 6

        1.  Rule 23(a)(1): Numerosity is satisfied .......................................... 6

        2.  Rule 23(a)(2): Common questions of law and fact abound ........... 7

        3.  Rule 23(a)(3): Plaintiffs' claims are typical of the Classes' claims 7

        4.  Rule 23(a)(4): Plaintiffs and Class Counsel fairly and adequately represent the interests of the Settlement Classes ........ 7

        5.  The proposed Settlement Class satisfies Rule 23(b)(3) ................ 8

            a.  Common questions of law and fact predominate based on Defendants' frequent-flyer-miles conduct.................... 10

            b.  A class action is superior to other methods of adjudication ....................................................... 10

    B.  Notice was appropriate since it complied with this Court's Order, and the distribution plan should be approved ............................... 11

C.    The Court should grant final approval of the settlements, as they are fair, reasonable, and adequate ................................................................ 12

    1.    Girsh #1: The significant complexity, expense, and duration of the litigation weigh in favor of approving settlement.............. 14

    2.    Girsh #2: The Settlement Class's reaction favors settlement ...... 15

        a.    The parties' settlement release concerns solely FTP Surcharge-related claims, which are the precise claims that Plaintiff pleaded in his complaint and that Mrs. Payne pleads in hers ......................................................... 15

        b.    The law does not require the parties' Notice to describe Mrs. Payne's later-filed, undeveloped, and overlapping complaint .......................................................... 16

        c.    Subclassing is necessary only where divergent interests exist among class members .............................................. 22

    3.    Girsh #3: At settlement, the case was advanced through fact and expert discovery .................................................................... 27

    4.    Girsh #4, #5, and #6: There was difficulty and risk to establishing liability and damages and to maintaining the class action through trial ............................................................ 28

    5.    Girsh #7: Defendants do not lack the ability to withstand a greater judgment ......................................................................... 29

    6.    Girsh #8 and #9: The settlement's range was reasonable in light of the best possible recovery and attendant risks of litigation ................................................................................. 30

    7.    The settlement satisfies the Prudential factors ............................. 30

IV.    CONCLUSION ................................................................................. 34

594509.1

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                                                             **<u>Page(s)</u>**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................ 10

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304, *aff'd*, 148 F.3d 283 (3d Cir. 1998) ............................................... 22

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
    543 F.3d 141 (3d Cir. 2008) ...........................................................................7-8

*Davis v. J.P. Morgan Chase & Co.*,
    775 F. Supp. 2d 601 (W.D.N.Y. 2011)............................................................ 25

*Fradette v. American Services Corp.*,
    No. 76-6373-Civ-CA, 1979 WL 1756 (S.D. Fla. Aug. 29, 1979)..................... 26

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .....................................................................*passim*

*Glauberzon v. Pella Corp.*,
    No. 10–5929, 2011 WL 1337509 (D.N.J. April 7, 2011) .................................. 27

*Graff v. United Collection Bureau, Inc.*,
    No. 12–CV–2402, 2016 WL 74092 (E.D.N.Y. Jan. 6, 2016) .............. 19, 20, 21

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) ........................................................................... 31

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ............................................................... 14, 15, 28

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir.1981) ........................................................................... 22

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .............................................................................8-9

594509.1

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) ................................................................ 10, 27, 28

*In re National Football League Players Concussion Injury Litig.*,
    No. 15–2206, 2016 WL 1552205, (3d Cir. Apr. 18, 2016) ....................... *passim*

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) ................................................................... *passim*

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    261 F.3d 355 (3d Cir. 2001) ........................................................................ 16

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ........................................................... 22, 23, 29

*In re Subway Footlong Sandwich Mktg. and Sales Practices Litig.*,
    MDL No. 13-02439, 2016 WL 755640 (E.D. Wisc. Feb. 25, 2016) ............... 32

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................... *passim*

*Johnston v. HBO Film Mgmt., Inc.*,
    265 F.3d 178 (3d Cir. 2001) ......................................................................... 8

*Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ............................................................................. 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................. 12, 26

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ......................................................................... 8

*Rodriguez v. National City Bank*,
    726 F.3d 372 (3d Cir. 2013) ......................................................................... 7

*Rossi* v. *Proctor & Gamble Co.*,
    No. 11-723, 2013 WL 5523098 (D.N.J. Oct. 03, 2013) ........................... *passim*

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ................................................................... 16, 30

iv

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) .......................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ............................................................................... 25

*Weber v. Government Empl. Ins. Co.*,
262 F.R.D. 431 (D.N.J. 2009) .......................................................................... 30

*Zimmerman v. Zwicker & Associates, P.C.*,
No. 09–3905, 2011 WL 65912 (D.N.J. Jan. 10, 2011)................................ 19, 21

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*,
758 F.2d 86 (3d Cir. 1985) ............................................................................... 26

v

## I.      INTRODUCTION

This Court has preliminarily approved settlements with defendants in *Schwartz v. Avis* and *Klein v. Budget* that offer a choice of cash or discounts on future rentals. In *Schwartz*, the settlement (if everyone chooses discounts) has a value of $10,924,556, and if every class member opts for cash, a value of $4,126,135.  In *Klein*, if everyone selects discounts, the settlement value is $2,853,525, while the cash value is $1,195,782.  This settlement's injunctive relief component increases the value because Defendants will cease the practices that Plaintiffs challenged by changing their websites to disclose the frequent-flyer mile charges.

The settlements resulted from protracted arm's-length negotiations by experienced counsel committed to the interests of their respective clients after many years of hotly contested litigation (since 2011 for *Schwartz* and 2012 for *Klein*).  The settlements occurred after counsel fully understood the strengths and weaknesses of the case from their independent investigations, collective experience litigating similar class actions, various briefings, and this Court's multiple decisions, which include partial denials of motions to dismiss in *Schwartz* and *Klein*, denial of defense motions for summary judgment and to exclude plaintiff's expert in *Schwartz* , the certification of a nationwide class in *Schwartz*, and the Third Circuit's denial of a Rule 23(f) petition as to that class certification.

The settlements provide immediate and significant benefits to Settlement Class Members and remove the risks associated with continued litigation.  Further, the proposed Settlement Classes satisfy the requirements of Rule 23, as this Court previously concluded when it preliminarily approved them.

