**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWARD SCHWARTZ, on behalf of himself and other similarly situated,<br><br>   *Plaintiff*,<br><br>v.<br><br>AVIS RENT A CAR SYSTEM, LLC, and AVIS BUDGET GROUP, INC.,<br><br>   *Defendants.* | Civil Action No.: 11-4052 (JLL)<br><br>**OPINION** |
| DANIEL KLEIN and STEPHANIE KLEIN, on behalf of themselves and others similarly situated,<br><br>   *Plaintiffs*,<br><br>v.<br><br>BUDGET RENT A CAR SYSTEM, INC. and AVIS BUDGET CAR RENTAL, LLC,<br><br>   *Defendants.* | Civil Action No.: 12-7300 (JLL) |

**LINARES,** District Judge.

  Pending before the Court are Plaintiffs' motions for final approval of a class action settlement of the above-captioned cases, approval of incentive awards to class members, and approval of an award of attorneys' fees and expenses. (11-cv-4052, ECF No. 186; 12-cv-7300, ECF No. 68). The Court granted preliminary approval of the proposed settlement of these putative class action lawsuits ("Settlement Agreement") on February 16, 2016. (ECF No. 180,

"Preliminary Approval Order"). [1]  Pursuant to the Court's Preliminary Approval Order, notice of the Settlement Agreement negotiated between Plaintiffs and Defendants (collectively, the "Settling Parties") was disseminated to class members.  Only four individuals objected to the Settlement Agreement.  This Court held a fairness hearing on May 25, 2016, at which only one objector appeared through his attorney.  The court has considered all submissions filed in support of and in opposition to these motions, as well as the arguments presented at the May 25th hearing.  For the reasons set forth below, Plaintiffs' motions are granted in full.

## I.      BACKGROUND

### A. Procedural History

The above-captioned matters involve allegations of breach of contract and violations of the New Jersey Consumer Fraud Act against Avis Rent A Car System, LLC, Avis Budget Group., Inc. (jointly, "Avis"), Budget Rent A Car System, Inc., and Avis Budget Car Rental, LLC (jointly, "Budget") (collectively, "Defendants").  Specifically, Mr. Edward Schwartz, who filed his lawsuit against Avis in July 2011 (ECF No. 1), and Mr. Daniel Klein and Mrs. Stephanie Klein (the "Kleins"), who filed their suit against Budget in November 2012 (12-cv-7300, ECF No. 1), allege that Defendants misrepresented and intentionally concealed charges from their customers who rented vehicles online through their websites and accepted Defendants' offer of frequent-flyer miles in connection with those rentals.

After years of discovery and extensive motion practice, on August 28, 2014, the Court granted Mr. Schwartz's motion for nationwide class certification with respect to the *Schwartz* action. (ECF No. 157, *Schwartz* Cert. Op., ECF No. 158, Class Cert. Order).  The Third Circuit denied a Rule

---

[1] Unless otherwise indicated, citations to the record are to the docket in the *Schwartz* matter, 11-cv-4052.

23(f) petition as to that class certification. Since that time, the Parties have engaged in extensive settlement negotiations.

On January 22, 2016, the Plaintiffs in both actions filed an unopposed motion for preliminary approval of the class action settlement. (ECF No. 178). This Court preliminarily approved the settlement and notice plan on February 16, 2016. (ECF No. 180, Preliminary Approval Order). In that same Order, the Court preliminarily certified the following two Settlement Classes:

> *Schwartz:* All Persons who, at any time from July 14, 2005 through June 14, 2012, were members of the Avis Preferred Service Program, rented a vehicle in the United States through www.avis.com, and paid a Frequent Traveler Program Surcharge (an "FTP Surcharge") for receiving frequent-flyer miles from any of Avis's travel partners. . . .

> *Klein*: All Persons who, at any time from November 27, 2006 through February 17, 2013, were members of the Budget Rapid Rez with Fastbreak Program, rented a vehicle in the United States through www.budget.com, and paid and FTP Surcharge for receiving frequent-flyer miles from any of Budget's travel partners. . . .

(Preliminary Approval Order, at 3-4).

**B. Settlement Negotiation and Terms**

**i. Benefits to Class Members**

The Settlement Agreement provides class members with the option of a choice of cash or a 10 percent discount on future vehicles rentals. (ECF No. 178-2, Declaration of Bruce D. Greenberg, "Greenberg Decl.", Exh. 1, Settlement Agreement § 5). The amount of cash class members may receive, and the number of rental days that class members can use the 10 percent discount, is calculated by the total amount of Frequent Traveler Program ("FTP") surcharges the class member paid. (*Id.*). The Settlement Agreement also provides injunctive relief, requiring Defendants to maintain improved disclosures on their websites relating to the FTP Surcharge for at least five years from the effective Settlement Date. (*Id.* § 6).

**ii. Release and Waiver**

3

The Settlement Agreement contains a section entitled "Release, Waiver and Covenant Not to Sue." (Settlement Agreement § 13). In pertinent part, this Section bars any class member who does not opt out of the Settlement Agreement from "forever [ ] instituting, maintaining, or proceeding in any action against the Released Parties with respect to any Released claims" and represents an agreement by the class member to "release and forever discharge the Released Parties from each and every such Release Claim." (*Id.* § 13.d). The Settlement Agreement defines "Released Claims" as:

> [A]ny and all claims, damages, suits, demands, liabilities, judgments, losses, and causes of action relating to the imposition of an FTP Surcharge in connection with vehicle rentals from Avis or Budget, of any kind or character, whether known or unknown, matured or unmatured, sounding in law or equity, seeking damages or any other relief (including attorneys' fees), that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, or in any other manner, based upon any federal or state statutory or common law, including but not limited to, claims sounding in tort, contract, and the consumer protection laws of the United States or of any state or other jurisdiction within the United States, and all claims, damages, suits, demands, liabilities, judgments, losses or causes of action which have been, might have been, are now, or could be asserted by any Plaintiff or any Settlement Class Member arising out of, based upon, or related to, in whole or in part, the facts and circumstances underlying the claims and causes of action set forth in the Litigation.

