UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD SCHWARTZ, on behalf of himself and others similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>AVIS RENT A CAR SYSTEM, LLC, and AVIS BUDGET GROUP, INC.,<br><br>            Defendants. | Civil Action No. 11-4052 (JLL) (JAD) |
| DANIEL KLEIN and STEPHANIE KLEIN, on behalf of themselves and others similarly situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>BUDGET RENT A CAR SYSTEM, INC. and AVIS BUDGET GROUP, INC.,<br><br>            Defendants. | Civil Action No. 12-7300 (JLL) (JAD)<br><br>Motion Day August 1, 2016 |

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL OBJECTOR-APPELLANT MARK RAY TO POST AN APPEAL BOND, PURSUANT TO FED. R. APP. P. 7**

i

# **TABLE OF CONTENTS**

Page

I.   PRELIMINARY STATEMENT……………………………………………….   1

II.  BACKGROUND………………………………………………………………   2

III. *NUTELLA*, AN UNPUBLISHED THIRD CIRCUIT OPINION WITH VIRTUALLY NO ANALYSIS, AND WHICH RUNS COUNTER TO AUTHORITY FROM OTHER CIRCUIT COURTS OF APPEALS, IS NOT THE LAW OF THE THIRD CIRCUIT……………………………………………………………..............   4

IV.  AUTHORITY FROM OTHER CIRCUIT COURTS REJECTS THE PROPOSED BOND…………………………………………………………………………...   7

V.   CLASS COUNSEL DID NOT MOVE FOR A SUPERSEDEAS BOND, AND DELAY COSTS CANNOT BE INCLUDED IN AN APPEAL BOND……………………..   8

VI.  MR. RAY'S OBJECTIONS ARE NOT FRIVOLOUS……………………………….   10

CONCLUSION AND PRAYER………………………………………………………   15

## TABLE OF AUTHORITIES

Cases

); *In re American President Lines, Inc.*, 779 F.2d 714, 717-18 (D.C. Cir. 1985) ...................................... 10
28 U.S.C.A. § 1920 ............................................................................................................................. 8
*American President Lines,* 779 F.2d at 716 ...................................................................................... 9
*American President Lines,* 779 F.2d at 716, 718-19 ........................................................................ 9
*Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011) ................................................................................................................................................... 10
FED. R. APP. 39(e) .............................................................................................................................. 2
FED. R. APP. P. 39(E) ...................................................................................................................... 6, 8
FED. R. APP. P. 8 ............................................................................................................................ 8, 9
FED. R. CIV. P. 62(d) .......................................................................................................................... 9
*Hirschensohn v. Lawyers Title Insurance Corp.*, No. 12–3457, 1997 WL 307777 (3rd. Cir. June 10, 1997) (unpublished) ................................................................................................................... 2
*Id.* at 1256 ......................................................................................................................................... 8
in FED. R. APP. P. 39 .......................................................................................................................... 8
*In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 1049269, No. 06-MD-1775 (JG)(VVP) (E.D.N.Y. Mar. 22, 2010) ............................................................................................................ 10
*In re American President Lines, Inc.,* 779 F.2d 714, 716 (D.C.Cir.1985). ...................................... 6
*In re American President Lines, Inc.*, 779 F.2d 714, 717-18 (D.C. Cir. 1985) ................................ 9
*In re Diet Drugs Products Liability Litigation,* 2000 WL 1665134 (E.D.Pa. 2000). ...................... 9
*In re Dry Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2013) ................................................. 13
*In re Dry Max Pampers Litig.*, 724 F.3d 713, 717-18 (6th Cir. 2013) ........................................... 13
*In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir 2013) .................................................. 11
*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 2010 WL 4630846, MDL No. 08-1999 (E.D. Wisc. Nov. 2, 2010) ................................................................................................ 10
*In re Nutella Mktg. and Sales Practice Litig.*, 589 Fed. Appx. 53, 61 (3d Cir. 2014)(unpublished) ............ 1
*In re Nutella Mktg. and Sales Practice Litig.*, 589 Fed. Appx. 53, 61 (3d Cir. 2014)(unpublished). ........... 1
*In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015) ....................................... 14
*In re Time Warner, Inc. Securities and "ERISA" Litigation,* 2007 WL 2741033 (S.D.N.Y. 2007). ............. 8
*Jamison v. Klem,* 544 F.3d 266, 278 n. 11 (3d Cir. 2008) ............................................................... 4
*Lovett v. U.S.*, CIV. 09-1659JLL, 2009 WL 2998962, at *4 (D.N.J. Sept. 17, 2009) (Linares, D.J.) (citing *Jamison v. Klem*, 544 F.3d 266, 278 n. 11 (3d Cir. 2008)). .............................................. 4
*Malchman v. Davis,* 761 F.2d 893, 908 (2d Cir. 1985) ................................................................... 13
*Nutella*, 589 Fed. Appx. at 61 ........................................................................................................... 5
*Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562 (Mont. 2012) ........................ 11
*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985) ...................................................................... 14
*Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) ............................................................ 14
*Rossi v. The Proctor & Gamble Co.*, No. 11-7238, 2014 WL 1050658, *1 (D.N.J. Mar. 17, 2014) (Linares, D.J.) ................................................................................................................................ 2
*Southwest Voucher*, 799 F.3d at 712 .............................................................................................. 14
*Tennille v. Western Union Co.*, 774 F.3d 1249 (10th Cir. 2014) .................................................... 2
*Tennille v. Western Union Co.*, 774 F.3d 1249 (10th Cir. 2014). ................................................... 2
*Tennille*, 774 F.3d at 1254 ............................................................................................................... 9