Finally, the parties have issued notice according to this Court's January 22, 2016 Order.  The form and method to issue notice satisfy Rule 23, due process, and provide the best notice practicable under the circumstances.

Plaintiffs respectfully ask this Court to 1) grant final approval of the settlements, 2) certify the Settlement Classes as final, 3) approve the distribution plan, and 4) find that the notice meets the requirements of Rule 23 and due process.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Litigation history of the cases dates back five years.

In July 2011, Mr. Schwartz filed his case, alleging that Avis misrepresented and intentionally concealed charges from its customers who rented vehicles online through Avis's website and accepted Avis's offer of frequent-flyer miles in connection with those rentals.  Plaintiff claimed Avis breached its contract with its renters nationwide and that Avis violated New Jersey's Consumer Fraud Act.

In August 2014, this Court denied Avis's motion for summary judgment.  ECF Nos. 151, 152.  After this Court certified a nationwide class on all claims, ECF Nos. 157, 158, the Third Circuit denied Defendants' Rule 23(f) petition.

594509.1

Multiple depositions occurred.  Plaintiff subpoenaed every major U.S. airline and Defendant's web-tracking data company.  The Court conducted multiple conferences regarding discovery disputes.  The matter included extensive expert discovery, involving behavioral sciences.

In November 2012, the Kleins sought a nationwide class of renters against Budget for breach of contract and violation of New Jersey's Consumer Fraud Act.  After this Court denied Defendant's motion to dismiss in part, and the parties did some paper discovery, they agreed to stay the case until this Court resolved class certification in *Schwartz*.  ECF No. 49.  The Court ordered an administrative dismissal in January 2015.  ECF No. 50.

**B.    The Settlement Agreement resolves all claims with a substantial benefit to the nationwide classes.**

In February 2016, this Court preliminarily approved the settlement and notice program, ECF No. 180, and preliminarily certified two Settlement Classes:

> *Schwartz*: All Persons who, at any time from July 14, 2005 through June 14, 2012, were members of the Avis Preferred Service Program, rented a vehicle in the United States through www.avis.com, and paid a Frequent Traveler Program Surcharge (an "FTP Surcharge") for receiving frequent-flyer miles from any of Avis's travel partners. Settlement Agreement at 3, ¶ 2(f).

> *Klein*: All Persons who, at any time from November 27, 2006 through February 17, 2013, were members of the Budget Rapid Rez with Fastbreak Program, rented a vehicle in this Court United States through www.budget.com, and paid an FTP Surcharge for receiving frequent-flyer miles from any of Budget's travel partners.

3

*Id.* at 3–4, ¶ 2(g).[1]

The settlement provides substantial benefits to nationwide classes. It offers all Class Members a choice of cash or discounts on vehicle renters, and it ends Defendants' allegedly deceptive practices.

If all *Schwartz* Class Members chose the discounts, the settlement's total worth, according to Defendants' calculations, would be $10,924,556. That sum is more than what Defendants asserted would be the Class's maximum single damages. If every Class Member chose cash, Defendants peg the value of this settlement at $4,126,135, an extraordinary 50% recovery.

If all *Klein* Class Members chose the discounts, the total value is $2,853,525; if everyone opted for cash, the settlement value is $1,195,782. The parties negotiated and arrived at these amounts after thoroughly weighing the strengths and weaknesses of their positions, evaluating the economic harm allegedly inflicted, and Defendants' financial condition.

The settlements also include injunctive relief, requiring Defendants to cease the challenged practices changing their websites to disclose any charge for frequent-flyer miles to their customers more thoroughly and completely.

_____

[1] The *Schwartz* and *Klein* Classes exclude "(i) the Released Parties (as defined in the Settlement Agreement), and their respective officers, directors, employees, and counsel, (ii) Plaintiffs' counsel, and (iii) any federal judges or members of their families within the first degree of consanguinity."

4

Finally, Defendants have agreed to pay, and do not object to, Class Counsels' attorneys' fees and expenses of no more than $3,050,000. Settlement Agreement at § 12. Defendants will pay those fees and expenses separate from the class relief, *id.* at § 12(e), so those payments will not reduce the Class's recovery by one cent.

In exchange for these benefits, the Agreement resolves all claims against Defendants. The Agreement's release does not include any conduct or right of action unrelated to the released claims or any claims outside the Class Periods.

The Court has set the Fairness Hearing for May 25, 2016.

### C.     Defendants are paying for the best notice practicable.

Defendants—not the Class—will pay for a robust notice and administration plan. Settlement Agreement at § 3. This Court found the proposed notice program to be "the best notice practicable to the Settlement Classes under the circumstances." ECF No. 180 at 8, ¶ 10.

As stated in the accompanying Declaration of Lori L. Castaneda of Garden City Group, LLC, the Court-appointed Claims Administrator, the Administrator provided notice to the classes by e-mail, or, if no e-mail address was available, by U.S first-class mail. Settlement Agreement at § 3(c). The Administrator also created a website and a toll-free line providing Class Members with case and Settlement information. *Id.* at § 3(a).

Class Members can claim cash or discounts through a simplified claim form that can be completed and submitted electronically to the Administrator. Class

5

Members can also file a claim by regular mail.  Avis will pay all notice costs, which is in addition to—not deducted from—the settlement.  *Id.* at § 3(d).  Consistent with Rules 23(c) and (e), all Class Members were provided a reasonable opportunity to object to or to exclude themselves from the Settlement.  *Id.* at §§ 8, 10.  In exchange, Defendants receive a release for claims that relate to the subject matter of these lawsuits by Plaintiffs and Class Members who do not opt out.  *Id.* at § 13.

## III.   ARGUMENT

### A.   This Court should finally certify the Settlement Classes.[2]

#### 1.   Rule 23(a)(1): Numerosity is satisfied.

Rule 23(a)(1) "requires that a class be so numerous that joinder of all members is impracticable." In the Third Circuit, "[t]here is no magic number of class members needed for a suit to proceed as a class action." *In re National Football League Players Concussion Injury Litig.*, No. 15–2206, 2016 WL 1552205, *7 (3d Cir. Apr. 18, 2016).  A "rough guidepost" is anything "more than 40 class members." *Id.* (other citations omitted).  Nearly 11.9 million rental transactions involved a frequent-flyer surcharge, ECF No. 157 at 14, and, to date, the Administrator has received over 51,000 claims.