(*Id.* at 6).

In short, under the terms of this Settlement Agreement, all class members who do not opt out of the class will be prohibited from litigating any present or future claims against the Defendants relating to the FTP Surcharge.

### iii.    Attorneys' Fees and Incentive Awards

The Settling Parties have agreed on compensation for Plaintiffs' attorneys' fees and expenses, as well as incentive awards to Mr. Schwartz and the Kleins. (*Id.* § 12). Specifically, Defendants have agreed not to dispute a requested fee and expenses award greater than $3,050,000.00 for both cases combined. (*Id.* § 12.b). Moreover, Defendants have agreed not to oppose the payment of a

$5,000 incentive award to Mr. Schwartz and a $5,000 award to be split between the Kleins on their terms. (*Id.* § 12.d).

## C. Notice to Class Members

Absent class members were notified of the proposed Settlement Agreement in accordance with the Settling Parties' comprehensive notice plan. (See Settlement Agreement, § 3). Defendants, rather than the Class, were responsible for paying for the notice distribution and also for paying a Claims Administrator to establish and maintain a settlement website, which included a copy of the notice and claim form. (*Id.*). Those class members whose email addresses were on file with Defendants received notice via email, with a direct link to a settlement website. (*Id.*). All remaining class members received hard copies of the notice and claim form. (*Id.*). Notice was also published in a 1/6 page advertisement in USA Today's Marketplace section. (*Id.*).

In addition to being apprised of the substantive terms of the Settlement Agreement, the notice advises class members that they have the option to exclude themselves from the class or to object to the Settlement Agreement. (*Id.*, Exh. B., Notice at 12-15). Plaintiffs have represented that over 11 million rental transactions involved the FTP Surcharge, and that the Claims Administrator has received over 51,000 claims. (ECF No. 186-3, "Pls.' Br." at 6).

Only four individuals have objected to the Settlement Agreement. Out of those four individuals, only one objector, Todd Payne, appeared, though his attorney, at this Court's May 25, 2016 fairness hearing. The objectors' positions are addressed in detail below.

## II.   FINAL CERTIFICATION OF THE SETTLEMENT CLASSES

Before approving the final Settlement Agreement, the Court must "definitively certify the class[es] and satisfy [itself] that the requisites of Rule 23 have been satisfied." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 797 (3d Cir. 1995).

Actions certified for settlement purposes are held to the same standards as actions certified for litigation purposes. (*Id.* at 799). Thus, the Court may only grant Plaintiffs' motion for final approval of the Settlement Classes if it finds the prerequisites of Rule 23(a)—namely, numerosity, commonality, typicality, and adequacy of representation—have been met. *See* Fed. R. Civ. P. 23(a); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309, n.6 (3d Cir. 2008). Additionally, as Plaintiffs seeking certification of a Rule 23(b)(3) class, the Court must also be satisfied that "(1) common questions predominate over any questions affecting only individual class members (predominance) and (2) class resolution is superior to other available methods to decide the controversy (superiority)." *In re National Football League Players Concussion Injury Litig.*, ("NFL") -- F.3d. --, 2016 WL 1552205, *6 (3d Cir. Apr. 18, 2016); Fed. R. Civ. P. 23(b)(3).

This Court has already engaged in a class certification analysis with respect to the *Schwartz* action, and has found the requirements of Rule 23(a) and (b) satisfied as to that action. (See *Schwartz*Cert. Opp.). Given the overlapping factual and legal allegations asserted in the *Klein* action, and for the reasons below, the Court finds that the *Klein* action is similarly appropriate for certification as a settlement class.

### A. Numerosity is Satisfied

A putative class may only be certified if it "is so numerous that joinder of all member is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the [numerosity] prong has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Plaintiffs have represented, and neither Defendants nor any objectors have disputed that "[n]early 11.9 million rental transactions involved a frequent-flyer surcharge . . . and, to date, the [Claims] Administrator has received over 51,000 claims." (Pls.' Br. at 6). Accordingly, numerosity is easily satisfied in these cases.

6

### B.   Commonality and Predominance are Satisfied

It is customary in Rule 23(b)(3) class actions for courts to jointly apply the Rule 23(a)(2) commonality requirement and the Rule 23(b)(3) predominance test. *See, e.g., Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) ("[T]he rule 23(b)(3) predominance requirement, which is far more demanding, incorporates the Rule 23(a) commonality requirement. Accordingly, we analyze the two factors together, with a particular focus on the predominance requirement.") (citations omitted).

Under Rule 23(a)(2), commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Not all claims or facts must be common to all class members; "[a] putative class satisfies Rule 23(a)'s commonality requirement if 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

However, for a class that is certified under Rule 23(b)(3), which the Plaintiffs are here seeking, the Court must also find that these common questions predominate over individual issues. *In re Prudential Ins. Co. of Am. Sales Practices Litig.* ("*Prudential I*"), 962 F. Supp. 450, 510-511 (D.N.J. 1997). "To assess predominance, a court at the certification stage must examine each element of a legal claim 'through the prism' of Rule 23(b)(3)." *Marcus v. BMW of North Am.*, 687 F.3d 583, 600 (3d Cir. 2012) (quoting *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011)). Furthermore, a plaintiff must "demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Id.* (quoting *Hydrogen Peroxide*, 552 F.3d at 311) (alterations in *Marcus*). "In cases where it is alleged that the defendant made similar misrepresentations, non-disclosures, or engaged in a common

7

course of conduct, courts have found that conduct to satisfy the commonality and predominance requirements." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005).