Third Circuit Internal Operating Procedure 5.3 .................................................................................. 5
*True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010) ............................... 10
*UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232 (10th Cir. 2009) ............................................................................................................................................. 11
*Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 295-99 (5th Cir. 2007) .............................................. 10
*Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 298-99 (5th Cir. 2007) ................................................ 9

**Rules**
FED. R. APP. 39(e) ........................................................................................................................................ 2
Fed. R. Civ. P. 23 ....................................................................................................................................... 14
Rule 23(e) .................................................................................................................................................. 11
Rule 23(h) .................................................................................................................................................. 11
Third Circuit Internal Operating Procedure 5.3, 5.7 ................................................................................. 5

## I.    Preliminary Statement.

Class Counsel request a bond for costs of appeal between $10,000 and $25,000, with no supporting evidence.[1] As if that were not enough, they reach far beyond the parameters of Rule 7, and ask for $59,000 in administrative costs of the settlement during the pendency of the appeal.[2]

Their authority for the latter request is a Third Circuit Court of Appeals' opinion, which Class Counsel failed to identify as unpublished and carrying no precedential weight. *In re Nutella Mktg. and Sales Practice Litig.*, 589 Fed. Appx. 53, 61 (3d Cir. 2014)(unpublished). Although arguably persuasive authority, the single paragraph in the opinion discussing whether the inclusion of administrative costs is permissible contains essentially no analysis. It makes no reference to authority even contemplating the idea that administrative costs can be included in an appeal bond.

This is significant because under the reasoning of an earlier Third Circuit opinion, which refused to include attorney's fees in an appeal bond, administrative expenses should not be included in an appeal bond since they are not listed as "costs"

---

[1] Memorandum of Law in Support of Plaintiffs' Motion to Compel Objector-Appellant Mark Ray to Post an Appeal Bond, Pursuant to Fed. R. App. P. 7, ECF. No. 76-1, at 9 ("Plaintiffs request a minimum of $10,000, or (in the Court's discretion) up to $25,000 as a reasonable amount to cover the Appellate Rule 39 costs of Ray's appeal"). Objection is made to the failure to submit any evidence in support of the requested $10,000-$25,000 in costs of appeal. Objection is further made to the declaration of Lori L. Castaneda supporting the requested $59,000 in administrative expenses, which does not break down the claimed expenses and is impermissibly conclusory.