---

[2] The Parties agree that certification of the Settlement Class in *Klein* pursuant to this motion is for purposes of settlement only, and not for purposes of liability. Specifically, Defendants do not agree that *Klein* would be appropriate for certification of a liability class if for any reason the Settlement is not approved.

594509.1

### 2.    Rule 23(a)(2): Common questions of law and fact abound.

Both Classes share common questions of fact and law.  "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *NFL,* 2016 WL 1552205 at *7 (quoting *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)).

Here, critical factual and legal questions common to the Class members exist, such as whether Defendants breached their contracts with renters, whether Defendants violated New Jersey's Consumer Fraud Act, and whether Plaintiffs and Class Members are entitled to injunctive relief.  Even when opposing certification of the litigation class, Defendants did not contest commonality.  ECF No. 157 at 15.  Just as when this Court certified a litigation class in *Schwartz*, commonality is satisfied for these final Settlement Classes.

### 3.    Rule 23(a)(3): Plaintiffs' claims are typical of the Classes' claims.

"Rule 23(a)(3) requires that the class representatives' claims be 'typical of the claims . . . of the class.'" *NFL,* 2016 WL 1552205 at *8 (quoting Fed. R. Civ. P. 23(a)(3)).  This "inquiry 'assesses whether the named plaintiffs have incentives that align with those of absent class members so that the absentees' interest will be fairly represented.'" *Rossi* v. *Procter & Gamble Co.*, No. 11-723, 2013 WL 5523098, *2 (D.N.J. Oct. 03, 2013) (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d

7

141, 149–50 (3d Cir. 2008).  It "ensure[s] that the interests of the class representatives do not diverge from those of the class as a whole."  *Id.* at *2 (quoting *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 57–58 (3d Cir. 1994)).  Because "[t]ypicality does not . . . require that all class members share identical claims[,]" *Rossi*, 2013 WL 5523098 at *2 (citing *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)), the Third Circuit has "set a 'low threshold' for typicality."  *NFL,* 2016 WL 1552205 at *8 (citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001)).

Plaintiffs seek recovery under the same legal theories as Class members.  Both cases arise out of the same alleged conduct of charging for frequent-flyer miles without revealing them to their customers.  The Court found that *Schwartz* satisfied this requirement, ECF No. 157 at 26-27, and Plaintiffs would make the same argument as to *Klein*.

### 4.   Rule 23(a)(4): Plaintiffs and Class Counsel fairly and adequately represent the interests of the Settlement Classes.

This requirement "tests the qualifications of class counsel and the class representatives."  *NFL,* 2016 WL 1552205 at *9.  This inquiry basically "has two components intended to assure that the absentees' interests are fully pursued: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class.'" *Rossi*, 2013 WL 5523098 at *2 (quoting *In re General Motors Corp. Pick-Up Truck Fuel*

8

*Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995)).  This test "aims to root out conflicts of interest within the class to ensure that all class members are fairly represented in the negotiations."  *NFL,* 2016 WL 1552205 at *9.

Plaintiffs' interests are not antagonistic to those of Class Members.  Like all Class Members, Plaintiffs' claims arise out of Defendants' alleged actions to conceal the frequent-flyer surcharges from them.  In certifying *Schwartz*, this Court found, over Defendants' objection, Schwartz to be adequate, as he rented from Avis and sustained injury from Avis's alleged CFA violations and breach of contract.  ECF No. 157 at 27.  The same is true for the Kleins against Budget, as they rented from Budget and were charged for frequent-flyer miles.  Plaintiffs have ample incentive to represent their respective classes, and they have the same claims based on the same facts as the Class members.

At class certification and preliminary approval, this Court also concluded that Class Counsel were adequate.  ECF No. 157 at 27.[3]  No objection has been made concerning the qualifications and capabilities of Class Counsel.

Class Counsel have invested considerable time and resources in this case, including investigation, researching, and drafting the complaints; responding to multiple motions to dismiss; taking and defending significant discovery (including depositions and experts); defending Defendants' summary judgment and *Daubert*

---

[3] Plaintiffs attached firm resumes to their unopposed Motion for Preliminary Approval of Class Action Settlement.  *See* ECF 179-2, Greenberg Declaration.

motions; winning certification of a nationwide class; defeating Defendants' Rule 23(f) petition; and engaging in difficult settlement negotiations, including preparing a Settlement Agreement and notice-and-claims program.

<h3 style="text-align:center">5.      The proposed Settlement Class satisfies Rule 23(b)(3).</h3>

<h4 style="text-align:center">a.      Common questions of law and fact predominate based on Defendants' frequent-flyer-miles conduct.</h4>

"[T]he class may be maintained if 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *NFL,* 2016 WL 1552205 at *14 (quoting Fed. R. Civ .P. 23(b)(3)). It "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance requirement, albeit a bit more demanding, "incorporates the Rule 23(a) commonality requirement." *Id.* (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)). Where "'Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other, the Rule 23(b)(3) predominance element requires that common issues predominate over issues affecting only individual class members.'" *Rossi*, 2013 WL 5523098 at *3 (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009)).

"'Predominance is a test readily met in certain cases alleging consumer or securities fraud.'" *Id.* (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148

10

F.3d 283, 314 (3d Cir. 1998)).  The Third Circuit finds that this requirement is

"satisfied where 'all plaintiffs' claims arise from the same alleged fraudulent scheme."

*Id.* (quoting *In re Community Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005)).

The common questions of fact and law identified previously predominate over

any individual issues that may exist.  The Court already concluded this in *Schwartz*,

ECF No. 157 at 14–26, over Defendants' objection, and Plaintiffs maintain that *Klein*

is no different.  Avis and Budget have allegedly injured Class Members with the same

wrongful course of conduct.  The central common question that predominates is

whether Defendants breached their contracts and fraudulently misled reasonable

consumers, under New Jersey law, related to frequent-flyer surcharges.  The

availability of injunctive relief also presents a predominant factual question.

### b.  A class action is superior to other methods of adjudication.

"Rule 23(b)(3)'s superiority requirement 'asks the court to balance, in terms of

fairness and efficiency, the merits of a class action against those of alternative

available methods of adjudication.'" *NFL,* 2016 WL 1552205 at *15 (quoting

*Warfarin*, 391 F.3d at 533-34).  Superiority is satisfied when the settlement avoids

thousands of duplicative lawsuits and enables fast processing of a multitude of claims.