In its Opinion certifying the *Schwartz* class for litigation purposes, this Court evaluated the elements of Mr. Schwartz's New Jersey Consumer Fraud Action and breach of contract claims, and ultimately held that these elements were satisfied as to both claims. As to the NJCFA claim, the Court noted that a plaintiff must show: (a) unlawful conduct by the defendant; (b) that the plaintiff suffered an ascertainable loss; and, (c) a causal connection between defendant's unlawful conduct and plaintiff's ascertainable loss. (*Schwartz* Cert. Op. at 16, citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007) (quoting N.J.S.A. § 56:8-2)). The Court held that Plaintiff will be able to prove Avis's unlawful conduct by "using common evidence given the fact that Avis entered into a standard form contract with millions of customers over the class period and that the surcharge information was presented in similar manner to most Avis customers for that period." (*Id.* at 16). Moreover, the Court determined that Plaintiffs could prove ascertainable loss with common evidence by using Avis's transaction data. (*Id.*). Finally, based upon its thorough review of the competing expert opinions of Mr. Schwartz and Avis, the Court determined that the alleged omissions were "not knowable" to the class members, thereby satisfying the causal connection requirement under Third Circuit precedent. (*Id.* at 17-22)(citing *Marcus*, 687 F.3d at 610.)

With respect to Plaintiff's breach of contract claims, the Court noted that: (1) the terms of the contract between Plaintiff and Defendants are substantially similar to those entered between the putative class members and Avis; (2) Defendants' behavior is uniform for all members of the putative class as the question of whether Defendants charged a hidden surcharge for frequent-flyer miles is one that will be answered equally for all members of the class, and; (3) whether the class

members performed their own contractual obligations can be answered with common evidence by looking at Defendants' rental records. (*Schwartz* Cert. Op. at 22-23).

The Court has not been presented with any new evidence tending to discredit its prior determination that the *Schwartz* action meets the commonality and predominance requirements. Nor has any party or objector argued that Plaintiffs do not satisfy these requirements. Moreover, given the identical nature of the lawsuits filed by the Kleins, the Court finds that the putative *Klein* class similarly satisfies both the commonality and predominance prongs.

### C. Plaintiffs' Claims are Typical of the Absent Class Members' Claims and Plaintiffs and their Attorneys will Adequate Represent the Class

Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so to assure that the absentees' interests will be fairly represented." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). Moreover, "[i]f a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class. *Marcus*, 687 F.3d at 598 (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)).

In a similar vein, Rule 23(a)(4) requires that "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts consider the following two factors in their analysis as to adequacy of representation: "(1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class." *Prudential I*, 962 F. Supp. at 519 (D.N.J. 1997) (citing *Hoxworth*, 980 F.2d at 923).

9

The Court reiterates its earlier finding that Mr. Schwartz's claims are typical of those of the Avis class, and for the same reasons, the Court finds that the typicality requirement is met with respect to the *Klein* action. Objector Todd Payne has argued that the Mr. Schwartz is not an adequate representative for a subset of Avis clients. The Court addresses and rejects this argument, below. No argument has been raised with respect to the competency or qualifications of Plaintiffs' attorneys, and the Court finds that all of Plaintiffs' attorneys easily meet these requirements. Therefore, the Court finds that the classes satisfy Rule 23(a)'s typicality and adequacy requirements.

### D. The Class Action is Superior to Alternative Methods of Adjudication

Lastly, the Class Members' individual claims are, as compared to the costs of litigation or even the risks of arbitration, *de minimis;* thus, the Court finds that maintaining individual actions in this case would be prohibitively expensive. A class action is, therefore, the superior method of fairly adjudicating the controversy. Thus, the Settlement Class satisfies the superiority requirements of Rule 23(b)(3).

The Court finds that both the *Scwartz* and *Klein* settlement class satisfy the requirements of Rules 23(a) and (b)(3), and accordingly grants final certification of these settlement classes.

### III.   FINAL SETTLEMENT APPROVAL

Pursuant to Rule 23, a court may only approve a class settlement after it has held a hearing and determined that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Third Circuit has enumerated the following nine factors, to be utilized by the Court in making this determination:

> (1) the complexity, expense and likely duration of the litigation . . .;
> (2) the reaction of the class to the settlement. . .; (3) the stage of the
> proceedings and the amount of discovery completed . . .; (4) the risks

> of establishing liability . . .; (5) the risks of establishing damages . .
> .; (6) the risks of maintaining the class action through the trial . . .;
> (7) the ability of the defendants to withstand a greater judgment . . .;
> (8) the range of reasonableness of the settlement fund in light of the
> best possible recovery . . .; (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation . . . .

*Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975) (quoting, in full, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).   Additionally, a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery was sufficient, the settlement proponents are experienced in similar matters, and there are few objectors. *In re Warfarin ,* 391 F.3d at 535.

Finally, settlement of litigation is generally favored by courts, especially in the class action setting. *See id.*  "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors,* 55 F.3d at 784; *see also In re Warfarin,* 391 F.3d at 535 ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). At the same time, the district court functions "as a fiduciary who must serve as a guardian of the rights of absent class members" by ensuring that the proposed settlement is fair, reasonable, and adequate. *In re General Motors,* 55 F.3d at 785.

The Court, in analyzing each of the *Girsh* factors, specifically finds as follows for an ultimate determination that this Settlement Agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

### A.  Complexity, Expense and Likely Duration of the Litigation

The first *Girsh* factor considers whether the settlement avoids a lengthy, complex and expensive continuation of litigation.  "This factor 'captures the probable costs, in both time and money, of continued litigation.'" *In re Cendant Corp. Litig.,* 264 F.3d 201, 233–34 (3d Cir.2001)

(quoting *In re General Motors*, 55 F.3d at 812) ).  Plaintiffs have offered the following assessment
of the work that would be required if the class action were to proceed to trial:

> [T]he [*Schwartz*] parties would still . . . need[] to engage in months of merits-based
> discovery, involving significant written and document discovery, many fact and expert
> depositions, likely resulting in a second motion for summary judgment.  *Klein* would have
> required even more work, including additional interrogatories and requests for production
> and deposition (none of which had yet been taken at the time of the settlement) on class
> discovery.  As in *Schwartz*, a behavioral economist's opinion would have been required.
> And class certification and summary judgment would have required extensive briefing and
> evidence.  Both cases would have required extensive trial preparation.  The lengthy trial
> would have involved pretrial motions concerning complex legal and factual questions.  And
> if Plaintiffs won, Defendants would have likely appealed.