[2] *Id.* at 12 ("request[ing] a bond in the total amount of at least $69,000 (or, in the Court's discretion, up to $84,000), which represents Rule 7 costs of $10,000 (or up to $25,000, in the Court's discretion, as in *Ins. Brokerage*) plus administrative costs during the pendency of Ray's appeal of $59,000").

1

under FED. R. APP. 39(e). *Hirschensohn v. Lawyers Title Insurance Corp.*, No. 12–3457, 1997 WL 307777 (3rd. Cir. June 10, 1997) (unpublished). In fact, this Court reached this precise conclusion in *Rossi v. The Proctor & Gamble Co.*, No. 11-7238, 2014 WL 1050658, *1 (D.N.J. Mar. 17, 2014) (Linares, D.J.).

Moreover, there is considerable authority from other Circuit Courts making clear that settlement administrative expenses are not authorized in an appeal bond. *See e.g., Tennille v. Western Union Co.*, 774 F.3d 1249 (10th Cir. 2014). By contrast, from Objector's review it appears that there are no published opinions from any circuit court that would allow the particular appeal bond sought here. There is no reason for this Court to depart from *Rossi* given the unpublished outlier opinion in *Nutella* that fails to provide any substantive analysis.

As discussed *infra*, this outrageous bond request is just the latest inappropriate attempt by Class Counsel to intimidate Class Member Mark Ray into dropping his legitimate objection to the settlement.

## II.   Background.

Mark Ray is an undisputed member of this class action. Believing the settlement unfair to the class and the requested attorneys' fees of $3.05 million excessive (representing approximately 57.3% of the money that will be made available to the settlement class), Mr. Ray filed a timely objection on April 6, 2016, in

2

accordance with the procedures outlined by the notice provided to the class.[3]

Rather than respond to the merits of Mr. Ray's objections, Class Counsel took a harassing and abusive deposition of Mr. Ray on May 2, 2016 in Corpus Christi, Texas. During the deposition, Daniel Karon, one of the attorneys for Class Counsel, made threats to Mr. Karon's business and family, attempting to intimidate him into dropping his objections.[4]

Judge Nelva Gonzalez Ramos of the Southern District of Texas condemned Mr. Karon's abusive during a hearing, stating, after "reading what's been presented to me, . . . your questioning of the witness, whether harassing or threatening, intimidating regarding his business, regarding his family, I just found that to be out of line[.]"[5] Judge Ramos repeatedly found Mr. Karon's questioning "improper" and only agreed to deny a motion for protective order as moot after Mr. Karon committed on the record not repeat the misconduct.[6]

Judge Ramos believed sanctions were warranted, but that any such motion should be considered in this Court, specifically instructing: "I'm encouraging you to bring it to the attention of the Court there" and "[y]ou can certainly bring it to the attention of the Court in New Jersey and you probably should."[7]

Class Counsel agreed to, and in fact paid for Mr. Ray's attorneys' fees and

---

[3] *See* Objection of Mark Ray, ECF No. 182.
[4] *See* Exhibit 1, Transcript of the Deposition of Mark Ray, at 31-36, 64-65, 95-96.
[5] *See* Exhibit 2, Transcript of May 18, 2016 Hearing, at 4-6, 9-10.
[6] *Id.* at 4-6, 14-15.
[7] *Id.* at 15-16.

3

expenses associated with having to respond to the abusive discovery.

The unreasonable request for an appeal bond between $69,000 and $84,000 represents the latest inappropriate attempt to force Mr. Ray out of the litigation.

### III. *Nutella*, an Unpublished Third Circuit Opinion with Virtually No Analysis, and Which Runs Counter to Authority from Other Circuit Courts of Appeals, is Not the Law of the Third Circuit.