*Id.*

In certifying a litigation class in *Schwartz*, the Court found, over Defendants'

objection, that since Defendants' surcharges were small, few, if any Class Members,

have interest in pursuing separate actions for relief, as demonstrated by the negligible opt-outs.  See ECF No. 157 at 26 ("it would be very difficult for each plaintiff to litigate his or her dispute with Avis individually because the recoverable amount of damages are likely marginal.").  The Settlement Agreement permits Class Members to exclude themselves.  For those with no objection, the Agreement provides a prompt, predictable, and certain relief with well-defined administrative procedures to assure due process.  The Settlement avoids thousands of individualized trials.

### B. Notice was appropriate since it complied with this Court's Order, and the distribution plan should be approved.

"For a class certified under Rule 23(b)(3), 'the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *NFL,* 2016 WL 1552205 at *16 (quoting Fed. R. Civ. P. 23(c)(2)(B)).  "[D]ue process further requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

"'[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class.'" *Rossi*, 2013 WL 5523098 at *4 (quoting *Prudential,* 148 F.3d at

305).  Notice must meet the requirements of Rules 23(c)(2)(B) and (e), *id.*, by informing class members of 1) the nature of the action; 2) the definition of the class certified; 3) the class claims, issues, or defenses; 4) the class members' rights to retain an attorney; 5) the class member's right to exclusion; 6) the time and manner for requesting exclusion; and 7) the binding effect of a class judgment on class members under Rule 23(c)(3)."  *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).  "Rule 23(e) notice must contain a summary of the litigation sufficient 'to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"  *Id.* (citation omitted).

First, this Court already found the Notice Program to "provide the best notice practicable to the Settlement Classes under the circumstances."  ECF No. 180 at 8, ¶ 10.  Next, there are no objections to the Notice Program.  As outlined by the Claims Administrator's accompanying Declaration, the Notice Program consisted of the following components: Settlement Notice was published through a settlement website; notification was emailed to Class Members whose e-mail addresses Defendants had; where e-mails were lacking, notification was directly mailed to the Class Members; and summary notice was published in the Marketplace section of *USA Today*.  Declaration of Lori Castenada, dated April 28, 2016; *see* ECF No. 180 at 9-10, ¶ 13.

The Notice Program has fully informed the Class of their rights and benefits under the Settlement.  *See Rossi*, 2013 WL 5523098 at *5.  The Program does not cost this the Settlement Class anything; Defendants are paying for it.

13

**C.    The Court should grant final approval of the settlements, as they are fair, reasonable, and adequate.**

Settlements are favored "especially in the class action setting," as a settlement conserves substantial judicial resources. *Rossi*, 2013 WL 5523098 at *6 (citing *GM*, 55 F.3d at 784, *Warfarin*, 391 F.3d at 535 (noting the "overriding public interest in settling class action litigation")).  "A class action cannot be settled without court approval based on a determination that the proposed settlement is fair, reasonable, and adequate."  *NFL,* 2016 WL 1552205 at *16.  The decision to approve a proposed settlement "is left to the sound discretion of the district court."  *Id.* (quoting *Prudential,* 148 F.3d at 299).

Courts in this Circuit "apply an initial presumption of fairness in reviewing a class settlement when 1) the negotiations occurred at arm's length; 2) there was sufficient discovery; 3) the proponents of the settlement are experienced in similar litigation; and 4) only a small fraction of the class objected."  *Id.* at *17 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001)); *Rossi*, 2013 WL 5523098 at *6 (citing *Warfarin*, 391 F.3d at 535).

 From there, the Third Circuit has enumerated nine factors, the *Girsh* factors, to determine whether a settlement is "fair, reasonable, and adequate."  *Rossi*, 2013 WL 5523098 at *5 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).  The Third Circuit, in *Prudential,* has also offered prudential factors that are permissive. *NFL,* 2016 WL 1552205 at *18 (citing *Prudential,* 148 F.3d at 323).

### 1.     *Girsh* #1: The significant complexity, expense, and duration of the litigation weigh in favor of approving settlement.

The first *Girsh* factor, "whether the settlement avoids a lengthy, complex, and expensive continuation of litigation," *Rossi*, 2013 WL 5523098 at *6, "'captures the probable costs, in both time and money, of continued litigation.'" *Id.* (quoting *Cendant*, 264 F.3d at 201, 233-34).

Despite *Schwartz's* advanced posture, the parties would still have needed engage in months of merits-based discovery, involving significant written and document discovery, many fact and expert depositions, likely resulting in a second motion for summary judgment. *Klein* would have required even more work, including additional interrogatories and requests for production and depositions (none of which had yet been taken at the time of the settlement) on class discovery. As in *Schwartz,* a behavioral economist's opinion would have been required. And class certification and summary judgment would have required extensive briefing and evidence. Both cases would have required extensive trial preparation. The lengthy trial would have involved pretrial motions concerning complex legal and factual questions. And if Plaintiffs won, Defendants would likely have appealed.

Conversely, "settlement also provides the Class with immediate and definite relief." *Id.* It provides substantial benefits for Settlement Class Members with none of the delay, risk, and uncertainty of continued litigation.

### 2.     *Girsh* #2: The Settlement Class's reaction favors settlement.

The second "factor gauges whether members of the class generally support or

15

object to the settlement." *Id.*; *NFL,* 2016 WL 1552205 at *19 (quoting *Warfarin*, 391 F.3d at 536 ). "'[T]he number and vociferousness of the objectors must be examined.'" *Rossi*, 2013 WL 5523098 at *6 (quoting *GM*, 55 F.3d at 812). Along those lines, "'silence constitutes tacit consent to the agreement.'" *Id.*

The notice program is ongoing. Although the opt-out and objection deadline was April 6, 2016, of the over one million Class Members, only four unmeritorious objections occurred and, as the Castaneda Declaration states, only eight persons excluded themselves. The three fee-based objections will be addressed in Class Counsels' fee application, while the other objection, by Todd Payne, is discussed now.