(Pls.' Br. at 15).  None of the objectors have disputed that settling the class actions would enable
the parties to avoid a lengthy, expensive, and complex trial.  Importantly, of course, the settlement
also provides the Class with immediate and definite relief.

For all of these reasons, the Court finds that the first *Girsh* factor weighs in favor of
approval.

## B. Reaction of the Class to the Settlement

The second *Girsh* "factor attempts to gauge whether members of the class support the
Settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions* ("*Prudential* II"),
148 F.3d 283, 318 (3d Cir. 1998).  In order to properly evaluate it, "the number and vociferousness
of the objectors" must be examined. *In re General Motors.*, 55 F.3d at 812.  Generally, "'silence
constitutes tacit consent to the agreement.'" *Id*. (quoting, in full, *Bell Atlantic Corp. v. Bolger*, 2
F.3d 1304, 1313 n.15 (3d Cir. 1993)).  Where the number of objectors relevant to the number of
class members is small, this factor "militates in favor of the settlement." *Bell Atl. Corp. v. Bolger*,
2 F.3d 1304, 1314 (3d Cir. 1993) (finding this factor favors settlement where "[l]ess than 30 of
approximately 1.1 million shareholders objected"); *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d

115, 118-19 (3d Cir. 1990) (concluding that objections from 29 out of 281 class members favors settlement).

Here, the class members' reaction to receiving notification of the Settlement Agreementstrongly suggests an overall consensus that the settlement is fair and reasonable. (*See* ECF No. 186-2, Declaration of Lori L. Castaneda, Vice President of Operations at Garden City Group, LLC). The Claims Administrator has received 51,547 claims for both Avis and Budget clients by April 27, 2016. (*Id.* ¶ 13). Only eight individuals requested to opt-out of the settlement (*Id.* ¶ 16), and only four individuals have objected to the settlement.

While it is clear that the settlement has very strong support from the class, the Court has nevertheless considered the arguments proffered by the objectors.. Of the four objectors, two— Todd Payne and Mark Ray—are represented by counsel. The two remaining objectors, Bruce David Eisen and Doug Jeffries, have objected on their own behalf.[2] The majority of the objections relate to counsels' application for attorneys' fees rather than to the substantive terms of the Settlement, which the Court addresses in further detail below. (See 12-cv-7300, ECF No. 63, Eisen Objection; ECF No. 188-11, Exh. J, Jeffries Objection; ECF No. 182, Ray Objection). To the extent that the objections bear on the fairness or adequacy of the Settlement Agreement itself or notice to class members, the Court now turns to these arguments.

Only Mark Ray has objected to the substantive terms of the Settlement Agreement. (ECF No. 182, Ray Objection).[3] Mr. Ray argues that the Agreement's provision that gives class

---

[2] Although the objection of Doug Jeffries has not been filed on the docket, Plaintiffs' counsel has attached Jeffries' one-page objection to the declaration filed in support of counsels' brief for an award of attorneys' fees and costs. (*See* ECF No. 188-11, Exh. J). Although Mr. Jeffries has not indicated the settlement class to which he belongs, as he was required to do, the Court has nevertheless considered his arguments, and addresses same below.

[3] Mr. Ray is represented by Chris Bandas, Esq., who Class Counsel maintains is a "serial objector" whose objections should be discredited. Although Class Counsel's point is well taken, and while this Court is certainly aware of the numerous cases in which Mr. Bandas has been reprimanded for his conduct in objecting to class settlements, the Court rejects Mr. Ray's objections on the merits.

members the option of receiving a 10 percent discount on future rentals is valueless.  Specifically,

Mr. Ray reasons that class members who have allegedly been wronged by Defendants' conduct

would not want to continue renting vehicles from Defendants.  (Ray Br. at 9).  The Court rejects

this argument.  As Defendants note, "numerous cases . . . have recognized that where[, as here,] a

class includes many members who have expressed interest in a defendant's goods or services, or

who do repeat business with defendants, discounts or coupon benefits are an appropriate form of

relief."  (Pls.' Br. at 21-22).  In any event, to the extent a class member does decide not to continue

doing business with Defendants, that class member has the option of seeking a cash recovery.  (*See*

Settlement Agreement § 5).

Similarly unconvincing is Mr. Ray's argument that the Settlement Agreement's

requirement that Defendants include certain disclosures on their websites relating to the FTP

Surcharges is valueless because Defendants have already improved these disclosures.  (Ray Br. at

9).  As Plaintiffs explain, absent this injunctive relief, Defendants would not be required to

maintain these changes to their websites.

Lastly, Mr. Ray summarily states: "Objection is further made to the diminutive value of

the settlement given the 11 million Avis class members and unknown millions of Budget class

members.  Objection is additionally made that the value of the settlement to the class is further

diminished by the claims-made structure of the settlement, which will ensure that class counsel

ends up with far in excess of 57.3% of the settlement value."  (Ray Br. at 9-10).  The Court does

not view Mr. Ray's reference to the millions of class members of this case as an argument.  As to

the objection to the claims process, it is perfectly appropriate to require class members to submit

certain information proving that they are entitled to collect the relief awarded in this case.  *See,*

*e.g., In re Orthopedic Bone Screw Products Liability Litig.*, 246 F.3d 315, 317-318 (3d Cir. 2001)

14

(explaining the settlement agreement's requirement that class members must "file two documents to perfect their rights to recovery"); *see also Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) (granting final approval of class settlement where class members were required to submit a claim form).  Moreover, absent some form of class members' participation, Defendants would not know which form of relief (either cash or discounts) each class member would prefer.