The central issue before this Court is whether it has authority to enter a Rule 7 cost bond against Objector and his counsel for administrative expenses of the settlement while this case is on appeal. *Published* opinions from other circuit courts of appeals have answered that administrative expenses are not available in a Rule 7 bond.

Class Counsel rely on *Nutella*, which discusses inclusion of administrative expenses in a single paragraph, and makes no reference to authority that would allow administrative expenses in an appeal bond. 589 Fed. Appx. 53, 61 (3d Cir. 2014)(unpublished). This is *not* the type of unpublished opinion that should be relied upon in determining and applying the law of the Circuit.

"This Court is aware of the Third Circuit's admonitions regarding the citation to its unpublished, non-precedential opinions[.]" *Lovett v. U.S.*, CIV. 09-1659JLL, 2009 WL 2998962, at *4 (D.N.J. Sept. 17, 2009) (Linares, D.J.) (citing *Jamison v. Klem,* 544 F.3d 266, 278 n. 11 (3d Cir. 2008)). As the Third Circuit explained in *Jamison*:

> We have steadfastly attempted to discourage District Courts as well as attorneys from relying on nonprecedential opinions of this court. We do not accept these opinions as binding precedent because, unlike precedential opinions,

4

> they do not circulate to the entire court before they are filed. Accordingly, not every judge on the court has had an opportunity to express his/her views about the opinion before it is filed.

*Jamison,* 544 F.3d at 278 n. 11 (citation omitted); *see also* Third Circuit Internal Operating Procedure 5.3 (noting such opinions "appear[] to have value only to the trial court or the parties"); Rule 5.7 ([s]uch opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing").

Any persuasive value *Nutella* might otherwise have is negated by the absence of legal analysis on this issue, which in its entirety, is as follows:

> Second, the District Court's imposition of a bond of $22,500 was not an abuse of discretion. The plaintiffs requested an appeal bond of $42,500, where the plaintiffs estimated their costs at $2,500 and an additional $40,000 of expenses in administering the settlement fund over a two-year period. The District Court determined, over the Bochenek Appellants' objection, that administrative costs could be secured by a Rule 7 bond. We do not find that determination to be in error. Furthermore, the District Court decreased the $40,000 request by half, to $20,000 in administrative costs, in order to limit the amount of administrative costs related to the settlement fund to a one-year period. Accordingly, the District Court's imposition of an appeal bond of $22,500 in this case, collectively on all ten appealing objectors, was not an abuse of discretion.

*Nutella*, 589 Fed. Appx. at 61. That is it. There is no reference to any opinion that allowed or disallowed administrative expenses as part of an appeal bond.

If this Court is inclined to rely on an unpublished opinion on what is permissible to include in a Rule 7 cost bond, it should refer back to *Hirschensohn*.

5

Although *Hirschensohn* considered attorney's fees and not administrative costs, the Court explained the framework for determining what costs are authorized in a Rule 7 appeal bond:

> "Costs" referred to in Rule 7 are those that may be taxed against an unsuccessful litigant under Federal Rule of Appellate Procedure 39. *In re American President Lines, Inc.*, 779 F.2d 714, 716 (D.C.Cir.1985).
>
> Rule 39, in turn, lists "costs" as including printing and producing copies of briefs, appendices, records, court reporter transcripts, premiums or costs for supersedeas bonds, or other bonds to secure rights pending appeal, and fees for filing the notice of appeal. These various items have their source in 28 U.S.C. § 1920. Attorneys' fees are not among the expenses that are described as costs for purposes of Rule 39.

*Hirschensohn*, 1997 WL 307777, at *1.

*Hirschensohn* outlined the framework for determining what costs are permissible in an appeal bond. Rule 7 allows for an appeal bond for "costs on appeal." FED. R. APP. P. 7. Rule 39, in turn, lists what those costs are: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." FED. R. APP. P. 39(e). If not listed in Rule 39(e), then the expense is not included as "costs" for an appeal bond. *Hirschensohn*, 1997 WL 307777, at *3 ("we conclude that Rule 7 does not authorize a bond to cover estimated costs of attorneys' fees.").