> **a.    The parties' settlement release concerns solely FTP Surcharge-related claims, which are the precise claims that Plaintiff pleaded in his complaint and that Mrs. Payne pleads in hers.**

One of the most important characteristics of a settlement release is its scope. And although the parties' settlement release is not overbroad, the Third Circuit recognizes that releases can be very broad and can even include future claims. *See e.g., Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 317 (3d Cir. 2011) ("[I]t is well established that parties to a suit have the right to agree to anything they please in reference to the subject matter of their litigation, and the court, when applied to, will ordinarily give effect to their agreement, if it comes within the general scope of the case made by the pleadings.") (internal quotation marks omitted); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 261 F.3d 355, 367 (3d Cir. 2001) (affirming settlement where settlement agreement released claims "arising out of, or related to, in

whole or in part, the Released Transactions and servicing relating to the Released Transactions"); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 244 (D.N.J. 2005) (released claims must "arise out of the same course of conduct alleged in the Complaint [and must be] based on the same factual predicate as those claims in [the] action").

So where a complaint alleges (or even lists) defendant's allegedly deceptive conduct, yet the complaint's other allegations address conduct that, while supporting the complaint's allegedly deceptive conduct, does not neatly fall within the complaint's enumerated alleged misconduct, the other claims are properly subject to the parties' settlement release. *See, e.g., Prudential,* 148 F.3d at 326 ("The crux of the plaintiffs' complaint was that Prudential engaged in a common scheme of deceptive sales practices.  Although the [c]omplaint specifically list[ed] three types of deceptive sales claims—the churning, vanishing premium and investment plan claims—other allegations address conduct which supports the common scheme theory and which does not fall neatly within the three enumerated categories.  Therefore, we agree with the district court the 'other claims' were properly released." (internal citation omitted)).

But despite the Third Circuit's liberal approach, the parties' settlement release is not overbroad in the first place.  Understanding this requires understanding Payne's situation.  Plaintiffs' certified class, of which Payne is a member, includes Avis customers (1) who were Preferred Service members; (2) who, as Preferred Service

members, rented a car between July 14, 2005 and June 14, 2012 through

www.avis.com, and (3) who paid an FTP Surcharge at any time, including through

present.  Importantly, this class does *not* cover Preferred Service members who did

not rent online between June 14, 2005 and June 14, 2012.  Therefore, any FTP

Surcharge-related claims alleged by Preferred Service members who did *not* rent

between June 14, 2005 and June 14, 2012—call them, *new* Preferred Service

renters—are outside the settlement class, and any claims they have remain available to

pursue.

Payne refuses to recognize that Plaintiffs' settlement resolved his claims (since

Payne admittedly rented between June 14, 2005 and June 14, 2013), and Payne fails to

acknowledge the viability of FTP-Surcharge-related claims for new Preferred Service

renters.  Instead, Payne claims overbreadth, insisting that the parties' settlement

release somehow "bars the American/Delta [supposed] sub-class members[, which

group does not even include Payne] from joining [Payne's wife's] class and

recovering for surcharges paid to Avis for American Airline and/or Delta Airline

frequent-flyer miles beyond the Avis Settlement Class's present end date of June 14,

2012." Payne Objection at 6.

But the parties' settlement release does no such thing.  Rather, the settlement

release allows renters' claims to proceed, so long as these renters did not *also* rent

from Avis between June 14, 2005 and June 14, 2012, as Payne did.  In the event

customers rented between these dates, the rentals "beyond the Avis Settlement Class's

18

present end date of June 14, 2012," *id.,* are properly covered.

*All* of Payne's FTP Surcharge-related claims—whether Avis's $0.75/day FTP Surcharge, the imposition of the FTP Surcharge for miles earned on American/Delta, or anything else, as well as whether occurring between June 14, 2005 and June 14, 2012 or afterwards—are, subject to this Court's certification order.  That Payne lacks standing to pursue new Preferred Service renters' alleged American/Delta-related FTP Surcharge claims is no basis for scuttling a perfectly good settlement for those renters who appreciate it.

A *proper* example of overbreadth would be if the parties had agreed to settle not only Preferred Service members' FTP Surcharge-related claims but *all* these members' Avis-related claims, including personal-injury claims related to accidents suffered walking through the Avis parking lot or fraud claims related to charges for GPS units, car seats, or other options that Preferred Service members never selected. Payne's citations, *Zimmerman v. Zwicker & Associates, P.C.*, No. 09–3905, 2011 WL 65912 (D.N.J. Jan. 10, 2011), and *Graff v. United Collection Bureau, Inc.*, No. 12–CV–2402, 2016 WL 74092 (E.D.N.Y. Jan. 6, 2016), exemplify this point.

*Zimmerman* involved the parties' efforts to release not just FDCPA claims related to a collection letter that defendant had sent to plaintiff and class members, but *all claims* "as a result of alleged violations of the Fair Debt Collection Practices Act or any state law providing substantially similar protections." *Zimmerman,* 2011 WL 65912 at *2.  The court considered this release language overbroad for multiple

19

reasons.  To start, although the release included anyone to whom defendant had mailed a "collection letter," the release never bothered defining collection letter.  *Id.* at *4.

But worse, class members received nothing "[i]n exchange for releasing hundreds of thousands of potential FDCPA claims." *Id.*  As a result, the court explained, "if a class member received defendant's letter and defendant later threatened the consumer with violence if he or she did not pay, the claim would be barred because the settlement require[d] that every class member release his or her FDCPA claims." *Id.*  The court continued: "The same would be true if defendant mailed a class member a different threatening letter every day for over two years starting from the beginning of the class period." *Id.*  Further, the settlement release would have snuffed out any claims related to third-party collectors acting on defendant's behalf, as well as any threats of arrest made by defendant to class members.  *Id.*

But perhaps worst, the settlement release would have applied to state-law claims that were not even part of plaintiff's FDCPA lawsuit.  *Id.*  It was because the parties' settlement release went far beyond the claim that plaintiff had alleged— exceeding claims arising out of the same course of conduct alleged in plaintiff's complaint—that the court properly refused to approve the parties' settlement.