###### i.      Objections of Todd Payne

Objector Todd Payne is a member of the Avis settlement class.  (ECF No. 65, Payne Objection, at 1).  Mr. Payne's objections primarily relate to a putative class action currently pending in the Superior Court of New Jersey, Law Division, Morris County, in which Mr. Payne's wife, Sherra Payne, is the named Plaintiff.  (*Id.* at 2).  As in the pending *Schwartz* action, the *Payne* action alleges claims for breach of contract and violation of the New Jersey Consumer Fraud Act.  (*Id.* at 3).  However, the putative class in the *Payne* action constitutes a sub-class of the *Schwartz* class members—specifically, the class includes only those who paid a Surcharge in connection with frequent flyer miles for their American Airlines AAdvantage or Delta Air Lines Sky Miles accounts.  (*Id.* ).  Additionally, where the *Schwartz* settlement class period extends from July 14, 2005 through June 14, 2012, the *Payne* class period extends into 2016.  Mrs. Payne commenced the *Payne* action on October 16, 2015.  (*Id.* ).

Payne argues the settlement notice is deficient because it fails to specifically notify the *Schwartz* class members who also fall into the *Payne* American/Delta classes of the pending State action.  (*Id.* at 5).  Thus, according to Payne, these sub-class members may be unaware that by agreeing to the Settlement Agreement's release and waiver provisions, they are giving up their right to participate in the *Payne* action.  (*Id.*).

The Court is unmoved by this argument.  As this Court has previously held, there is no requirement that a class notice must identify all pending litigation, particularly where, as here, including parallel State actions would more easily confuse than explain.  *Larson v. Sprint Nextel Corp.*, 07-cv-5325, 2009 WL 1228443, * 13 (D.N.J. Apr. 30, 2009).

The notice here plainly advised potential class members that, by participating in the settlement, they agree to "releas[e] Avis and Budget . . . from any liability or claims associated with or relating to the imposition of FTP Surcharges during rental transactions." (Greenberg Decl., Exh. B, Class Notice § 14).   The Notice further directed Plaintiffs to the specific terms of the release in the Parties' Settlement Agreement.  (*Id.*).  This clear explanation is sufficient to advise any interested class members in any parallel state litigation that their claim regarding the FTP Surcharge is included within the settlement.

The Third Circuit has held this type of notice sufficient, *Bell Atl. Corp.*, 2. F.3d at 1318, and accordingly it passes muster in this case.  *See Maher v. Zapata Corp.*, 714 F.2d 435, 450 (5th Cir. 1983) (quoted at length in *Bolger*) ("[W]e feel that notice was so worded as to make reasonably clear to the minimally sophisticated layman that approval of the settlement would bar claims beyond those asserted in the Texas action.") (internal quotations omitted); *see also In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 112 (D.N.J. 2012) (Cecchi, J.) ("[N]otice of another class action lawsuit is not required to obtain an acceptable settlement . . .[N]otice of 'a pending suit that might offer only remote prospects of success might confuse class members and precipitate imprudent opting out.'") (quoting *Marfasihi v. Fleet Mort. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)),

Payne next argues that "[t]he claims of the American/Delta sub-class members are substantively different than the other class members, but no class representative was dedicated to

16

their unique interests and claims." (Payne Objection at 5).  At the May 25th hearing, Mr. Payne's attorney explained "Delta and American were only supposed to be charged a dollar, where the other members were supposed to be charged 75 cents, so there is a differentiation of damages that would result."  (Fairness Hearing Tr. at 27:12-16).  Accordingly, Payne is requesting that American/Delta sub-class members be excluded as a group from the *Schwartz* class action so that they can pursue their "substantially different" damages in State court.  (*Id.* at 28).

As stated above, this Court has already determined that Mr. Schwartz is a typical and adequate representative for the *Schwartz* class who can fairly represent the interests of the absent class members.  Thus, the Court's analysis of the typicality and adequacy of Mr. Schwartz as a named Plaintiff remains the law of the case, and accordingly will not be dismantled.  *See In re Continental Airlines, Inc.*, 279 F.3d 226, 233 (3d Cir. 2002) ("[W]hen a court decides upon a rule of law, that decision should govern the same issues in subsequent stages of the same case.") (quoting, in full, 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 134.20 (3d ed. 1999)).  Mr. Payne has not shown any changed circumstances between this Court's August 28, 2014 Opinion to warrant a finding that Mr. Schwartz cannot adequately represent the absent class members' interests—including the American/Delta class members.  Nor has Mr. Payne convinced the Court of the need to carve out the American/Delta sub-class from the certified *Schwartz* class.

In any event, the Class Notice very clearly advises class members—including those who would also fit within the *Payne* class definition—of their right to opt-out of the class. (Class Notice § 17).  Thus, to the extent a member of both the *Payne* putative class and the *Schwartz* class believes that his or her rights are better served in the State Court action, he or she can opt out of this matter.  (*See id.*).