This Court adhered to the *Hirschsohn* analysis in its *Rossi* opinion:

6

> This Court thus denies inclusion of any administrative costs that are not specifically enumerated in Rule 39. *See Hirschensohn,* 1997 WL 307777, at * 2–3 (holding that attorneys' fees may not be included in a Rule 7 appeal bond because they are not listed in Rule 39). Because Rule 39 does not enumerate any additional administrative costs caused by delay in the disbursement of settlement funds, inclusion of these costs is denied.

*Rossi*, 2014 WL 1050658, *1.

As in *Rossi*, administrative costs are not listed in Rule 39, and cannot be included in an appeal bond here. This Court should not depart from its holding in *Rossi* based on *Nutella*, an unpublished opinion with no analysis.

**IV. Authority from Other Circuit Courts Rejects the Proposed Bond.**

The published opinions from other circuit courts confirm that administrative costs for maintaining a settlement are not properly included in an appeal bond. In December, 2014, the Tenth Circuit resolved the issue of what costs are properly included in a Rule 7 bond and, in so doing, provided a comprehensive survey of the circuit courts of appeal that had already resolved that issue. *See Tennille v. Western Union Co.*, 774 F.3d 1249 (10th Cir. 2014).

The court observed that: "[a]lthough Plaintiffs can point to several unreported district court cases imposing appeal bonds that cover delay damages or increased administrative costs to maintain a class settlement pending appeal, we do not find the reasoning of those cases persuasive **in light of the unanimous circuit authority restricting an appeal bond to costs expressly permitted by rule or statute**." *Id.* at

7

1256 (emphasis added). According to the survey conducted by the Tenth Circuit, the following circuit courts of appeal have already resolved this issue: First, Second, Third, Fifth, Sixth, Ninth, Eleventh and D.C. Now in *Tennille*, the Tenth Circuit has resolved this issue as well. *Id.* at 1254-55.

And, *Tennille* specifically noted that under *Hirschensohn*, the "Third Circuit[] restrict[s] an appeal bond to only costs listed in FED. R. APP. P. 39, which include '(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal.'" *Id.* at 1255 (citing *Hirschensohn*, 1997 WL 307777, at *13).

Although there is some variance among the circuit courts on nuances of Rule 7, from Objector's review of authority, it appears that no circuit court of appeals to entertain this issue has issued a published opinion permitting a Rule 7 bond such as the suggested bond in the instant case.

### V. Class Counsel Did Not Move for a Supersedeas Bond, and Delay Costs Cannot be Included in an Appeal Bond.

Administrative expenses for the settlement are not authorized as delay costs, which are not listed as costs in FED. R. APP. P. 39(e) and 28 U.S.C.A. § 1920. *See In re Time Warner, Inc. Securities and "ERISA" Litigation,* 2007 WL 2741033 (S.D.N.Y. 2007). The "costs of delay" are only permitted in a supersedeas bond, available under FED.

8

R. APP. P. 8 or FED. R. CIV. P. 62(d). *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 298-99 (5th Cir. 2007); *In re American President Lines, Inc.*, 779 F.2d 714, 717-18 (D.C. Cir. 1985); *see In re Diet Drugs Products Liability Litigation,* 2000 WL 1665134 (E.D.Pa. 2000).

As explained in *Tennille*:

> A Rule 7 appeal bond is similar to, but distinguishable from, a supersedeas bond, which a court can require to preserve a money judgment when staying execution of that judgment pending appeal, FED. R. CIV. P. 62(d); FED. R. APP. P. 8(a)(2)(E). *See* 16A Wright, et al., *Federal Practice & Procedure* § 3953 (noting a Rule 7 appeal bond "should not be confused with a supersedeas bond"). "[A] 'supersedeas bond' is retrospective covering sums related to the merits of the underlying judgment (and stay of its execution), whereas a [Rule 7 appeal or] 'cost bond' is prospective relating to the potential expenses of litigating an appeal." *Adsani,* 139 F.3d at 70 n. 2 (2d Cir.). And, whereas a Rule 7 appeal bond is restricted to costs on appeal, *see* FED. R. APP. P. 7, a supersedeas bond usually covers the full amount of the money judgment, "together with costs, interest, and damages for delay," 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2905 (3d ed. Apr.2013).