*Graff,* another FDCPA case, involved a "proposed settlement provid[ing] for the class members to receive no money—zero," *Graff,* 2016 WL 74092 at *7.  For this

benefit, class members released "any and all claims for damages, including unknown claims for such relief arising out of or related to the factual allegations and legal claims asserted in the action arising out of federal or state law, including but not limited to any and all such claims relating to defendant's use of messages on telephone answering devices[, including] all claims or causes of action under state or federal law." *Id.*

To this far-reaching release language, the court expressed concern that "the sweeping release [would] bar[] claims for telephone abuse or harassment under the FDCPA, 15 U.S.C. § 1692f, and even claims arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227, for improper calls to a consumer's cellphone." *Id.* Citing *Zimmerman,* the court rightly denied plaintiff's final-approval motion, explaining that "where, as here, the parties predicate the settlement of an FDCPA class action upon the limitations of liability contained in that statute, the release issued in connection with that settlement should not encompass claims other than those under the FDCPA." *Id.* at *8.

*Zimmerman* and *Graff* resemble Plaintiffs' example where the parties' settlement release would include Avis's liability for personal-injury or non-FTP Surcharge-related fraud claims.  But the parties' settlement covers FTP Surcharge-related claims—period—and *not,* as Payne insists, claims "that are even related just in part to the facts surrounding the cause of action set forth in the litigation." Payne Objection at 9.

21

**b.    The law does not require the parties' Notice to describe Mrs. Payne's later-filed, undeveloped, and overlapping complaint.**

"In a world in which junk mail and spam can easily drown out important messages, . . .  Rule 23(c)(2)(B) commands that notices 'clearly and concisely state in plain, easily understood language' the elements of class action notices." *Managing Class Action Litigation: A Pocket Guide for Judges* at 28, Federal Judicial Center (2010).  *See also Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* ("Notices should carry all of the information required by Rule 23 and should be written in clear, concise, easily understood language.").

With this directive in mind, the "Third Circuit and others have repeatedly ruled that notice of a proposed settlement need not include information about parallel state court proceedings."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 529 (D.N.J. 1997) (quoting *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1317–18 (notice need not describe objector's parallel state court litigation or its relative merit)), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 224 (5th Cir.1981) (same), *cert. denied,* 456 U.S. 998 (1982).

Yet Payne insists that the parties' Notice should have referenced his wife's overlapping complaint.  He also suggests that, to the extent his wife is not a class member (because she may not have even rented between June 14, 2005 and June 14, 2012) her complaint's possible (but uncertain) relation to new Preferred Service rentals should have been mentioned.  But *Prudential* instructs that notices need not reference parallel claims or claims that are unrelated to the settling case.

22

So when considering Mrs. Payne's complaint, her claims fall into one of two categories—either she is part of Plaintiffs' class, in which case her claims are settled, or she is not part of Plaintiffs' class, in which case the parties' settlement release does not apply to her.  Neither situation, according to the Third Circuit, requires the parties' Notice to have described her settled or unrelated complaint.  *See, e.g., Prudential*, 962 F. Supp. at 529 ("Johnson complains also that the Class Notice should have identified each state class action currently pending.  Similarly, Krell contends that the Class Notice should have apprised class members of alleged state law violations that are not even asserted in the Second Amended Complaint.  Both objections misinterpret the law.") (internal citations omitted).

What is more, if Payne's wife *did* fall entirely within the parties' settlement class—and when she filed her complaint, she certainly knew about Plaintiffs' certified class, as evidenced by the required certification under N.J. Ct. R. 4:5-1, where she listed Plaintiff's case as a "related pending judicial proceeding"—she had no reason even to file her complaint.  Or if she was outside the class—meaning she did not have a Preferred Service rental between June 14, 2005 and June 14, 2012—then Plaintiffs' class has nothing to do with her.  And when considering that Payne falls squarely within Plaintiffs' settlement class and does not have claims outside it (as his wife might), again, there is no reason for Payne even to be objecting, except perhaps due to his misunderstanding that he is losing new Preferred Service member rental-related claims that he does not even have.

23

Despite all this, Payne also insists that the parties' Notice required reference to his wife's lawsuit because Plaintiff's case "impacted" certain renters and "released their rights," Payne Objection at 4.  But that is not the rule.  Plaintiffs' lawsuit merely settled Mrs. Payne's claims, to the extent they overlap with Plaintiff's.

With respect to any parts of Mrs. Payne's complaint that do not overlap with Plaintiffs', Plaintiffs' settlement release is *not* "related" to or "parallel" with her case. *Id.* at 4, 5.  So because Plaintiff's settlement did not cause Mrs. Payne's class members to "lose the opportunity to secure," *id.* at 4, or to "giv[e] up" anything, *id.* at 5, qualifying Preferred Service members, like Payne, are getting precisely what they deserve, while non-qualifying Preferred Service members, like perhaps Mrs. Payne (we are not sure), remain free to pursue their claims.  In both instances, no notice problem exists.

Payne also maintains that by not listing his wife's complaint, the parties failed to disclose "the potential adverse effect [that] their settlement may have on class members who were surcharged for Frequent-flyer miles relating to American Airlines' 'AAdvantage' program or Delta Air Lines' 'Sky Miles' program." Payne Objection at 2.  But he never explains *how* these renters were adversely affected.  "Potentially higher damage amounts," *id.* at 4, which Mrs. Payne's new complaint may never generate, do not constitute "adverse effect."

Payne cites no case where a notice was found invalid because it did not disclose another pending case.  Rather, he cites cases where the fact of parallel litigation was

merely discussed.  For instance, in *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005), the court was concerned with ensuring that class members received all facts necessary for making an informed decision about whether to stay in or to opt out of the class.  For this reason, the court found it meaningful that the "settlement notice quoted verbatim the Settlement's release," *id.* at 115, not unlike how the instant parties' settlement website made their entire settlement release (and more) available to class members.  In keeping with this theme, the *Wal-Mart* court, suggesting that mentioning other pending litigation might be helpful, *id.* at 116 n.22, ruled that describing the release (and *not* mentioning other pending litigation) "[wa]s all that was required." *Id.* at 116.

So while the Notice here might not quote the entire release, it is functionally equivalent to *Wal-Mart* in that it directs class members to the full release on the settlement website.  Perhaps even more important, the notice explains that the release is "from any liability or claims associated with or relating to the imposition of FTP Surcharges during rental transactions." This FTP language encompasses Mrs. Payne's complaint, which, identical to Plaintiff's case, involves FTP surcharges.