17

Lastly, Mr. Payne takes exception with the Settlement Agreement's Release and Waiver provision, discussed above. (Settlement Agreement § 13). That is, he argues that "the release is overbroad and over-inclusive in general, and as to the American/Delta sub-class members specifically." (Payne Objection at 6). Payne appears to take issue with the fact that the Settlement releases class members' claims for Surcharges imposed after the *Schwartz* settlement class's June 14, 2012 end-date. (*Id.*). However, as Plaintiffs explain, the *Schwartz* class does not cover renters who did not rent during the June 14, 2005 through June 14, 2012 class period. (Pl.'s Br. at 18). Accordingly, "any FTP Surcharge-related claims alleged by Preferred Service members who did *not* rent between June 14, 2005 and June 14, 2012—call them, *new* Preferred Service renters—are outside the settlement class, and any claims they have remain available to pursue." (*Id.*). To the extent that an individual who fits within the *Schwartz* class definition has claims from beyond the *Schwartz* class's June 14, 2012  end-date that he or she wishes to pursue, that class member may, of course, chose to exclude him or herself from the Settlement Agreement. (*See* Class Notice § 17).

Generally, a class settlement may release claims that are factually tied to the complaint's allegations, even if the claims are not specifically identified in the complaint. *See Prudential* II , 148 F.3d at  326 (3d Cir. 1998) ("The crux of the plaintiffs' complaint was that Prudential engaged in a common scheme of deceptive sales practices.  Although the Second Amended Consolidated Complaint specifically lists three types of deceptive sales claims . . . other allegations address conduct which supports the common scheme theory and which does not fall neatly within the three enumerated categories.  Therefore, we agree with the district court the 'other claims' were properly released.").  Here, the settlement only releases claims "arising out of, based upon, or related to, in whole or in part, the facts and circumstances underlying the claims and causes of action set forth

18

in the Litigation." (Settlement Agreement at 6). As already discussed, the *Schwartz* and *Klein* complaints include allegations of breach of contract and violations of the New Jersey Consumer Fraud Act based upon the FTP Surcharge. The release does not purport to prohibit class members from asserting claims that are unrelated to the FTP Surcharges at issue. Accordingly, and contrary to Payne's objections, the Court finds the release language to be appropriately tailored to the class complaints and squarely within the boundaries of the release language permitted by the Third Circuit.

### C. The Stage of the Proceedings and the Amount of Discovery Completed

"The third *Girsh* factor captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an appropriate appreciation of the merits of the case before negotiating.'" *NFL*, 2016 WL 1552205, *19 (quoting in full *Warfarin*, 391 F.3d at 537).

The Court is easily convinced that counsel for all parties are akin to the merits of these cases such that they were adequately prepared to meet at the negotiating table. Both matters have been pending for several years with the parties having engaged in expert and class discovery. Additionally, counsel have prepared extensive briefing on motions to dismiss, a motion for summary judgment, a *Daubert* motion, and the *Schwartz* motion for class certification. Accordingly, this factor weighs heavily in favor of approval.

### D. Risks of Establishing Liability and Damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential II*, 148 F.3d at 319; *see also McGee v. Cont'l Tire North America, Inc.*, 06-cv-6234, 2009 WL 539893, at *5 (D.N.J. March 4, 2009) (crediting

19

the Plaintiff's argument that the damages component of these factors favors settlement where "damages would have been aggressively contested at trial, with both sides presenting expert testimony on the subject"). The risks in proceeding to trial in any case are always considerable. *See Prudential I*, 962 F. Supp. at 539. That is, a jury may determine that Defendants are not liable for any wrongful conduct, in which case Plaintiffs will be left with nothing. Moreover, as discussed below, there is a risk that the classes could be decertified, in which case would-be class members would be left with no recovery. Given such risks, the Court finds that this factor weighs in favor of approval.

### E. Risks of Maintaining the Class Action through Trial

Because the prospects for obtaining and maintaining class certification have a great impact on the range of recovery one can expect to obtain in a class action, *In re General Motors*, 55 F.3d at 817, the Court must measure the likelihood of maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. Despite the Court's certification of the *Schwartz* class, Plaintiffs anticipate that absent settlement, Defendants would move to decertify that class and would contest certification of the *Klein* class. (Pls.' Br. at 29). Additionally, this Court could *sua sponte* "decertify or modify the class at any time during the litigation if it proves to be unmanageable." *In re Warfarin*, 391 F.3d at 537. Given these risks of maintaining the class action through trial, the Court finds that this factor, although of marginal value in the settlement context, tips in favor of settlement. *see NFL*, 2016 WL 1552205, *20.

### F. Ability of the Defendants to Withstand a Greater Judgement

The seventh *Girsh* factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant Corp.*, 264 F.3d at 240. However, as recently explained by the Third Circuit, this "factor is most relevant when the

defendant's professed inability to pay is used to justify the amount of the settlement." *NFL*, 2016 WL 1552205, *21. A corollary to this statement is that the defendant's ability to pay will be considered to be (at most) a neutral factor, where the defendant has conceded the ability to pay more. *See, e.g., In re Warfarin*, 391 F.3d at 538; *In re CertainTeed Corp. Roofing Shingle Prods. Liability Litg.*, 269 F.R.D. 468, 489 (stating that "because ability to pay was not an issue in the settlement negotiations, this factor is neutral").

Here, Plaintiffs concede that Defendants could withstand a greater judgment than the amount of the Settlement. (*Id.* at 30). Accordingly, the Court deems this *Girsh* factor to be neutral as to the settlement's fairness.

### G. Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation

The last two *Girsh* factors are usually considered together and require the Court to evaluate "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential II*, 148 F.3d at 322. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *In re AT&T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006) (citations and quotations omitted). "Rather, the percentage recovery, 'must represent a material percentage recovery to [the] plaintiff in light of all the risks considered under *Girsh*.'" *Id.* (quoting *In re AT & T Corp. Sec. Litig.*, 00-cv-1399, 2005 WL 671604, *6 (D.N.J. Apr. 25, 2005)).. "In order to assess the reasonableness of a settlement in cases seeking primarily monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the

amount of the proposed settlement.'" *In re Warfarin,* 391 F.3d at 537 (quoting *Prudential* II, 148 F.3d at 322). .