*Tennille*, 774 F.3d at 1254.

A district court does not have any "inherent or rule-based power" to impose an appeal bond beyond "security for payment of costs on appeal." *American President Lines,* 779 F.2d at 716, 718-19. Moreover, the "costs referred to [in Rule 7] are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39." *American President Lines,* 779 F.2d at 716.

9

Class counsel did not move for a supersedeas bond in this Court, and therefore Rule 39(e)(3) does not apply on its face. It also bears mentioning that it has been held to be reversible error to impose a supersedeas bond under Rule 8 ostensibly under the authority of a Rule 7 cost bond. *See e.g., Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 295-99 (5th Cir. 2007); *In re American President Lines, Inc.*, 779 F.2d 714, 717-18 (D.C. Cir. 1985).

### VI.    Mr. Ray's Objections are Not Frivolous.

Class Counsel suggest a bond is appropriate because Mr. Ray's general counsel has asserted objections in other cases, and therefore, Mr. Ray's objection must be frivolous. But the representation of objectors in other class actions "has no greater bearing on the merits of the objection raised [in this class action] than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings." *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010). "Merely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011); *see also In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 2010 WL 4630846, MDL No. 08-1999 (E.D. Wisc. Nov. 2, 2010); *In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 1049269, No. 06-MD-1775 (JG)(VVP) (E.D.N.Y. Mar. 22, 2010).

It is neither logically nor legally permissible to conclude that an objection is valid or invalid from outcomes in other cases, especially when those outcomes are mixed. Further, many courts recognize that objectors serve as a vital check on the class action settlement process where the interests of the class are not always protected. *In re Dry Max Pampers Litigation*, 724 F.3d 713, 715 (6th Cir 2013) ("*Pampers*") ("there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own"). "Objectors can encourage scrutiny of a proposed settlement and identify areas that need improvement. They can provide important information regarding the fairness, adequacy, and reasonableness of the settlement terms." *Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562, 568 (Mont. 2012). "Objectors can also "add value to the class-action settlement process by . . . preventing collusion between lead plaintiff and defendants." *UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 236 (10th Cir. 2009) (citation omitted); *see also* 2003 Committee Note, Rule 23(h) ("In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as . . . attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of Class Counsel").

Regardless, only the merits of the objections should be of concern to the Court and Class Counsel. Mr. Ray's objections to the settlement and $3.05 million in attorney's fees are valid and well reasoned.

11

The injunctive relief in this case is illusory because it benefits individuals who are not members of the class and it appears likely the defendants would make these changes without an injunction; they certainly would have business reasons to do so. In fact, the measures and improvements discussed in the agreement were already in place before approval of the settlement.[8]

The only real measurable value of this settlement lies in the claims-made relief and the $3.05 million attorneys' fee fund. Based on Class Counsels' calculations, however, the money made available to the class relative to Class Counsels' recovery and the prodigious size of the class is unfair.[9]

According to Class Counsel, if every Avis class member were to select a cash payment (as opposed to opting to spend more money with the same companies who perpetrated fraud against them, so that they can receive a 10% discount),[10] the value would be $4,126,135.[11] If all members of the Budget class opted for cash, the value of the settlement would be $1,195,782.[12] The total cash made available to the settlement class is thus $5,321,917. But this $5.3 million is guaranteed never to be realized by the class because of the claims-made structure of the settlement. The class will receive **far**

---

[8] See Class Notice, at 8, at ¶ 13.
[9] *See* Objection of Mark Ray, ECF No. 182.
[10] *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 654 (7th Cir. 2006)(rebates or coupons in a settlement "'require the claimant to return to the Defendant to do business with him, something at least some class members likely would prefer not to do").
[11] Memorandum of Law of Plaintiffs and the Classes in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. 60-1, at 9.
[12] Memorandum of Law of Plaintiffs and the Classes in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 60-1, at 6.