In *Davis v. J.P. Morgan Chase & Co.,* 775 F. Supp. 2d 601 (W.D.N.Y. 2011), not only did the case actually *not* involve parallel litigation (rather, it involved class members striving to intervene in the settling litigation), the court recognized that "[t]he parties [were] correct that there is no *requirement* that a settlement notice advise class members of the pendency of parallel litigation in another forum." *Id.* at

25

611 (emphasis in original).

Finally, in *Fradette v. American Services Corp.,* No. 76-6373-Civ-CA, 1979 WL 1756 (S.D. Fla. Aug. 29, 1979)*,* when defendant objected to adding reference to other pending litigation, plaintiff insisted since, under the facts of that case, this extra language encouraged clarity, as opposed to being pointless and encouraging only confusion, as would have happened here. *Id.* at *1.

Given the supportive and remedial effect that the parties' settlement has on Mrs. Payne's complaint's putative class members who rented between June 14, 2005 and June 14, 2012 and who paid FTP Surcharges through present, no reason exists to gum up the parties' Notice with discussions and descriptions of another lawsuit that is only just getting started. Despite Payne's insistence that "several" district courts have required notice of similar complaints, Payne Objection at 4, there has been no such requirement.

Finally, *Payne* is in its infancy, having been filed barely three months before Plaintiff filed his motion for preliminary approval. From a practical perspective, it makes no sense to require that settling parties' notice describe any competing case, particularly a newly-minted one. It is confusing to tell class members about every bird in the bush instead of focusing on the bird in the hand. The form of notice is within this Court's discretion, and courts should avoid making notices too complex. *See Mullane,* 339 U.S. at 314, 318 (notice "must be such as is reasonably calculated to reach interested parties" and "apprise [them] of the pendency of the action."); *Zimmer*

*Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("Rule 23(d)(2) governs most notices during the pendency of a class action and confides the manner of notice to the district court's discretion, subject to due process requirements.").

### c.   Subclassing is necessary only where divergent interests exist among class members.

According to Rule 23(c)(5), "[w]hen appropriate, a class action may be divided into subclasses that are each treated as a class under this rule." An advisory committee note for Rule 23(c) adds that subclasses are appropriate "[w]here a class is found to include subclasses divergent in interest." *See also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. 2009) (citing Rule 23(c)(5) for this proposition).

Considering this standard, in *Glauberzon v. Pella Corp.*, No. 10–5929, 2011 WL 1337509 (D.N.J. April 7, 2011), this Court recognized that "a class representative [was] necessary for each subclass," *id.* at 16, where plaintiffs [had] plead[ed] various classes, such as "claims on behalf of California, Wisconsin, Illinois, Michigan, New Jersey, New York, Pennsylvania, North Carolina and Florida sub-classes." *Id.* at *2. But here, the American and Delta-loyal Avis Preferred members (possibly) described in Mrs. Payne's complaint who paid FTP Surcharges are covered by Plaintiff's nationwide complaint under New Jersey law, so long as they rented between June 14, 2005 to June 14, 2012.  Payne fails to support his subclass objection with any authority, instead maintaining that "no class representative was a member [of] or sought frequent-flyer miles under Avis's Frequent Flyer program," Payne Objection at

27

5, when Plaintiff's class comprises precisely these people.

Finally, even if this Court were to somehow conclude that a subclass of some sort were required, whether separate representation should exist is within the district court's discretion. For as the Third Circuit has instructed, "[w]hile subclasses can be useful in preventing conflicts of interest, they have their drawbacks[, and] because the decision whether to certify a subclass requires a balancing of costs and benefits that can best be performed by a district judge, we accord substantial deference to district courts with respect to their resolution of this issue." *Ins. Brokerage,* 579 F.3d at 271 (internal quotation marks and citations omitted.). So because no antagonistic interests exist, in that both cases involve FTP Surcharges, no basis exists for subclassing. Payne's objection should be rejected.

### 3.  *Girsh* #3: At settlement, the case was advanced through fact and expert discovery.

The third "'factor 'captures the degree of case development that class counsel had accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.''" *NFL,* 2016 WL 1552205 at *19 (quoting *Warfarin,* 391 F.3d at 537 (quoting *Cendant,* 264 F.3d at 235)).

Counsel for both sides appreciate the merits of the case. In *Schwartz* and *Klein,* the parties briefed Defendants' motions to dismiss. In *Schwartz,* they briefed class certification, Avis's Rule 23(f) appeal, summary judgment and *Daubert.* The parties' discovery involved initial disclosures, documentary discovery, depositions, third-party

28

subpoenas, and experts.  Counsel met multiple times to conduct settlement

negotiations, and exchanged countless demands and offers, all of which favors

settlement approval.

> ### 4.     *Girsh* #4, #5, and #6: There was difficulty and risk to establishing liability and damages and to maintaining the class action through trial.

"'The fourth and fifth *Girsh* factors survey the possible risks of litigation in

order to balance the likelihood of success and the potential damage award if the case

were taken to trial against the benefits of an immediate settlement.'" *NFL,* 2016 WL

1552205 at *20 (quoting *Prudential,* 148 F.3d at 319).  It is well known that "[t]he

risks of proceeding to trial in any case are always considerable." *Rossi*, 2013 WL

5523098 at *7 (citing *Prudential,* at 962 F. Supp. at 539). As for the sixth factor, even

when class certification is granted, there is still the "added challenge of maintaining

class certification through trial." *Id.* at *8 (citation omitted).

But still more risks existed.  Plaintiffs fully expected Defendants to move to

decertify the class, since, "'[a]fter all, a favorable class determination by the court is

not cast in stone[,]'" *Id.* (citation omitted), and to oppose certification in *Klein.*

Plaintiffs also expected Defendants to file motions for summary judgment attacking

Plaintiffs' liability theories.  So while Plaintiffs are confident about the merits of their

case, stiff challenges persisted at trial and on appeal.  *See NFL*, 2016 WL 1552205 at

*20.

29

### 5.   *Girsh* #7: Defendants do not lack the ability to withstand a greater judgment.

This factor is "relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *Id.,* at *21.  But the Third Circuit has found that the ability to withstand a more substantial judgment ""'does not undermine the reasonableness of the . . . settlement.'"" *Id.* (quoting *Sullivan*, 667 F.3d at 323 (quoting *Weber v. Government Empl. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009))). Here, there is no evidence that Defendants would be unable to withstand a greater judgment, *Warfarin*, 391 F.3d at 538 ("Although the plaintiffs do not dispute that DuPont's total resources far exceed the settlement amount, the fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the consumer and TPP class members are entitled to under the theories of liability that existed at the time the settlement was reached."), so this factor is not relevant.