When viewed in light of the potential risks highlighted previously, the Settlement is not merely fair, it is a reasonable recovery. As discussed at the fairness hearing, it is difficult to attribute a specific monetary value to the settlement which permits class members to opt for a 10 percent discount on future rentals or a cash recovery. (Fairness Hearing Tr. at 8:8-16). However, Plaintiffs have represented that "the value of the settlement minimally is approximately 50 percent of what discovery showed the damages were, and optimally more than a hundred percent of what those damages are depending on the mix of how many people opt for cash and how many opt for discounts." (*Id.*). That is, if all class members chose the discounts, the settlement would have a value of close to $11 million. (Pls.' Br. at 31). Conversely, if all class members opt for cash, the settlement would have a value of over $4 million. (*Id.*).

Accordingly, having thoroughly evaluated the *Girsh* factors, the Court finds that the Settlement warrants final approval by this Court. Of particular influence on this Court are the small number of objectors—who primarily oppose the distribution of attorneys' fees as opposed to the substantive terms of the Settlement Agreement—as well as  the risks to class members associated with continuing this litigation. For all of the above reasons, the Court grants Plaintiffs' motion for final approval of the class action settlement.

## IV.   ATTORNEYS' FEES

Plaintiffs' class counsel move pursuant to Federal Rules of Civil Procedure 23(h) "approval of an award of $3,050,000 for attorneys' fees and reimbursement of expenses, in connection with their work on behalf of Settlement Class Members in these two cases." (ECF No. 188, Pls.' Mot. for Fees at 1). Defendants have agreed not to oppose an award up to this amount. (*See* Class

Notice § 16).   Pursuant to that Rule, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" so long as the appropriate motion for same is made and "notice of the motion [is] served on all parties and . . . directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1).

The awarding of fees is within the district court's discretion.  *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000).  However, even where the parties have consented to the requested fee award, the court must thoroughly analyze and clearly articulate the reasons supporting its conclusion. *See In re Diet Drugs,* 582 F.3d 524, 538 (3d Cir.2009); *see also In re General Motors*, 55 F.3d at 820. Generally, a court will use either the percentage-of-recovery method or the lodestar method to determine the fee award. *In re General Motors*, 55 F.3d at 820-21. The lodestar method is considered most appropriate in statutory fee-shifting cases, and has the advantage of resembling a traditional fee calculation, whereas the percentage-of-recovery method is viewed as best approximating a contingent fee award in a common fund recovery. *See In re Cendant Corp. PRIDES Litg.,* 243 F.3d 722, 732 (3d Cir. 2001); *see generally In re Diet Drugs,* 582 F.3d at 540.

The Court finds application of the lodestar method, as opposed to the common-fund approach, to be appropriate in this case.  First, there is no common settlement fund from which Plaintiffs' counsel seeks to pull out their fees, nor is there a readily available method for calculating a definite monetary value of the settlement here, given the nature of the relief available in the form of cash or discounts.  As Plaintiffs' counsel explains, "[t]hough the value of the settlements may range up to $13.778 million, the total value will vary depending on how many Settlement Class Members opt for cash and how many chose discounts on future rentals."  (Pls.' Mot. for Fees at 6).  Moreover, the NJCFA, on which Plaintiffs base some of their claims, provides for fee-shifting.

23

*See* N.J.S.A. 56:8-19.  Accordingly, the Court applies the lodestar method to determine whether the requested fee award is reasonable.  *See In Re General Motors*, 55 F.3d at 821.

### i.     The Lodestar Figure

To calculate the lodestar award, the court multiplies the hourly rates of the class counsel by the number of hours counsel expended on the matter.   *See Gunter*, 223 F.3d at 193-94.  This simple formula arrives at a "lodestar amount," which is indicative of the amount of fees class counsel would have earned had they billed their clients on an hourly basis.  Next, the Court divides the proposed fee award by the calculated lodestar figure, which provides a number known as the "multiplier."   *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009); *see also Milliron v. T–Mobile USA. Inc.*, No. 08–cv-4149, 2009 WL 3345762, *14 (D.N.J. Sept. 10, 2009). The purpose of the lodestar multiplier is for the Court to assess the reasonableness of applying the multiplier in each individual case to adjust the attorneys' fees.  *In re Ins. Broker*, 579 F.3d at 280.

Here, class counsel has submitted a summary of fees and expenses totaling thousands of hours, equaling $2,492,979.00 in lodestar and $80,547.70 in expenses. (ECF No. 188-1, Joint Decl. ¶ 36, Exh. A-D).  The Court finds that the number of hours billed is reasonable given the lengthy history of this highly contested litigation in which Plaintiffs' attorneys were engaged in extensive and complex motion practice and accompanying discovery demands.  The Court also finds that the average hourly billing rates submitted by the Class Counsel are consistent with the experience and skill of the lawyers involved and are within the normal range for cases of similar complexity and subject matter.

Class counsel requests that the court apply a multiplier of approximately 1.19 for a total amount of fees of $2,966,294.  (Joint Decl. ¶ 36).  The Court finds that the application of this multiplier is justified in this matter.  Specifically, Plaintiffs' counsel has been litigating these matters for no

less than five years on a wholly contingent basis, operating under the risk that they might never be compensated for their representation or reimbursed for their expenses. *See*, *e.g.*, *McLennan v. LG Electronics USA, Inc.*, No. 10-cv-03604, 2012 WL 686020, at *10 (finding a multiplier of 2.93 appropriate where, *inter alia*, "[c]lass counsel prosecuted this matter on a wholly contingent basis, which placed at risk their own resources, with no guarantee of recovery"). Moreover, the approximately 1.19 multiplier is well within the range of multipliers accepted within this district. *Frederick v. Range Res.-Appalachia, LLC*, No. 08–cv-288, 2011 WL 1045665, *13 (W.D. Pa. Mar. 17, 2011) ("Federal courts in this circuit have frequently approved fee award multipliers in the range of 1 to 4.") (collecting cases); *Hall v. AT & T Mobility LLC*, 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ("In fact, in *Cendant PRIDES*, the Third Circuit approved a lodestar multiplier of 2.99 in a case it described as 'relatively simple in terms of proof' in which 'discovery was virtually nonexistent.'"); *In re Schering–Plough Corp. Enhance ERISA Litig.*, No. 08–cv-1432, 2012 WL 1964451, *8 (D.N.J. May 31, 2012) (stating that a multiplier of 1.6 "is an amount commonly approved by courts of this Circuit").