12

**less** than $5.3 million, which is astonishing considering Class Counsel take a substantial $3.05 million.

The most common settlement defects are ones of allocation. This is because "the adversarial process—or 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2013) ("*Pampers*") (emphasis in original). Adversarial negotiation does not ensure that class relief is "commensurate with [the] fee award." *Id.* at 720. "[I]f the 'fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained.'" *Id.* at 718 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003)).

Although this is not a common fund settlement, and Class Counsel structured the settlement so that any reduction in fees will not go to the class, the $3.05 million represents consideration that Defendants were willing to pay. Some of it should have been allocated to the class.

It must be remembered that the defendant is indifferent as to the allocation of any settlement payments between the class and Class Counsel. *See, eg., Malchman v. Davis*, 761 F.2d 893, 908 (2d Cir. 1985) (Jon O. Newman, concurring), *cert. denied*, 475 U.S. 1143 (1986); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717-18 (6th Cir. 2013). A

13

settling defendant only cares about its total settlement payments and keeping them as low as possible. *In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015); *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*") ( when class counsel "negotiates simultaneously for the settlement fund and for individual counsel fees there is an inherent conflict of interest. The defendant . . . is 'uninterested in what portion of the total payment will go to the class and what percentage will go to the class attorney;' accordingly, the defense operates as no brake against the invidious effects of such a conflict of interest.") (quoting *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 686 (S.D. Tex. 1976), *aff'd* 577 F.2d 335 (5th Cir. 1978)).

At the same time, Class Counsel have a natural incentive to enrich themselves at the expense of the unnamed members of the class. *See Southwest Voucher*, 799 F.3d at 712 ("[j]udicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost"). "For these actors, but not for the class members, the ideal settlement may be a moderate sum favorable to the defendant but disbursed mostly to class counsel." *Id.*

Given the inadequate relief secured for the class, and an excessive amount of attorneys' fees for Class Counsel, the settlement was not fair, adequate, and reasonable under Fed. R. Civ. P. 23, and Mr. Ray's objections were well founded.

## Conclusion and Prayer

There is no legally tenable basis for the requested bond amount between $69,000 and $84,000, and this unreasonable request is just the latest improper attempt to curtail Mr. Ray from pursuing his valid objections to the settlement. Mr. Ray urges this Court to deny Mr. Ray's motion for bond.

Dated: July 15, 2016.

/s/ *Janet L. Gold, Esquire*
Janet L. Gold, Esquire
Eisenberg, Gold, Cettei & Agrawal, P.C.
1040 North Kings Highway, Suite 200
Cherry Hill, New Jersey 08034
Telephone: (856) 330-6200
Facsimile: (856) 330-6207
Email: jgold@egclawfirm.com

*Attorney for Objector Mark Ray*


## Certificate of Service

The undersigned certifies that today she filed the foregoing Brief in Opposition on ECF which will send electronic notification to all attorneys registered for ECF-filing. The undersigned further certifies she caused to be served via USPS First Class Mail, postage prepaid, a copy of this Notice of Appeal upon the following:

Daniel R. Karon, Esq.
Karon LLC
700 West St. Clair Avenue, Suite 200
Cleveland, Ohio 44113

Bruce D. Greenberg, Esq.
Lite DePalma Greenberg, LLC
570 Broad Street, Suite 1201
Newark, New Jersey 07102

Philip R. Sellinger, Esq.
Greenberg Traurig, LLP
500 Campus Drive
Florham Park, New Jersey 07932

Dated: July 15, 2016                    /s/ *Janet L. Gold, Esquire*
                                        Janet L. Gold, Esquire