### 6.   *Girsh* #8 and #9: The settlement's range was reasonable in light of the best possible recovery and attendant risks of litigation.

"In evaluating the eighth and ninth *Girsh* factors, [courts] ask 'whether settlement represents a good value for a weak case or a poor value for a strong case.'" *NFL*, 2016 WL 1552205 at *21 (quoting *Warfarin*, 391 F.3d at 538).  ""'The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial.'" *Id.* (quoting *Warfarin*, 391 F.3d at 538).  The Third Circuit has explained, ""'The present value of the damages plaintiffs would likely recover if successful,

appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" *Id.* (quoting *Prudential*, 148 F.3d at 322).

"'The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Rossi*, 2013 WL 5523098 at *8 (quoting *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006)). "'Rather, the percentage recovery must represent a material percentage to the plaintiff in light of all the risks considered under *Girsh*.'" *Id.* (quoting *AT&T*, 455 F.3d at 170).

When viewed in light of the potential risks discussed above, which include the risk of Defendants' winning on summary judgment, on class decertification in *Schwartz* or class certification in *Klein*, at trial, or on appeal, the Settlements are not only fair, they are excellent. On top of eliminating all of the significant risks in this case related to liability and damages, the *Schwartz* settlement secures a settlement with a value of nearly $11 million, more than the damages the Class could have obtained had they succeeded at trial. At the other extreme, if every Class Member chose the cash option, Defendants would pay out over $4 million, a recovery of nearly 50%.

Likewise, the *Klein* settlement provides nearly $3 million of value if all Class Members opted for the discounts, while if everyone chose cash, the settlement value would be over $1 million. Further, the Settlements provide a significant injunctive relief component that adds value not only to the Class Members but also to all others

who rent vehicles from Defendants.  *See, e.g., In re Subway Footlong Sandwich Mktg. and Sales Practices Litig.*, MDL No. 13-02439, 2016 WL 755640, *8 (E.D. Wisc. Feb. 25, 2016) (finding injunctive relief changing future practices positively impacts settlement value as many patrons are repeat customers).

### 7.   The settlement satisfies the *Prudential* factors.

If this Court considers the permissive factors *Prudential* factors,[4] they too support the Settlement.  Even if the Court "may want different terms or more compensation for a certain condition[, its] role as judge[] is to review the settlement reached by the parties for its fairness, adequacy, and reasonableness." *NFL*, 2016 WL

----

[4] Those factors, for this Court's convenience, are the following "permissive and non-exhaustive factors:

> The maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

> The existence and probable outcome of claims by other classes and subclasses;

> The comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants;

> Whether class or subclass members are accorded the right to opt out of the settlement; any provisions for attorneys' fees are reasonable; and

> Whether the procedure for processing individual claims under the settlement is fair and reasonable.

*NFL*, 2016 WL 1552205 at *18 (quoting *Prudential*, 148 F.3d at 323).

1552205 at *25.  The Third Circuit continued that "when exercising that role, we must 'guard against demanding too large a settlement based on our view of the merits of the litigation; after all, a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'" *Id.* (quoting *GM*, 55 F.3d at 806).  The court concluded, "[w]e must hesitate before rejecting that bargain based on an unsupported hope that sending the parties back to the negotiating table would lead to a better deal." *Id.*

The first three *Prudential* factors, the extent of discovery and other factors bearing on this Court's ability to assess the outcome of a trial, largely overlap with the *Girsh* factors involving the stage of the proceedings, the amount of discovery obtained, and the risks attendant to the issues of liability, damages, and class certification.  *See id.* at *22.  For the reasons stated in connection with those *Girsh* factors, these *Prudential* factors favor settlement approval.

The fourth *Prudential* factor is satisfied because Class Members can opt out. *Id.*  The fifth *Prudential* factor is met since attorneys' fees and costs will not cost the Class one cent; instead, they will be paid separate from the Settlement.[5] Finally, the claims process is fair and reasonable.  The Administrator has provided notice personally by e-mail or, if necessary, by first class mail, summary notice by publication, and by a dedicated website and toll-free phone number, all of which Defendants are paying for.  Class Members are able to claim either cash or discount

---

[5] This is more fully addressed in the upcoming application for attorneys' fees and costs.

33

settlement benefits using a simplified claim form that they can complete electronically or by filing a claim by regular mail.

Given the size of the Settlement Classes, the potential benefits available, and the risks in proving liability and damages and in obtaining class certification, the Settlements fairly and adequately reward the Classes. Not only do the Settlements deserve an initial presumption of fairness, they are also fair, reasonable, and adequate, under *Girsh* and *Prudential*.

## IV.    CONCLUSION

These Settlements were reached as a result of extensive and arduous arm's-length negotiations between experienced counsel, and, as such, are entitled to a presumption of fairness. The Settlements satisfies the necessary sections of Rule 23 and, according to the *Girsh* and *Prudential* factors, are fair, reasonable, and adequate. The Settlements will remove the uncertainties and risks to all the parties. All counsel believe the Settlements are in the best interests of their respective clients and the class. Accordingly, Plaintiffs respectfully request that this Court convert its preliminary approval to final approval.

**LITE DEPALMA GREENBERG, LLC**

Dated: May 2, 2016                      */s/ Bruce D. Greenberg*
                                        Bruce D. Greenberg
                                        570 Broad Street, Suite 1201
                                        Newark, NJ 07102
                                        Telephone: (973) 623-3000
                                        Facsimile:  (973) 623-0858
                                        brgreenberg@litedepalma.com

34

**KARON LLC**
Daniel R. Karon
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
Telephone: (216) 622-1851
Facsimile: (216) 241-8175
karon@gskplaw.com

**MILLER GOLER FAEGES LAPINE, LLP**
Jay R. Faeges
1301 E. 9th St., Suite 2700
Cleveland, OH 44114-1835
Telephone: (216) 696-3366
Facsimile: (216) 363-5835
faeges@mgfl-law.com

*Attorneys for Plaintiffs and the Classes*

35