Additionally, Class Counsel has certified that "the issue of attorneys' fees was not discussed until after settlement terms for the Settlement Class Members were agreed to." (Joint Decl. ¶ 31). Thus, the Court is satisfied that Class Counsel did not sacrifice the interests of Settlement Class Members in order obtain the requested fee.

**ii.     The Percentage-of-Recovery Cross-Check**

"Regardless of the method chosen, [the Third Circuit has] suggested it is sensible for a court to use a second method of fee approval to cross-check its initial fee calculation." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). As already discussed, the method of recovery in this case is not amenable to a definitive calculation as to the monetary value of the class

recovery. That said, the Court accepts the representation of Class Counsel, which has not been refuted by any objector, that:

> If all Settlement Class Members choose the discounts, the settlement would have a value of $13,778,081. In that event, the fee would represent 22.1% of the total Class recovery. . . . Even if many Settlement Class Members chose cash, the requested fee would still amount to less than 45% of the total settlement value, the upper limit for fees in this Circuit.

(Pls.' Mot. for Fees at 10). The Third Circuit has noted that fee awards generally range from 19 percent to 45 percent of the settlement fund when the percentage-of-recovery method is used to assess the reasonableness of requested attorneys' fees. *See In re General Motors*, 55 F.3d at 822. Given that class members have the option of choosing cash or discounts, the total class recovery is likely to exceed (by sufficient number) the requested attorneys' fee award and fall within the range accepted within this Circuit in common-fund cases.

### iii.    Objections to Fee Award

Only three class members have objected to the proposed fee award. The Court addresses each of their arguments, in turn.

Bruce David Eisen filed a single-page opposition in which he deems the proposed award "unconscionable" and "propose[s] that the attorneys receive no more than one million dollars with the remaining two million dollars going to repay the plaintiffs the monies that were wrongfully taken from them." (ECF No. 63, Eisen Objection). As discussed at length above, the Court has determined that the proposed fee award is fair and reasonable, and was negotiated separate and apart from the negotiation of the substantive terms of the Settlement Agreement. Mr. Eisen's objection has not swayed the Court otherwise.

Separately, Doug Jeffries, like Mr. Eisen, maintains that the award is "beyond ridiculous." (Joint Decl., Exh J). Specifically, Mr. Jeffries argues that this amount is "inflated" because Class

Counsel was likely engaged in other matters and was not working on the instant matters at all times. (*Id.*). Again, the Court has reviewed the hundreds of pages of legal invoices submitted in support of the motion for fees, and has found the requested amount to be reasonable.[4]

Lastly, the Court will briefly address the arguments raised by Mr. Ray, who, as discussed above, is represented in part by serial objector Mark Bandas. Mr. Ray summarily argues that: (1) Class Counsel will be recovering more than the value of the settlement; (2) the Settlement Agreement improperly segregates the attorneys' fees from the class recovery; and (3) the Settlement Agreement contains an improper "clear sailing clause." (Ray Objection at 10-12). Mr. Ray's first two arguments appear to be grounded in an understanding that this case involves a common fund. In any event, as discussed above, the Court finds that the attorneys' fee award is reasonable and was appropriately negotiated after the parties had settled on the Agreement's substantive terms. Moreover, Mr. Ray's objection to the "clear sailing clause" –in which Defendants have agreed not to dispute an award of fees up to $3,050.00—is undermined by recent Third Circuit precedent holding that such clauses are permissible so long as the district court "review[s] the process and substance of the settlement and satisf[ies] itself that the agreement does not indicate collusion or otherwise pose a problem." *NFL*, 2016 WL 1552205, * 28. Having already made these determinations, the Court rejects Mr. Ray's objection to the "clear sailing clause."

In summary, the Court has carefully reviewed the exhibits submitted in support of the motion for attorneys' fees, and as satisfied that the requested fee award is supported by the documented efforts of Class Counsel in this matter and was agreed-upon after the Parties resolved any material

---

[4] Mr. Jeffries apparently sees the requested fee award as a reflection of what he perceives as an "out of control" justice system. (*Id.*). To the extent Mr. Jeffries takes issue with the legal system, these arguments are not appropriately raised herein and the Court declines to address same.

issues relating to the class members' recovery under the Settlement Agreement.  Thus, the Court

will grant Plaintiffs' Counsels' motion for an award of attorneys' fees and expenses not to exceed

$3,050.00.

## V.    INCENTIVE AWARD

Class Counsel also moves for an incentive award to the named class members, as provided for

in the Settlement Agreement.  (Pls.' Mot. for Fees at 23-24).  Specifically, Class Counsel is

requesting a $5,000 incentive award to Mr. Schwartz and a $5,000 award to be split between the

Kleins on their terms.  (*Id.*; Settlement Agreement § 12.d).

No class member has objected to these proposed awards.  As such, and given the number of

years in which the Kleins and Mr. Schwartz have been involved in this litigation, the Court finds

the requested award warranted.

## VI.    CONCLUSION

For the reasons stated herein, the Court grants Plaintiffs' motions for final approval of the class

action settlement and for an award of attorneys' fees and reimbursement of expenses as well as for

an incentive award to class representatives.  (11-cv-4052, ECF No. 186; 12-cv-7300, ECF No. 68).

An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:  June _21_, 2016


_____

JOSE L. LINARES, U.S.D.J.